M. Alieu Iscandari, Esq. (SBN 184307)
**ISCANDARI LAW GROUP**
303 Hegenberger Road, Suite 311
Oakland, CA 94621
Telephone: (510)-606-9062
 Facsimile: (510)-722-2241
E-mail: izcan79@gmail.com

Tiega-Noel Varlack, Esq. (SBN 248203)
**VARLACK LEGAL SERVICES**
225 W. Winton Avenue, Suite 207
Hayward, CA 94544
Telephone: (510)-397-2008
Facsimile: (510)-397-2997
Email: tiega@varlacklegal.com

Employees for Plaintiffs and Proposed Class,
GALENA GOINS, SONIA LOPEZ, and TERRY A. JONES-JACKSON

# UNITED STATES DISTIRCT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GALENA GOINS, SONIA LOPEZ, TERRY A. JONES-JACKSON ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED PARCEL SERVICE, INC., RICARDO MORENO<br><br>Defendants | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

Plaintiffs, GALENA GOINS, SONIA LOPEZ, and TERRY A. JONES-JACKSON ("Plaintiffs" or "Class Representatives"), by and through their employees, M. Alieu Iscandari and Tiega-Noel Varlack, bring this action on behalf of themselves and all similarly situated employees against Defendants, United Parcel Service, Inc. And Ricardo Moreno Plaintiffs allege, upon

CLASS AND COLLECTIVE ACTION COMPLAINT

knowledge as to themselves and otherwise upon information and belief, that Defendant engages in systemic discrimination based on gender, age and disability as follows:

## I.  INTRODUCTION

1.  Defendant, United Parcel Service, Inc., ("Defendant," "UPS"), is an American multinational package delivery and supply chain management company. UPS hires employs approximately 444,000 staff: 362,000 in the U.S. and 82,000 internationally. UPS specializes in the time-definite delivery of packages and documents domestically and worldwide. In recent years, UPS has extended its service portfolio to include less than truckload (LTL) transportation (primarily in the U.S.) and supply chain services. UPS reports its operations in three segments: U.S. Domestic Package operations, International Package operations, and Supply Chain & Freight operations. UPS operates over 119,000 delivery vehicles worldwide, ranging from bicycles to tractor-trailer trucks. In a long-running company policy to avoid advertisement or endorsement of a vehicle manufacturer, all external manufacturer emblems and badging are removed when a vehicle enters service (whenever possible). In recent years, UPS has been criticized for its treatment of its workforce, including providing inadequate protections and sick leave during the COVID-19 pandemic.

2.  Defendant, Ricardo Moreno, is a coordinator at the Oakland Hub, who is the chief harasser, and retaliator in charge of small sort, who recruits other supervisors to sabotage women, he singles out the women on his shift who he feels are to feminine to do additional work, he assigns supervisors to work in violation of company policy to take away time on the clock that the women employees would otherwise earn, he has a pattern of harassment and discrimination against women stemming from his time at the San Bruno Hub.

3.  At UPS, female employees who work are forced to work in the back while the men work in the front in violation of the company's seniority rules, women are routinely denied opportunities for advancement and higher pay. UPS' standard operating procedure is to hold back women from supervisory roles, full-time and overtime opportunities, regardless of their performance.

CLASS AND COLLECTIVE ACTION COMPLAINT

4. UPS fails to pay these women on par with their seniority and, by holding them back, creates a lasting stain on their careers.

5. Working under a double standard, women report to work unsure of their position and whether they will get bumped from their permanent positions despite their seniority, in this way women are forced to prove their commitment to UPS in a way no one else is. They risk isolation, being forced to work in areas with flows too heavy for one person, and even being pushed out of their section if they do not meet the new, and impossibly high, standards that are set for them if they dare to complain about the unequal treatment.

6. UPS' policies and practices are emblematic of the "old boys' club" that permeates corporate culture, suppresses female advancement, and stereotypes women. When female employees complain about workplace culture, they are punished in the ways described above.

7. Today women make up more than half of our country's workforce. Enforcing a double standard in the workplace not only pits men against women but also causes financial harm and results in social consequences for women and the workplace. Historically women in the workplace have faced discrimination due to their age, their gender, and even their status as mothers. Due to societal norms the gender role for women is largely based the stereotype that women are nice, kind and passionate but by contrast leadership roles in the workplace expect a leader to take charge, demonstrate toughness, make tough decisions, and be very assertive to complete the task at hand. When women are viewed through the warped lens of gender bias in the workplace, their true commitment and output often become irrelevant. Consigned to the idea that women are supposed to be gentle and nice, women in the workplace are steered away from the opportunities for professional development that would permit them to reach the same levels of pay and promotion as their male colleagues.

8. At UPS the opportunities for women usually lead to a dead end. Women are routinely prevented from advancing to higher positions within UPS, while at the same time the company forces women to work harder to prove their dedication to the company and setting unreasonably high expectations for them. Those who avail themselves of the company's paid time off or flexible work schedule policy- which permits employees to work part-time to care for family, purportedly without fear or repercussions for their

CLASS AND COLLECTIVE ACTION COMPLAINT

career – are particularly vulnerable. Adding insult to injury women are often denied even the chance to meet the company's expectations when they return from leave, and often times find themselves without sufficient work to meet employee expectation.

9. Women in the work already face significant challenges based on their gender.

10. Gender inequality in the workplace is a multifaceted phenomenon that is demonstrated through organizational structures, processes, and practices. For women some of the most severe inequalities are enacted within human resources practices. This is because HR practices affect hiring, training, pay and protection of women, such as policies, decision-making and enactment of those decisions. Gender Discrimination in the workplace, specifically in HR related decision-making, stems from gender inequalities in broader organizational structures, processes, and practices which include leadership, structure, culture, strategy, organizational climate, as well HR policies. It is also important to note that institutional discrimination in organizational structure processes, and practices, play an eminent role because they affect HR practices and also provide a socializing context for organizational decision makers' level of adverse and benevolent sexism.

11. Upon information and belief, UPS has long been aware of these problems but has failed to take remedial measures to prevent or correct them.

12. To remedy the gender, age and disability discrimination they witnessed and experienced at UPS, Plaintiffs and the class are seeking all legal and equitable relief available under state and federal anti-discrimination, equal pay, and retaliation statutes, including Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*, as amended; the Equal Pay Act of 1963, 29 U.S.C. § 201 *et seq.*; the California Equal Pay Act, Cal. Lab. Code § 1197.5; the California Fair Employment and Housing Act, ("FEHA"), Cal. Gov. Code § 12940 *et seq.* Plaintiffs seek monetary and injunctive relief to rectify UPS' discriminatory practices and policies and to ensure that, going forward, UPS abides by the law.

## II.     THE PARTIES

13. **Plaintiff, Galena Goins** is a woman who, at all times relevant to this action, lived and worked in California. At present, Galena Goins is an employee employed the UPS Hub

CLASS AND COLLECTIVE ACTION COMPLAINT

in Oakland, in the Small Sort Area.

14. **Plaintiff, Sonia Lopez** is a woman who, at all times relevant to this action, lived and worked in California. At present, Sonia Lopez is an employee employed the UPS Hub in Oakland, in the Small Sort Area.

15. **Plaintiff Terry A. Jones-Jackson** is a woman who, at all times relevant to this action, lived and worked in California. At present, Terry A. Jones-Jackson is an employee the UPS Hub in Oakland, in the Small Sort Area.

| Number | Our clients | Age | Start Date at UPS |
|--------|-------------|-----|-------------------|
| 1. | Galena Goins | 59 | August 31, 1999 |
| 2. | Sonia Lopez | 45 | October 21, 1999 |
| 3. | Terry A. Jones-Jackson | 54 | January 01, 1999 |

### III.   JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. § 1331 and has supplemental jurisdiction over Plaintiffs' state law claims. The claims constitute the same case and controversy raised in the claims under federal law.

17. The Northern District of California has personal jurisdiction over the UPS and by extension Moreno because UPS transacts significant business in the State of California and in this District.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5 (f) because Defendant conducts substantial business in the Northern District of California, and because, upon information and belief, unlawful employment practices originated in this District.

19. Plaintiffs duly filed their administrative charges before the California Department of Fair Employment and Housing ("DFEH") and the U.S. Equal Employment Opportunity Commission ("EEOC") on (Goins) November 20, 2020 and received a right to sue on August 26, 2021, (Lopez) filed on September 8, 2020, and received a right to sue on August 23, 2021, (Jones-Jackson) filed on October 5, 2021 and received her right to sue the same day. (Exhibits A-C)

CLASS AND COLLECTIVE ACTION COMPLAINT

## IV.   **FACTUAL ALLEGATIONS**

### A.   **What Happened When You are a Women with Seniority: UPS Routinely Holds Back Women Who appear outwardly feminine and are over the age of 40.**

20. Outwardly feminine women, even those who are considered the "best," are not safe at UPS. Indeed, these women are strikingly absent from the upper ranks of management to understand what happens to high-performing women at UPS.

21. UPS boasts of its "EQUAL OPPORTUNITIES" for employees, including the promise that all are treated with respect. But in reality, they do not respect women, instead they take younger employees and allow them to work double shifts when plaintiffs had to struggle for years to get the same hours.   Further, the older women are forced to wait in an area until they are told where to go while younger employees are allowed to go straight to the work area of their choosing.  With respect to Moreno and his gender discrimination, it is common knowledge that he prefers men, and he carries out his preference by picking all men who previously worked in the San Bruno Hub to work in his area.  These areas are supposed to be left for people such as plaintiffs who have high seniority, each having at least 22 years at the company.

22. UPS discriminates against Plaintiffs and other female employees, especially those over the age of forty, by denying opportunities for greater pay and limiting progression. UPS reinforces stereotypes that older women are worse at and less committed to their jobs and sets in motion a chain of events that leads to a dead end. When they seek additional shifts, they are denied extra shift assignments or if given an additional shift the women's time is stolen through false reporting, being sent home early, and being told to clock out if they stand idle whereas men are allowed to stand around and remain on the clock until they decide to clock out.

23. The stereotype becomes self-reinforcing, and women become stuck. They now face a Hobson's choice: stay in an assigned shift in an area that they are told to go in violation of seniority, or face intimidation, menacing stares, wage theft and retaliatory staffing.

24. In some cases, female employees are not even given the courtesy of receiving notification that a new job will open. Only through checking on the Board, after the position is filled, do they find the news: despite meeting expectations, or even stellar performance, they will not be progressing with their peers.

CLASS AND COLLECTIVE ACTION COMPLAINT

25. Men, in general, are not subjected to the same unlawful practices.

**B. UPS' Male-Dominated Hierarchy Sets Policies that Disparately Impact Disabled Women who can Still Perform Their Jobs with an Accommodation**

26. Men dominate UPS' leadership and management

27. Promotion and compensation decisions at UPS are controlled by male management.

28. UPS discriminates against women by permitting its predominantly male leadership to favor men overtly in pay, promotions, and other opportunities regardless of their qualifications and to otherwise discriminate against women, especially those over 40. UPS leadership fosters  or condones a culture that marginalizes, demeans, and undervalues women and mothers.

29. UPS' leadership is aware of its inequitable promotion, pay, job assignment, and other practices but have taken no steps to remedy the root causes of the disparity. Defendant is aware of the demographics of its workforce, including the underrepresentation of women in different levels and functions.

30. Defendant is aware of its own misconduct, but it has failed to rectify the discrimination.

## V.    PLAINTIFF, GALENA GOINS

31. Plaintiff, Galena Goins currently works in one of UPS' California offices.

32. On or about August 31, 1999, Plaintiff, Galena Goins joined UPS as a hub sorter and loader/unloader.

33. Ms. Goins excelled at her duties at the UPS many several years.

**A. Joining Ups: When Ms. Goins started, she was an unloader, and she would finish three to four trucks a night, because she was so fast.  Drake and other supervisors recognized her as a leader.**

34. From 1999 to 2011, Ms. Goins worked in loading and unloading and eventually moved to small sort after her supervisor verbally assaulted her and she complained to his supervisor, Drake Holloman.

35. Slowly Drake moved Ms. Goins to small sort on a nightly basis, based on her good performance, but it was not permanent until about two months later this was 2012. Believing that Drake would protect her from further acts of aggression, Ms. Goins joined

CLASS AND COLLECTIVE ACTION COMPLAINT

small sort as a permanent assignment.

36. Ms. Goins continued in this role for some time until the HUB closed in 2017 for remodeling, after it reopened in 2018, the San Bruno Hub joined the Oakland Hub came in January 2018.  Ms. Goins had no history of performance issues, nor had she ever been held back previously during her time at UPS.

37. Ms. Goins has been employed at UPS for over 20 years.  She has seniority and is entitled to receive preference to work less strenuous jobs.

38. Ms. Goins also has had two knee replacements and periodically needs to take off from work due to her knees going out and her back pain.

39. From March 2018 to present Ms. Goins has been denied the interactive process and reasonable accommodation based on her disability.   From March 2018 to the present, she requested to be placed in the Sorting area and a pad to walk on due to her disability; however, her accommodation was denied.

40. The location involved was the Oakland hub, where Plaintiffs all had higher seniority then the men that took over or attempted to take over their jobs and this violated the CBA. Upon information and belief, the key difference between the members who progressed, and Ms. Goins status as a woman who had disability issues.

**B. UPS <u>Retaliation</u> against Plaintiff, Galena Goins Due to her Gender, Age, and Disability**

41. In January of 2019, a group of workers from the San Bruno hub moved to the Oakland hub where Plaintiff is employed.

42. The supervisors in the group wanted to replace Ms. Goins because she had a better position in small sort.

43. Supervisor Ricardo Moreno began to harass Ms. Goins to try and force her out of her jobs because he wanted it to go to his friend, a male with less seniority.  So, he would pile on extra work and dump bags onto the ground, stand behind her and force her to work faster.  He would yell and scream for Ms. Goins to take her *ass* back to small sort.

44. He would only do this because she was African American, over 40 and a woman.   Ms. Goins also witnessed sexual harassment.

CLASS AND COLLECTIVE ACTION COMPLAINT

45. Connor O'Reilly another supervisor always asks for hugs from younger women who work at the hub and wear see through clothes.  Ms. Goins has seen him stare like he is looking through clothing of women.

46. This kind of discriminatory conduct based on Plaintiff, Galena Goins' gender, age, and disability were not limited to Supervisor Ricardo Moreno. Another supervisor Connor O' Reilly always treated less favorably because Plaintiff, Galena Goins does not wear see through clothes and is middle aged.

47. Retaliation:
    a. Letter dated April 12, 2019:
       Official warning for failure to follow proper load methods.
    b. Letter dated May 6, 2019:
       Official warning for failure to follow proper load methods.
    c. Letter dated November 14, 2019:
    d. Official discharge of gross insubordination and inappropriate conduct in the workplace and failure to follow instructions.
    e. Plaintiff was placed in an area that inflamed her knees and she had to refuse work because of the danger that assignment caused to the viability of her knees.

**C. UPS <u>Unfairly Evaluated</u> Plaintiff, Galena Goins performance because of her Gender, Age and Disability**

48. In January of 2019, a group of workers from the San Bruno hub moved to the Oakland hub where Plaintiff is employed.

49. The supervisors in the group wanted to replace Ms. Goins because she had a better position in small sort.  As a result, Ricardo Moreno began to harass Ms. Goins to try and force her out of her jobs because he wanted it to go to his friend, a male with less seniority.  So, he would pile on extra work and dump bags onto the ground, stand behind her and force her to work faster.

50. From January 2019 to the present, she has been subjected to differential treatment based on her sex/gender (female) and age (58).  From January 2019 to the present Ricardo Moreno assigns her extra duties and heavier work moved her from the back are to the bagging area and does not provide her help.  Younger male co-workers are not treated in the same manner.

51. On or about April 12, 2019, Plaintiff, Galena Goins got a letter as retaliation - Official

CLASS AND COLLECTIVE ACTION COMPLAINT

warning for failure to follow proper load methods.

52. On or about May 6, 2019, Plaintiff, Galena Goins got another letter as retaliation - Official warning for failure to follow proper load methods.

53. Plaintiff was placed in an area that inflamed her knees and she had to refuse work because of the danger that assignment caused to the viability of her knees.

54. On or about November 14, 2019, Plaintiff, Galena Goins got a letter as retaliation - Official discharge of gross insubordination and inappropriate conduct in the workplace and failure to follow instructions.

55. Supervisor Ricardo Moreno would only do this because Ms. Goins was African American, over 40 and a woman with disability issues, and because she reported him to the state of California.


**D. "Ramp Up" Your Efforts: Following her disability issues, UPS <u>Denied any Employment Benefit or Privilege</u> to Plaintiff, Galena Goins.**

56. Ms. Goins never had performance issues, moreover supervisors recognized her as a leader.

57. In January of 2019, a group of workers from UPS' San Bruno Hub moved to the Oakland Hub where plaintiffs work.   At Oakland hub Plaintiff, Galena Goins had higher seniority then the men that took over or attempted to take over the job.

58. In September 2020 Goins was subjected to differential treatment based on her sex/gender (female) and age (58).

59. In September 2020 Ms. Goins was evaluated three times in one month and written due to work performance.

60. Ms. Goins aware that male co-workers are not evaluated three times in a month.

61. In September 2020 Ms. Goins work hours were reduced by 1-2 hours per shift.

62. Ms. Goins aware that younger male co-workers' hours have not been reduced.

63. In response to this unrealistic expectation, Ms. Goins requested for grievance investigation.

64. Mr. Marcus stands behind Ms. Goins and force her to work faster. He has been writing fake reports regarding Ms. Goins.   Ms. Goins supervisors would not allow her to meet her hourly requirements. Ms. Goins work hours were reduced by 1-2 hours per shift.

CLASS AND COLLECTIVE ACTION COMPLAINT

65. Galena Goins Grievances timeline:

| No. | Date | Subject | Type |
|-----|------|---------|------|
| 1. | October 21, 2020 | Harassment | Marcus made false claim about my work |
| 2. | October 20, 2020 | Harassment | Ricardo claims I am not working fast enough |
| 3. | October 13, 2020 | Harassment/ retaliation | Forced to switch job area |
| 4. | October 7, 2020 | Harassment | Marcus made false/unprovoked write UPS |
| 5. | October 7, 2020 | Harassment | Marcus false write up/I requested meeting |
| 6. | October 5, 2020 | Harassment | Marcus unnecessary & unprovoked observation of my work |
| 7. | September 22, 2020 | Harassment | Marcus forced heavy workload on me |
| 8. | September 21, 2020 | Harassment | Marcus contradicting work instructions |
| 9. | September 18, 2020 | Harassment | Marcus claims I am not working fast enough |
| 10. | September 16, 2020 | Harassment | Marcus claims I am not working fast enough |
| 11. | September 12, 2020 | Harassment | Marcus unprovoked & false write up |

66. Ms. Goins has sought, but UPS has failed to provide, any substantive guidance or development plan to meet the hours requirements imposed upon her in light of the dearth of work opportunities she faces. Instead, Ms. Goins is being pushed out.

## VI.    PLAINTIFF, SONIA LOPEZ

67. Plaintiff, Sonia Lopez currently works in one of UPS' California offices.

68. On or about October 21, 1999, Plaintiff, Sonia Lopez joined UPS as a bagger.

69. Since joining UPS, Sonia Lopez has excelled in her job duties at UPS. She has been a committed employee and involved in many UPS initiatives.

### A. UPS Employee Conner O'Reilly Sexually Harassed Plaintiff, Sonia Lopez as a Bystander

70. Supervisor, Conner O'Reilly sexually harassed other women in front of Ms. Lopez.

CLASS AND COLLECTIVE ACTION COMPLAINT

The harassment is visual and verbal in nature.

71. Since April 2018, Mr. O'Reilly would frequently leer at other female co-workers and positioned himself in order to peer under their clothing.

72. Ms. Lopez has reported the harassment to the DFEH in June 2020, but no actions were taken.

73. The harassment continued and created a hostile work environment for Ms. Lopez.

74. This was not rectified also, after Sonia Lopez' colleagues, Galena Goins and Terry A. Jones-Jackson, raised the issue with the DFEH.

75. Ms. Lopez was berated by her male supervisors Connor O'Reilly and Ricardo Moreno; was followed around her job and forced to work in unsafe environments.

76. When she complained, her harassers were simply moved to other departments, and she was retaliated against by having her work compromised and the destinations of her packages changed.

**B. UPS discriminated Plaintiff, Sonia Lopez <u>Denied Work Opportunities or Assignments</u> based on her Age, Gender, and Race**

77. Ms. Lopez had no history of performance issues, nor had she ever been held back previously during her time at UPS.

78. Ms. Lopez is 45 years old and was subjected to disparate treatment by her employer UPS.

79. The disparate treatments include but not limited to consistently made to work faster and was assigned heavier jobs despite having more seniority.

80. She was also required to clean up areas that she is not responsible for.

81. Ms. Lopez had been forced to end her shift prematurely several times and most recently on June 12, 2020.

82. Ms. Lopez aware that her younger co-workers and male co-workers in general were not treated similarly.  She believes that she was discriminated based on her age and gender.

83. Throughout her tenure at UPS, Sonia Lopez has never had problems with her performance. In fact, she has never been written up.

**C. UPS Discriminated against Plaintiff, Sonia Lopez was <u>Harassed</u> based on her**

CLASS AND COLLECTIVE ACTION COMPLAINT

**Disability.**

84. Ms. Lopez has been harassed repeatedly since returning from medical leave after a shoulder injury.

85. On or about June 19, 2020, Ms. Lopez requested to be moved to other areas that requires less heavy lifting due to her previous work injury.

86. Ms. Lopez was not given the interactive process and her request was ignored.

87. She was prevented from going to a "small sort" department and forced to work "outbound" loads despite her injury.

88. This was not the first time UPS discriminated against her due to her disability.

89. Ms. Lopez believes that she was discriminated and denied reasonable accommodation for her disability.

90. Males at UPS have not experienced the same discrimination as to female workers in the group.

**D. UPS <u>Retaliation</u> against Plaintiff, Sonia Lopez**

91. Ms. Lopez job description stated that she was not to lift over 25 lbs.

92. Although Ms. Lopez was able to return to work, she is restricted to lift heavy weights overhead.

93. According to her doctor's note:

a) No lifting greater than 10 pounds right upper extremity.

b) No lifting greater than 5 pounds overhead.

c) 10-minute break every hour.

94. But after filing grievances she was placed on irregulars, which are 70lbs or over big boxes or very small and over 100 lbs. she cannot flip these.

95. This was done to retaliate against her.  Ms. Lopez believes that she was discriminated and denied reasonable accommodation for her disability.


**VII.   <u>PLAINTIFF, TERRY A. JONES-JACKSON</u>**

96. Plaintiff, Terry A. Jones-Jackson currently works in one of UPS' California offices.

97. On or about January 1, 1999, Plaintiff, Terry A. Jones-Jackson joined UPS as a hub sorter and loader/unloader.

CLASS AND COLLECTIVE ACTION COMPLAINT

98. Since joining UPS, Terry A. Jones-Jackson has excelled in her job duties.

**A. UPS discriminated against Plaintiff, Terry A. Jones-Jackson for <u>Equal Pay</u> Due to her Gender, Age, and Disability.**

99. Plaintiff, Terry A. Jones-Jackson has been employed at UPS for over 20 years.   She has seniority and is entitled to receive Equal Pay as male sorter of same seniority.

100.    On or about December 2018, Terry A. Jones-Jackson discovered that her salary no longer matched up to her as her male colleagues; she had not been promoted with her peers, nor had she received the corresponding salary increase that should have accompanied her anticipated promotion.

101.    Terry A. Jones-Jackson had no history of performance issues, nor had she ever been held back previously during her time at UPS.

102.    Plaintiff, Terry A. Jones-Jackson was denied equal pay based on her gender.

103.    Upon information and belief, within Terry A. Jones-Jackson office alone, more male colleagues in the same office were advanced with Terry A. Jones-Jackson's seniority and received the corresponding pay increase. Upon information and belief, the key difference between the males who got paid more, and Terry A. Jones-Jackson was Ms. Jones-Jackson's status as a woman and African American, over forty.

**B. UPS discriminated Plaintiff, Terry A. Jones-Jackson's <u>Denied any Employment Benefit or privileges</u> due to her Gender and Race.**

104.    Plaintiff, Terry A. Jones-Jackson has been employed at UPS for over 20 years.  She has seniority and is entitled o receive preference to pick rom the jobs that are available.

105.    Terry A. Jones-Jackson had a better position in small sort work area. She had been in that position for two years.

106.    In January of 2019, a group of workers from the San Bruno Hub moved to the Oakland Hub where Plaintiff, Ms. Jones-Jackson was employed.  The supervisors in the group wanted to replace Ms. Jones-Jackson because she had a better lighter position in small sort.

107.    They end up moving Ms. Jones-Jackson from this position. They did this because Ms. Jones-Jackson is a female and African American.

CLASS AND COLLECTIVE ACTION COMPLAINT

108.    The supervisor assigns to drag every heavy bag to printer and placed tag on it.  Ms. Jones-Jackson never had a problem with labels.  Those bags are heavy over 50 pounds and need to drag them to printer each time on the twilight. Ms. Jones-Jackson's health is deteriorated because of this shift.

109.    Ms. Jones-Jackson later figured out that the other workers are having problems placing tags on the bags and tough to drag those heavy bags.  Many other workers also refused to work on the twilight.

110.    Based on her seniority Ms. Jones-Jackson can pick from the jobs that are available.  But Ms. Jones-Jackson was allocated this shift and job.   Ms. Jones-Jackson was threatened to send her home.  Supervisors told Ms. Jones-Jackson, if she does not drag those heavy bags, she won't be able to work on this shift.

111.  Ms. Jones-Jackson was always singled out at work.


**C. UPS discriminated Plaintiff, Terry A. Jones-Jackson <u>Denied Work Opportunities or Assignments</u> Due to her Gender and Race.**

112.    On or about January 2019 to February 2020 Ms. Jones-Jackson was denied Work Opportunities based on her gender.

113.    Ms. Jones-Jackson's supervisor told, if he needed help in, he would call Ms. Jones-Jackson.

114.    Ms. Jones-Jackson know that they go by seniority and employees also need to be on time for the shift.

115.    On Friday January 8, 2019 twilight started at 3:30 p.m. Ms. Jones-Jackson did not get a call or text to work.  She was told that another employee already came in.  But the other employee (who is a male) arrived at 5:45 whereas the shift starts at 3:30 p.m.

116.    When Ms. Jones-Jackson checked about her shift, she was told that she needs to be on time if she wants to do double shift.

117.    The management denied Ms. Jones-Jackson the opportunity to work overtime, while a male sorter with same seniority was allowed to work overtime.

118.    Upon information and belief, male colleagues were given preference and excused from being on time to shift.

CLASS AND COLLECTIVE ACTION COMPLAINT

**D. UPS Employee Connor O'Reilly <u>Sexually Harassed</u> Plaintiff, Terry A. Jones-Jackson Due to Age and Gender**

119.    From on or about January 2019 to date Ms. Jones-Jackson have been subjected to sexual harassment-hostile work environment by manager Connor O'Reilly.

120.    Ms. Jones-Jackson also witnessed sexual harassment.

121.    During the period Ms. Jones-Jackson observed Mr. O'Reilly stare at females who wear see-through clothes and tight pants.

122.    He always asks for hugs from younger women who work at hub and wear see through clothes on a daily basis which created a hostile environment.

123.    As a supervisor Mr. O'Reilly treated Ms. Jones-Jackson less favorably because she does not wear see through clothes and is middle aged.

124.    UPS tries to steal Ms. Jones-Jackson's time by having supervisors work when they re not supposed to work.

125.    UPS send in supervisors to work to finish the jobs to send women home earlier, at a rate of thirty (30) minutes a shift.


**E. UPS discriminated against Plaintiff, Terry A. Jones-Jackson <u>Denied Work Opportunities or Assignments</u> Due to her Race and Gender.**

126.    On or about January 2019 to date Ms. Jones-Jackson have been denied Work Opportunities or Assignments based on sexual harassment-hostile work environment.

127.    UPS engaged supervisors who are fair and discriminate against employees because of Age and Race.

128.    Supervisors have made her lose income by letting low seniority employees work while not allowing Ms. Jones-Jackson to work.

129.    UPS should not be able to terminate employees without approval of union. Jones-Jackson has been terminated twice, one time while she was on vacation.

130.    When they fired Ms. Jones-Jackson, they disconnected her UPS stock withdrawal to buy stock & it has been that way since 2017.

131.    UPS never paid Ms. Jones-Jackson for all the grievances through the years.

132.    UPS stole a 1:00 hour off Ms. Jones-Jackson's pay and never gave her back pay.

133.    They hired low seniority employees and gave them full times jobs and Ms. Jones-

Jackson is still part time and but has more seniority. They have been at the Oakland hub (low seniority employees with full time jobs) going on two years.

134.    Manager Jimmy and Robin removed Ms. Jones-Jackson from Small Sort group.

135.    Supervisor Connor O'Reilly removed Ms. Jones-Jackson from small sort assignment and replaced her with females he stares at who wear see-through clothes and tight pants, and whom he asks for hugs.

## F. UPS Retaliation against Plaintiff, Terry A. Jones-Jackson

136.    Ms. Jones-Jackson started at UPS from January 1, 1999 and she has been employed at UPS for over 20 years.

137.    Although Ms. Jones-Jackson going to complete 22 years with UPS, the supervisors always discriminated against her.

138.    Retaliation:
   a.    Letter dated July 10, 2017:
         Official warning for undependability.
   b.    Letter dated April 10, 2018:
         Official warning for failure to follow proper load methods.

   c.    Letter dated March 05, 2019:
         Official warning for undependability.
   d.    Letter dated April 05, 2019:
         Official warning for failure to follow instructions.
   e.    Letter dated April 10, 2019:
   f.    Official warning for failure to follow instructions.
   g.    Terminated twice and rehired.
   h.    Given less pay than male counterpart.

## CLASS AND COLLECTIVE ALLEGATIONS

139.    Plaintiffs incorporate allegations from the previous paragraphs of the Complaint alleging class-based discrimination against female employees, who are over forty years old and/or with a disability.

140.    Plaintiffs represent a class consisting of all female employees at Us who have or will be employed by UPS in the United States from November 9, 2017 to the date

CLASS AND COLLECTIVE ACTION COMPLAINT

of judgment, as well as subclasses of all female employees who have been or will be employed by UPS: (a) in the United States, and who were over forty years old, and/or disabled between November 9, 2017 and the date of judgment (the "class"); (b) in California from November 9, 2017 to the date of judgment (the "California subclass"); (c) California from November 9, 2017 to the date of judgment (the "CEPA subclass"); and (e) in California from November 9, 2017 to the date judgment (the "California Unfair Competition" subclass).

141.    Plaintiffs also seek to represent a collective of female employees employed by UPS from November 9, 2017 to the date of judgment (a) who were not compensated equally to male employees who had substantially similar job classifications, functions, titles, and/or duties, (b) who were not compensated equally to male employees who performed substantially similar work and/or (c) who were denied equal compensation to similarly situated male employees by being held back to lower pay levels and/or prevented from picking up extra shifts at the same level of similarly situated male employees who performed substantially similar work.

## VIII.   CLASS ALLEGATIONS UNDER RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE

142.    UPS tolerates and cultivates a work environment that discriminates against female employees, in particular those who are who are over forty years old and/or with a disability.

143.    Female employees, who are over forty years old and/or with a disability are subjected to continuing unlawful disparate treatment in pay and work opportunities. Moreover, UPS' policies and procedures have an ongoing disparate impact on female employees, who are over forty years old and/or with a disability.

144.    UPS maintains policies and methods of scheduling employees that promote gender- based inequities in compensation, and policies and methods for advancement that lead to gender-based unequal promotion. UPS' discriminatory policies, practices, and procedures include a system where women who are over forty years old and/or with a disability are denied opportunities for advancement at UPS, as well as the opportunity to work additional shifts afforded to their male colleagues.

145.   UPS' nationwide practices, policies, and procedures result in lower compensation for female employees than similarly situated male employees.

146.   In general, the policies, practices, and procedures that govern the pay and promotions of female employees lack the sufficient standards, quality controls, implementation metrics, transparency, and oversight to ensure equal opportunity at UPS.

147.   Because UPS' management does not provide sufficient oversight or safety measures to protect against intentional and overt discrimination or the disparate impact of facially neutral policies and procedures, female employees suffering from discrimination are without recourse. Whatever complaint and compliance policies may exist, lack meaningful controls, standards, implementation metrics, and means of redress such that upper management may ignore, disregard, minimize, cover up, mishandle, or otherwise fail to properly respond to evidence of discrimination in the workplace.

148.   UPS' policies, practices, and procedures are not valid, job-related, or justified by business necessity. Alternative, objective, and more valid procedures are available to UPS that would avoid such a disparate impact on female employees. UPS has failed or refused to use such  alternative procedures.

149.   Upon information and belief, UPS' discriminatory employment practices, policies, and procedures are centrally established and implemented at the highest levels of UPS.

150.   Upon information and belief, UPS' employment policies, practices, and procedures are not unique or limited to any location; rather, they apply uniformly and systematically to employees throughout UPS, occurring as a pattern and practice throughout all locations.

151.   Because of UPS' systemic pattern and practice of gender discrimination,  the Plaintiffs and members of the proposed Class have suffered harm including lost compensation, back pay, employment benefits, and emotional distress.

152.   The Plaintiffs and members of the Class have no plain, adequate, or complete remedy at law to redress the rampant and pervasive wrongs alleged herein, and this suit is their only means of securing adequate relief. The Plaintiffs and members of the Class have suffered and are now suffering irreparable injury from UPS' ongoing,

19

unlawful policies, practices, and procedures set forth herein, and they will continue to suffer unless those policies, practices, and procedures are enjoined by this Court.

## A. Rule 23 Class Definition

153.    The proposed Rule 23 Class consists of all female employees who are, have been, or will be employed by UPS in the United States from November 9, 2017 until the date of judgment.  Upon information and belief, there are more than 40 members of the proposed Class.

154.    Plaintiffs also seek to represent subclasses of female employees who are, have been or will be employed at UPS in: (a) in the United States, and who have been or will reach forty-years of age and/or become disabled from November 9, 2017 and the date of judgment (the "class").

155.    Plaintiffs are each member of the Class and subclass.

156.    The systemic gender discrimination described in this Complaint has been, and is, continuing in nature.

157.    Plaintiffs reserve the right to amend the class definitions based on discovery or legal developments.

## B. Efficiency of Class Prosecution of Class Claims

158.    Certification of the proposed classes and sub-classes is the most efficient and economical means of resolving the questions of law and fact that are common to the claims of the Plaintiffs and the Class.

159.    The individual claims of Plaintiffs, as Class Representatives, require resolution of the common questions concerning whether UPS has engaged in a pattern and/or practice of gender discrimination against its female employees, particularly against women who are over forty and/or disabled, and whether its policies or practices have an adverse effect on the Class. Class Representatives seek remedies to eliminate the adverse effects of such discrimination in their own lives, careers, and working conditions and in the lives, careers, and working conditions of the Class members, and to prevent UPS' continued gender discrimination.

CLASS AND COLLECTIVE ACTION COMPLAINT

160.    The Class Representatives have standing to seek such relief because of the adverse effect that such discrimination has on them individually and on female employees generally. UPS caused Plaintiffs' injuries through its discriminatory practices, policies, and procedures and through the disparate impact its policies, practices, and procedures have on female employees. These injuries are redressable through systemic relief, such as equitable and injunctive relief and other remedies sought in this action. In addition, proper relief for Plaintiffs' individual discrimination claims can include promotion and increased compensation. Plaintiffs have a personal interest in the policies, practices, and procedures implemented at UPS

161.    To obtain relief for themselves and the Class members, the Class Representatives will first establish the existence of systemic gender discrimination as the premise for the relief they seek. Without class certification, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

162.    Certification of the proposed Class is the most reasonable and efficient means of presenting the evidence and arguments necessary to resolve such questions for the Class Representatives, the Class members and UPS.

### C. Numerosity and Impracticability of Joinder

163.    The Class that the Class Representatives seek to represent is so numerous that joinder of all members is impracticable. In addition, joinder is impractical as the employees are physically based in different locations throughout the United States and California. Fear of retaliation on the part of UPS' female employees is also likely to undermine the possibility of joinder.

### D. Common Questions of Law and Fact

164.    The prosecution of the claims of the Class Representatives will require the adjudication of numerous questions of law and fact common to their individual claims and those of the Class they seek to represent.

165.    The common issues of law include, *inter alia*: (a) whether UPS has engaged in

CLASS AND COLLECTIVE ACTION COMPLAINT

unlawful, systemic gender discrimination in its work assignment, promotion, and compensation policies, practices, and procedures; (b) whether the failure to institute adequate standards, quality controls, implementation metrics or oversight of those policies, practices, and procedures violates Title VII, the FEHA, or the CEPA, and/or other statutes; (c) whether the lack of transparency and opportunities for redress in those systems violates Title VII, the FEHA, the CEPA, and/or other statutes; (d) a determination of the proper standard for proving whether UPS' employment policies had a disparate impact on the Class and Sub- Class; (e) a determination of the proper standards for proving a pattern or practice of discrimination by UPS against its female employees, and under the disparate treatment theory of liability for employees; (f) whether UPS' failure to prevent, investigate, or properly respond to evidence and complaints of discrimination in the workplace violates Title VII and other statutes; and (g) whether UPS is liable for continuing systemic violations of Title VII and other statutes.

166.    The common questions of fact include, *inter alia*: whether UPS has: (a) intentionally held back female employees who are over 40 and/or disabled on its pay scale because UPS does not give equal opportunities to work additional shifts; (b) used a compensation system that lacks appropriate standards, implementation metrics, quality controls, transparency, and opportunities for redress; (c) relied on compensation criteria that perpetuate discrimination; (d) compensated female employees less than similarly-situated male employees in salary and/or promotions; (e) minimized, ignored, or covered-up evidence of gender discrimination in the workplace and/or otherwise mishandled the investigation of and response to complaints of discrimination; (f) cultivated an indifference to evidence of discrimination in the workplace or otherwise minimized, ignored, mishandled, or covered up evidence of or complaints of gender discrimination; and (g) otherwise discriminated against female employees, especially those who are over forty and/or disabled, in the terms and conditions of employment.

167.    Upon information and belief, UPS' employment policies, practices, and procedures are not unique or limited to any location; rather, they apply uniformly and systematically to employees throughout UPS, occurring as a pattern and practice

throughout all locations. They thus affect the Class Representatives and Class members in the same ways regardless of the location in which they work. Discrimination in compensation occurs as a pattern and practice throughout UPS.

### E. Typicality of Claims and Relief Sought

168.    The Class Representatives' claims are typical of the claims of the proposed Class. The Class Representatives possess and assert each of the claims they assert on behalf of the proposed Class. They pursue the same factual and legal theories and seek similar relief.

169.    Like members of the proposed Class and Sub-Classes, the Class Representatives are female employees who were employees of UPS during the liability period and who were over forty and/or disabled during the liability period.

170.    Differential treatment between male and female employees occurs as a pattern and practice throughout UPS. UPS discriminates against female employees, especially those who are over forty and/or disabled, in compensation and promotion and subjects them to a work culture predominated by men. This differential treatment has affected the Class Representatives and the Class members in the same or similar ways.

171.    UPS has failed to respond adequately or appropriately to evidence and complaints of discrimination. The Class Representatives and Class members have been affected in the same or similar ways by UPS' failure to implement adequate procedures to detect, monitor, and correct this pattern and practice of discrimination.

172.    UPS has failed to create adequate procedures to ensure its management complies with equal employment opportunity laws regarding each of the policies, practices, and procedures referenced in this Complaint, and UPS has failed to discipline adequately supervisors when they violate anti-discrimination laws. These failures have affected the Class Representatives and the Class members in the same or similar ways.

173.    The relief necessary to remedy the claims of the Class Representatives is the same as that necessary to remedy the claims of the proposed Class members.

174.    The Class Representative seeks the following relief for their individual claims and for the claims of the members of the proposed Classes: (a) a declaratory judgment that

UPS has engaged in systemic gender discrimination against female employees by (i) denying work opportunities to female employees who are over forty and/or disabled and on the basis of gender, (ii) paying female who are over forty and/or disabled less than their male counterparts in base compensation, (iii) failing to investigate or respond to evidence of discrimination in the workplace against female employees, especially those who are over forty and/or disabled, and (iv) otherwise exposing female employees, especially those who are over forty and/or disabled, to differential treatment; (b) a permanent injunction against such continuing discriminatory conduct; (c) injunctive relief that effects a restructuring of UPS' policies, practices, and procedures for promoting and awarding compensation to female employees; (d) equitable relief that effects a restructuring of UPS compensation system so female employees receive the compensation they would have been paid in the absence of UPS' discrimination; (e) back pay, front pay, reinstatement, and other equitable remedies necessary to make female employees whole from UPS' past discrimination; (f) compensatory damages; (g) punitive damages to deter UPS from engaging in similar discriminatory practices in the future; and (h) employees' fees, costs, and expenses.

### F. Adequacy of Representation

175.   The Class Representatives' interests are coextensive with those of the members of the proposed Class. The Class Representatives seek to remedy UPS' discriminatory policies, practices, and procedures so female employees, and those over forty and/or disabled, will not receive disparate pay and differential treatment.

176.   The Class Representatives are willing and able to represent the proposed Class fairly and vigorously as they pursue their similar individual claims in this action.

177.   The Class Representatives have retained counsel sufficiently qualified, experienced, and able to conduct this litigation and to meet the time and fiscal demands required to litigate an employment discrimination class action of this size and complexity. The combined interests, experience, and resources of the Class Representatives and their counsel to litigate competently the individual and class

claims at issue in this case clearly satisfy the adequacy of representation requirement of Federal Rule of Civil Procedure 23(a)(4).

### G. Requirements of Rule 23(b)(2)

178.   UPS has acted on grounds generally applicable to the Class Representatives and the proposed Class by adopting and following systemic policies, practices, and procedures that discriminate on the basis of gender, age and disability. Gender discrimination is UPS' standard operating procedure rather than a sporadic occurrence.

179.   UPS has also acted or refused to act on grounds generally applicable to the Class Representatives and the proposed Class by, *inter alia*: (a) using a scheduling system that systematically intentionally, or knowingly disadvantages women; (b) systematically, intentionally, or knowingly denying work opportunities for women in favor of similarly situated males; (c) using a scheduling system that lacks meaningful or appropriate standards, implementation metrics, quality controls, transparency, and opportunities for redress: (d) compensating women less than similarly situated males in salary; (e) systematically, intentionally, or knowingly compensating women less than similarly situated male employees, including less base salary; (f) minimizing, ignoring, or covering up evidence of gender, age and disability discrimination in the workplace and/or otherwise mishandling the investigation of and response to complaints of discrimination; (g) cultivating an indifference to evidence of discrimination in the workplace or otherwise minimizing, ignoring, mishandling, or covering up evidence of or complaints of gender, age, and disability discrimination: and (h) otherwise discriminating against women in the terms and conditions of employment as employees.

180.   UPS' policies, practices, and procedures with respect to compensation have led to gender, age, and disability discrimination and stratification. The systemic means of accomplishing such gender-based stratification include, but are not limited to, UPS' policies, practices, and procedures for awarding base compensation, bonus pay, and opportunities to take on extra shifts to female employees. These practices and procedures all suffer from a lack of transparency. adequate quality standards, and controls; sufficient implementation metrics; and opportunities for redress or challenge.

25

181.   UPS' systemic discrimination and refusals to act on nondiscriminatory grounds justify the requested injunctive and declaratory relief with respect to the Class as a whole.

182.   Injunctive, declaratory, and affirmative relief are a predominant form of relief sought in this case. Entitlement to declaratory, injunctive, and affirmative relief flows directly and automatically from proof of UPS' systemic gender discrimination. In turn, entitlement to declaratory, injunctive, and affirmative relief forms the factual and legal predicate for recovery by the Class Representatives and Class members of monetary and non-monetary remedies for individual losses caused by the systemic discrimination, as well as their recovery of compensatory and punitive damages.

### H. Requirements of Rule 23(b)(3)

183.   The common issues of fact and law affecting the claims of the Class Representatives and proposed Class members—including, but not limited to, the common issues identified above— predominate over any issues affecting only individual claims. The common issues include whether UPS has engaged in gender, age, and disability discrimination against female employees.

184.   A class action is superior to other available means for fairly and efficiently adjudicating the claims of the Class Representatives and members of the proposed Class.

185.   By virtue of the pattern and practice of discrimination at UPS, the Class Representatives and Class members are eligible for monetary remedies for losses caused by the systemic discrimination, including back pay, front pay, reinstatement, compensatory damages and other relief.

186.   Additionally, or in the alternative, the Court may grant "partial" or "issue" certification under Rules 23(c)(4). Resolution of common questions of fact and law would materially advance the litigation for all Class members.

### IX.   COLLECTIVE ALLEGATIONS UNDER THE EQUAL PAY ACT

187.   Plaintiffs incorporate all allegations of the Complaint alleging class-based discrimination.

188.    Plaintiffs bring collective claims under the Equal Pay Act pursuant to Section 16(b) of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b), on behalf of all members of the EPA Collective Action. The EPA Action includes female employees (a) who were not compensated equally to male employees who had substantially similar job classifications, functions, titles, and/or duties, (b) who were not compensated equally to male employees who performed substantially similar work, and/or (c) who were denied equal compensation to similarly situated male employees by being held back to lesser pay levels than male employees who performed substantially similar work and had substantially similar experience.

189.    Plaintiffs and the Collective Action members are similarly situated with respect to their claims that UPS paid and promoted them less than their male counterparts.

190.    There is a common nexus of fact and law suggesting that Plaintiffs and the Collective Action members were discriminated against in the same manner. Questions at issue in the case include:

   a) Whether UPS unlawfully awarded less in base pay to female employees than to similarly qualified male employees;

   b) Whether UPS unlawfully awarded less in bonuses to female employees than similarly qualified male employees;

   c) Whether UPS unlawfully assigned and continues to assign employees into positions with lesser pay and other compensation than similarly qualified male employees;

   d) Whether UPS' resulting failure to compensate female employees on a par with comparable male employees was willful within the meaning of the EPA.

191.    Counts for violations of the EPA may be brought and maintained as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b), for all claims asserted by the EPA Collective Action Plaintiffs who opt-in to this action because the claims of the Plaintiff are similar to the claims of the EPA Collective Action Class.

192.    Plaintiffs and the EPA Collective Action Plaintiffs (a) are similarly situated; (b) have substantially similar job classifications, functions, titles, and/or duties; and (c)

CLASS AND COLLECTIVE ACTION COMPLAINT

are subject to UPS' common policy and practice of gender discrimination in failing to compensate female employees commensurate with compensation given to male employees who perform substantially equal work.

### X.     COUNTS

### CLASS AND COLLECTIVE COUNTS

### COUNT 1

**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000(e) *et seq.*,**

**On Behalf of Class Representatives and all Subclass Members**

193.    Plaintiffs re-allege and incorporate each and every allegation in this Complaint.

194.    This Count is brought on behalf of the Class Representatives and all members of the subclass.

195.    UPS has discriminated against Class Representatives and all members of the subclass in violation of Title VII by subjecting them to different treatment on the basis of their gender, including age and disability.  The members of the Class have been disparately impacted and disparately treated as a result of UPS' wrongful conduct and its policies, practices, and procedures.

196.    UPS has discriminated against the subclass members by treating them differently from and less preferably than similarly situated male employees and female employees, who appear masculine, and by subjecting them to differential and substandard terms and conditions of employment including but not limited to discriminatory denials of fair compensation, discriminatory denials of promotional opportunities, and discriminatory treatment with respect to leave, work responsibilities, and other terms and conditions of employment in violation of Title VII.

197.    UPS' conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Class Representatives and the members of the proposed subclass, entitling the Class Representatives and the

CLASS AND COLLECTIVE ACTION COMPLAINT

members of the subclass to punitive damages.

198.    As a result of UPS' conduct alleged in this Complaint, Class Representatives and the members of the subclass have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

199.    By reason of UPS' discrimination, Class Representatives and members of the Sub-Class are entitled to all legal and equitable remedies available for violations of Title VII, including an award of punitive damages.

200.    Employees' fees should be awarded under 42 U.S.C. § 2000e-5(k).

## COUNT 2

**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000(e)** *et seq.*

### GENDER DISCRIMINATION

### On Behalf of Class Representatives and all Class Members

201.    Plaintiffs re-allege and incorporate each and every allegation in this Complaint.

202.    This Count is brought on behalf of the Class Representatives and all members of the Class.

203.    UPS, an employer of Class Representatives and Class Members within the meaning of Title VII, has discriminated against the Class Representatives and the Class Members in violation of Title VII by subjecting them to different treatment on the basis of their gender, including by engaging in intentional disparate treatment, and by maintaining uniform policies and practices that have an adverse, disparate impact on them.

204.    UPS has engaged in an intentional, company-wide and systemic policy, pattern, and/or practice of discrimination against Class Representatives and the Class by, among other things: maintaining a discriminatory system of determining compensation; maintaining a discriminatory system for promotions; discriminating against Class Representatives and Class members in pay and promotions; discriminatory denials

CLASS AND COLLECTIVE ACTION COMPLAINT

of development opportunities; and other forms of discrimination.

205.   These foregoing common policies, practices, and/or procedures have produced an unjustified disparate impact on Class Representatives and the Class with respect to the terms and conditions of their employment.

206.   As a result of this disparate treatment and disparate impact discrimination, UPS has treated Class Representatives and the Class differently from and less preferentially than similarly situated male employees with respect to pay and promotions.

207.   UPS has failed to prevent, to respond to, to investigate adequately, and/or to appropriately resolve this gender discrimination.

208.   UPS' conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of the Class Representatives and the Class, entitling the Class Representatives and all members of the Class to punitive damages.

209.   By reason of the continuous nature of UPS' discriminatory conduct, which persisted throughout the employment of the Class Representatives and the Class, the Class Representative and all members of the class are entitled to application of the continuing violations doctrine to all violations alleged herein.

210.   By reason of UPS' discrimination, the Class Representatives and the Class are entitled to all legal and equitable remedies available for violations of Title VII.

211.   As a result of UPS' conduct alleged in this Complaint, the Class Representatives and the Class have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, including interest.

212.   As a further result of UPS' unlawful conduct, the Class Representatives and the Class have suffered and continue to suffer, inter alia, impairment to their name and reputation, humiliation, embarrassment, emotional and physical distress, and mental anguish. Class Representative and the Class are entitled to recover damages for such injuries from UPS under Title VII.

213.   Employees' fees and costs should be awarded under 42 U.S.C. § 2000e-5(k).

**COUNT 3**

**VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, Cal. Gov. Code § 12940, *et seq*.**

**GENDER DISCRIMINATION**

**On behalf of Plaintiffs and the California Subclass Members**

214.    Plaintiffs re-allege and incorporate each and every allegation in this Complaint.

215.    This Count is brought on behalf of Plaintiffs in their individual and  representative capacities, and all members of the California subclass.

216.    UPS has discriminated against Plaintiffs and the California subclass in violation of the FEHA by subjecting them to different treatment because and on the basis of their gender, and where they are over age forty and/or disabled, including by engaging in intentional disparate treatment, and by maintaining uniform policies and practices that have an adverse, disparate impact on them.

217.    UPS has engaged in an intentional, company-wide and system policy, pattern, and/or practice of discrimination against plaintiffs and the California subclass by, among other things: maintaining a discriminatory system for scheduling, maintaining a discriminatory system for work assignments, unwarrantedly suppressing pay, promotions, and professional development for women who are over forty and/or disabled, and other forms of discrimination.

218.    These foregoing common policies, practices, and/or procedures have produced an unjustified disparate impact on Plaintiffs and the members of the California subclass with respect to the terms and conditions of their employment.

219.    As a result of this disparate treatment and disparate impact discrimination, UPS has treated Plaintiffs and California subclass differently from and less preferentially than similarly situated male employees and female employees who appear masculine, with respect to pay and promotions.

220.    UPS has failed to prevent, respond to, adequately investigate, and/or appropriately resolve this gender discrimination.

221.    UPS' conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of the Class Representatives and all members of the California subclass, entitling the Class Representatives and all members of the California subclass to punitive damages.

222.    As a result of UPS' conduct alleged in this Complaint, Class Representatives and

CLASS AND COLLECTIVE ACTION COMPLAINT

the California subclass have suffered and continue to suffer harm, including but not limited to, lost earnings, lost benefits, lost future employment opportunities, and other financial loss, as well as non-economic damages.

223.    By reason of the continuous nature of UPS' discriminatory conduct, which persisted throughout the employment of the Class Representatives and the members of the California subclass, the continuing violations doctrine applies to all violations alleged herein.

224.    By reason of UPS' discrimination, Class Representatives and the members of the California subclass are entitled to all legal and equitable remedies available for violations of the FEHA, including reinstatement and an award of compensatory and punitive damages.

225.    Employees' fees should be awarded under Cal. Gov't Code § 12940.

## **COUNT 4**

**VIOLATION OF THE FAIR LABOR STANDARDS ACT OF 1938, *as amended by* THE EQUAL PAY ACT OF 1963, 29 U.S.C. § 216(b)**

**DENIAL OF EQUAL PAY FOR EQUAL WORK**

**On Behalf of Class Representatives and the EPA Collective Action Plaintiffs**

226.    Plaintiffs re-allege and incorporate each and every allegation in this Complaint.

227.    This Count is brought on behalf of Plaintiffs and the EPA Collective Action, including all EPA Collective Action Plaintiffs who "opt-in" to this action.

228.    UPS has discriminated against Plaintiffs and all EPA Collective Action Plaintiffs within the meaning of the Equal Pay Act of 1963 in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 206, et seq., as amended by the EPA, by providing them with a lower rate of pay than similarly situated male colleagues on the basis of their gender, female, even though Plaintiffs and all others similarly situated performed similar duties requiring the same skill, effort, and responsibility as their male counterparts.

229.    Plaintiffs, all EPA Collective Action Plaintiffs, and similarly situated male employees all perform similar job duties and functions. Plaintiffs, all EPA Collective Action Plaintiffs, and similarly situated male employees all performed jobs that

required equal skill, effort, and responsibility.

230.   UPS discriminated against Plaintiffs and all EPA Collective Action Plaintiffs by subjecting them to discriminatory pay in violation of the Equal Pay Act.

231.   The differential in pay between male and female employees was not due to a legitimate seniority, merit, quantity or quality of production, or a factor other than sex, but was due to gender.

232.   UPS caused, attempted to cause, contributed to, or caused the continuation of pay discrimination based on gender, in violation of the EPA. The foregoing conduct constitutes a willful violation of the EPA within the meaning of 29 U.S.C. § 255(a). Because UPS has willfully violated the EPA, a three-year statute of limitations applies to such violations, pursuant to 29 U.S.C. § 255.

233.   As a result of UPS' conduct as alleged in this Complaint, Plaintiffs and all EPA Collective Action Plaintiffs have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

234.   By reason of UPS' discrimination, Plaintiffs and all EPA Collective Action Plaintiffs are entitled to all legal and equitable remedies available for violations of the EPA, including liquidated damages, interest, and other compensation pursuant to 29 U.S.C. § 216(b).

235.   Employees' fees should be awarded under 29 U.S.C. §216(b).

## **COUNT 5**

**VIOLATION OF THE CALIFORNIA EQUAL PAY ACT, *as amended by* THE CALIFORNIA FAIR PAY ACT, Cal. Lab. Code § 1197.5, *et seq*.; CALIFORNIA EQUAL PAY ACT, Cal. Lab. Code § 1197.5**

### **DENIAL OF EQUAL PAY FOR EQUAL & SUBSTANTIALLY SIMILAR WORK**

#### **On behalf of Plaintiffs and the CEPA Subclass**

236.   Plaintiffs re-allege and incorporate each and every allegation in this Complaint.

237.   This Count is brought on behalf of Plaintiffs in their individual and representative capacities, and all members of the CEPA subclass.

CLASS AND COLLECTIVE ACTION COMPLAINT

238.   UPS has discriminated against the Plaintiffs and all members of the CEPA subclass in violation of the California Equal Pay Act, Cal. Lab. Code § 1197.5 (West 2015) (amended 2015), et seq. UPS has paid Class Representative and members of the CEPA subclass less than similarly situated male employees in the same establishment performing equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

239.   UPS has discriminated against the Plaintiffs and the CEPA subclass in violation of the California Equal Pay Act, Cal. Lab. Code § 1197.5 *et seq.* UPS has paid Class Representatives and members of the class less than similarly situated male employees performing substantially equal work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions.

240.   UPS subjected Class Representatives and the members of the CEPA subclass to common discriminatory pay policies, including maintaining a discriminatory system of determining compensation; maintaining a discriminatory system for promotions; and other forms of discrimination affecting pay.

241.   The differential in pay between male and female employees was not due to seniority, merit, or the quantity or quality of production, a bona fide factor other than sex, such as education, training, or experience, but was due to gender. In the alternative, to the extent that UPS relied upon one or more  of these factors, said factor(s) were not reasonably applied and did/do not account for the entire wage differential.

242.   The foregoing conduct constitutes a willful violation of the California Equal Pay Act, Cal. Lab. Code §1197.5 *et seq.*, as amended by the California Fair Pay Act. Therefore, a three-year statute of limitations applies to such violations, pursuant to California Equal Pay Act, Cal. Lab. Code §  1197.5(h), *et seq.*, and California Equal Pay Act, as amended by the California Fair Pay Act, Cal.  Lab. Code 23 §1197.5(h).

243.   As a result of UPS' conduct alleged in this Complaint and/or UPS' willful, knowing, and intentional discrimination, the CEPA subclass members have suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, as well as  non-economic damages.

244.   Plaintiffs and the CEPA subclass are therefore entitled to all legal and equitable remedies, including doubled compensatory awards for all willful violations.

CLASS AND COLLECTIVE ACTION COMPLAINT

245.     Employees' fees should be awarded under California Labor Code § 1197.5(g).

### COUNT 6

**VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE, Cal. Bus. & Prof. Code § 17200 *et seq.***

**UNFAIR COMPETITION**

**On behalf of Plaintiffs and the California Unfair Competition Subclass**

246.     Plaintiffs re-allege and incorporate each and every allegation in this Complaint.

247.     This Count is brought on behalf of Plaintiffs in their individual and representative capacities, and all members of the California Unfair Competition subclass.

248.     UPS is a "person" as defined under California Business & Professions Code § 17201.

249.     UPS' willful failure to pay women equally, to promote women equally, and otherwise to offer women equal employment opportunities as alleged above, constitutes unlawful, unfair and/or fraudulent activity prohibited by California Business and Professions Code §17200. As a result of its unlawful, unfair and/or fraudulent acts, UPS reaped and continues to reap unfair benefits and illegal profits at the expense of Plaintiffs and the California Unfair Competition subclass. UPS should be enjoined from this activity.

250.     Accordingly, Plaintiff and the California Unfair Competition subclass members are entitled to restitution with interest and other equitable relief, pursuant to Business & Professions Code §17203.

### PRAYER FOR RELIEF

Wherefore, Plaintiffs, on their own behalf and on behalf of the Class, Subclasses, and EPA Collective Action, request the following relief:

a.   Acceptance of jurisdiction of this case;

b.   Certification of this case as a class action under Federal Rule of Civil Procedure 23, on behalf of the proposed Plaintiff Class and Subclasses, designation of the proposed Class

CLASS AND COLLECTIVE ACTION COMPLAINT

Representatives as representatives of this Class and Subclasses, and designation of Plaintiffs' counsel of record as Class Counsel;

c. Designation of this action as a collective action on behalf of the proposed EPA Collective Plaintiffs (asserting EPA claims) and:

    i. promptly issuing notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the EPA Opt-In Class, which (a) apprises them of the pendency of this action and (b) permits them to assert timely EPA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b); and

    ii. tolling the statute of limitations on the claims of all members of the EPA Opt-In Class from the date the original Complaint was filed until the Class members are provided with reasonable notice of the pendency of this action and a fair opportunity to exercise their right to opt in as Plaintiffs;

d. Designation of Plaintiffs as representatives of the EPA Collective Action;

e. A declaratory judgment that the practices complained of therein are unlawful and violate, among other laws, 42 U.S.C. § 2000(e) *et seq.*, as amended; 29 U.S.C. § 2601, *et seq.*; 29 U.S.C. § 206, *et seq.*; Cal. Gov. Code § 12940 *et seq.*; Cal. Gov. Code § 12945.2; Cal. Labor Code section 1197.5 *et seq.*; and Cal. Bus. & Prof. Code § 17200 *et seq.*;

f. A permanent injunction against UPS and its partners, officers, owners, agents, successors, employees, representatives and any and all persons acting in concert with them, from engaging in any further unlawful practices, policies, customs and usages set forth therein.

g. An Order requiring UPS to initiate and implement programs that (i) remedy the hostile work environment at UPS; (ii) ensure prompt, remedial action regarding all claims of gender, age, and disability discrimination; and (iii) eliminate the continuing effects of the discrimination and retaliatory practices described therein;

h. An Order requiring UPS to initiate and implement systems for compensating female employees in a non-discriminatory manner;

i. An Order directing UPS to adjust the compensation for Class Representatives and the Class members to the level that they would be enjoying but for the UPS' discriminatory policies, practices, and procedures;

j. An award of back pay, front pay, lost benefits, preferential rights to jobs, and other damages for lost compensation and job benefits suffered by the Plaintiffs, Members of the

CLASS AND COLLECTIVE ACTION COMPLAINT

Classes, and Members of the EPA Collective Action, in an amount not less than $100,000,000.00;

k.  An award of nominal, liquidated, and compensatory damages to Plaintiffs and Members of the Classes, in an amount not less than $100,000,000.00;

l.  Award punitive damages to Plaintiffs and Members of the Classes, in an amount not less than $50,000,000.00;

m.  An award of penalties available under applicable laws, including waiting time penalties;

n.  An award of litigation costs and expenses, including reasonable employees' fees to the Plaintiffs;

o.  An award of pre-judgment and post-judgment interest; and

p.  Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all issues triable of right to a jury.

Respectfully submitted,

DATED: November 9, 2021                        VARLACK LEGAL SERVICES

_____
Tiega-Noel Varlack, Esq.
Attorney for Plaintiffs and Proposed Class,
GALENA GOINS, SONIA LOPEZ, and
TERRY A. JONES-JACKSON

_____
M. Alieu Iscandari, Esq.
Attorney for Plaintiffs and Proposed Class,
GALENA GOINS, SONIA LOPEZ, and
TERRY A. JONES-JACKSON

CLASS AND COLLECTIVE ACTION COMPLAINT