UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GALENA GOINS, et al.,

          Plaintiffs,

   v.

UNITED PARCEL SERVICE INC,

          Defendant.

Case No.  21-cv-08722-PJH

**ORDER RE DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE SECOND AMENDED COMPLAINT**

Re: Dkt. No. 41

    Before the court is defendant's motion to dismiss and/or strike the second amended complaint ("SAC").  The matter is fully briefed and suitable for decision without oral argument.  Accordingly, the hearing was vacated.  Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

**BACKGROUND**

    This is a putative class action alleging employment discrimination.  Plaintiffs and putative class representatives include a mix of women in union and non-union roles employed at the defendant company, including supervisors, sorters, drivers, loaders, and associates located in California, Arkansas, Washington, and Nevada.  SAC ¶ 8.  Defendant United Parcel Service, Inc. ("UPS"), is a global transportation and logistics company.

    The 18 named plaintiffs seek to bring a nationwide class action on behalf of all female employees of UPS for purported gender, age, and disability discrimination against UPS.  The allegations of each individual plaintiff are briefly summarized below.

1    The first proposed class representative is Unity Beddingfield, a former on-road

2  supervisor for UPS in San Ramon, California.  SAC ¶¶ 10–11.  Beddingfield was picked

3  on for her sexual orientation, subjected to racial name-calling, moved six times to

4  different work sites, forced to do more work than her male counterparts, and physically

5  attacked.  SAC ¶ 11.

6    The second proposed class representative is Danette Brown, who started as a

7  sorter at UPS in California and was promoted to supervisor and then to coordinator.  SAC

8  ¶¶ 12–50.  Brown was asked to dig in the garbage to check for packages thrown away,

9  and she was subjected to racial name-calling.  SAC ¶¶ 21–22, 24.  Further, Brown was

10  transferred to a different work site, required to deliver packages after reporting a

11  bludgeoned man on her route, and not considered for certain promotions.  SAC ¶¶ 28–

12  50.

13    The third proposed class representative is Rebecca Daniels, a driver in Arkansas.

14  SAC ¶¶ 51–54.  Daniels was given more difficult work assignments than her male peers,

15  and she suffered retaliation from supervisor Kent Hardy after she filed grievances.  SAC

16  ¶¶ 51–54.

17    The fourth proposed class representative is Galena Goins, a sorter in Oakland,

18  California.  SAC ¶¶ 55–64.  Goins alleges that she was subjected to a hostile work

19  environment and micromanagement, and she alleges that UPS failed to address her

20  grievances.  SAC ¶¶ 55–64.

21    The fifth proposed class representative is Esmeralda Gomez, a combo-loader and

22  irregular sweeper in Oakland, California.  SAC ¶¶ 65–79.  Gomez was subjected to

23  harassment and intimidation, she was given more difficult work assignments than male

24  peers without regard to her seniority, and she received phone calls from management

25  during her personal time.  Id.

26    The sixth proposed class representative is Amy Holland, a driver in Washington.

27  SAC ¶¶ 80–89.  Holland faced relocation following an on-the-job accident in 1997, she

28  later suffered an on-the-job injury, she was forced to take an involuntary leave of absence

1  between 2003 and 2004, her supervisors failed to accommodate her work restriction in

2  2011, she was denied time off in 2012, and she faced sexual harassment from

3  supervisors of both genders.  Id.

4      The seventh proposed class representative is Terry Jones-Jackson, a sorter and

5  loader in Oakland, California.  SAC ¶¶ 90–99.  In December 2018, Jones-Jackson

6  learned that her salary was less than some unspecified male colleagues with the same

7  seniority, and while the discrepancy was eventually corrected, Jones-Jackson did not

8  receive back pay to cover the time the discrepancy existed.  SAC ¶ 92.  Jones-Jackson

9  was denied the opportunity to work full time in 2005, and she has consistently been

10  denied the opportunity to work overtime while male colleagues are so permitted.  SAC

11  ¶¶ 95–97.  Jones-Jackson also complains of the preferential treatment given to younger

12  women as well as the unsatisfactory results of multiple grievances.  SAC ¶¶ 90–99.

13      The eighth proposed class representative is Katherine Kelly, a driver in Arkansas.

14  SAC ¶ 8.  Kelly alleges that she was given less desirable work assignments after

15  witnessing sexual harassment of a union steward by manager Kent Hardy, who also

16  failed to submit worker's compensation paperwork for her following an on-the-job injury.

17  SAC ¶¶ 101–02.  Kelly alleges that she was delayed by several months in being

18  promoted to driver, then Hardy harassed her further by yelling at her and assigning her

19  more difficult work assignments after she became a driver.  SAC ¶¶ 103–06.  Hardy fired

20  Kelly in 2022, but after filing grievances with UPS and the EEOC, she was reinstated.

21  SAC ¶ 106.

22      The ninth proposed class representative is Sonia Lopez, a bagger for UPS in

23  Oakland, California.  SAC ¶ 109.  Lopez was harassed by her supervisor, Ricardo

24  Moreno, and she was given more difficult work assignments than her male colleagues

25  despite her history of shoulder injury.  SAC ¶¶ 111–14, ¶¶ 120–21.  Lopez alleges that

26  she and other women were harassed to clock in and out while men were not harassed by

27  supervisors in the same way.  SAC ¶ 116.

28      The tenth proposed class representative is Lesley Matthews, a package center

1    supervisor in Arkansas.  SAC ¶ 8.  Matthews describes harassment by Kent Hardy during

2    her pregnancy and being compelled to go through personnel files of her co-workers.

3    SAC ¶¶ 122–23.

4        The 11th proposed class representative is Brooke McGary, a part-time hub

5    supervisor in Nevada.  SAC ¶ 124.  McGary alleges she was not given training for her

6    position, and her subordinates were disrespectful toward her.  SAC ¶ 125.  McGary

7    alleges that she faced a hostile work environment following her change from night shift to

8    day shift, and she was denied the opportunity to work additional hours to earn more.

9    SAC ¶¶ 126–29.

10        The 12th proposed class representative is Melissa McKay, a driver in Arkansas.

11    SAC ¶ 8.  Kent Hardy harassed McKay by calling her daily while she was on family leave

12    and threatening her in front of other drivers.  SAC ¶¶ 133–34.  She additionally alleges

13    that Hardy changed her stats, impacting her pay.  SAC ¶ 135.

14        The 13th proposed class representative is Kes Nacole, a part-time pre-loader in

15    Nevada.  SAC ¶ 137.  Nacole's supervisor, Corey Patterson, harassed her by leering for

16    prolonged periods and intimidating her, even physically cornering her in a truck in

17    November 2021.  SAC ¶¶ 138–46.  Nacole alleges that UPS did not act to address her

18    several complaints about Patterson.  SAC ¶ 152.

19        The 14th proposed class representative is Saysamone Nanthavong, an on-road

20    supervisor in Oakland, California.  SAC ¶ 153.  Nanthavong complains of a range of

21    conduct by various managers during her employment, such as improperly accusing her of

22    improprieties related to expenses, reassigning her to different worksites, denying her

23    vacation time, intimidating her by kicking a trash can, and accusing her of misplacing her

24    uniform.  SAC ¶¶ 153–57.  Nanthavong alleges that UPS repeatedly urged her to end her

25    medical leave early following an incident in which she was attacked by a man with a knife

26    while driving her route.  SAC ¶ 158.  Nanthavong separately alleges that a man with

27    similar seniority but additional work duties was paid more than her.  SAC ¶ 164.

28        The 15th proposed class representative is Tami Rankins, an international auditor

United States District Court
Northern District of California

and irregular pick off in Oakland, California.  SAC ¶ 168.  Rankins has suffered verbal abuse and threats for nearly five years that have included gender-based comments and comments regarding her weight.  SAC ¶¶ 169–79.

The 16th proposed class representative is Crystal Ryan-Williams, a driver in Arkansas.  Ryan-Williams alleges that she was wrongfully disciplined for taking time off to provide medical care to her son.  SAC ¶ 184.  Supervisor Kent Hardy additionally gave Ryan-Williams more difficult work assignments following an altercation, impeding her ability to earn bonuses.  SAC ¶ 186.  Finally, Hardy allegedly made calls to sabotage her candidacy for a promotion.  SAC ¶ 187.

The 17th proposed class representative is Samantha Williams, a sorter in Sacramento, California.  SAC ¶ 188.  Williams was allegedly confronted by supervisor Matty Ford when she slowed work to address a safety issue, and she was repeatedly made to feel unsafe by Ford.  SAC ¶ 190.  Williams further alleges that she faced intimidation and harassment, including being targeted with a sexual gesture, and that she was overlooked for a promotion.  SAC ¶¶ 191–92.

The 18th proposed class representative is Christina Yanez-Davison, a part-time sort supervisor in Merced, California.  SAC ¶ 193.  Yanez-Davison alleges that she faced harassing and intimidating treatment from managers and union stewards, including having a supervisor visit her home without invitation and having a union steward physically assault her.  SAC ¶¶ 194–97.

After presenting the factual allegations for the individual plaintiffs summarized above, the SAC asserts a range of class and collective allegations without reference to the details of any particular plaintiff.  Plaintiffs advance in this section that UPS discriminates against women by failing to maintain working time clocks in violation of the "Northern California Sort Rider Agreement Article 12-Section 6: Time Clocks," as well as the company's own policies, including "Support the Use and Protection of Technology" and "Accuracy of Records and Reporting."  SAC ¶¶ 198–206.  Further, plaintiffs advance that UPS systematically violates the ADA by telling women employees that they must be

1   100 percent healthy to return to work while granting men reasonable accommodations

2   that enable them to return to work before reaching 100 percent.  SAC ¶¶ 207–27.

3   Plaintiffs allege that UPS additionally violates its "Professional Conduct and Anti-

4   Harassment Policy" on a systemic basis by failing to respond to race-based harassment

5   of women of color.  SAC ¶¶ 228–33.  Lastly, plaintiffs allege UPS managers assign work

6   in ways that favor male employees and penalize female employees by giving them more

7   physically demanding and time-consuming work assignments.  SAC ¶¶ 234–240.

8          Based on these collective allegations, plaintiffs seek to represent the following

9   class:

10              (a) all female employees at UPS who were employed by UPS
                in the United States from November 9, 2017 to the date of
11              judgment, as a sorter or part-time sort supervisor, on road
                supervisor, or package car driver;
12              (b) all female employees who worked as a sorter or part-time
                sort supervisor, on road supervisor, or package car driver at
13              UPS in the United States, who were over forty years old, and/or
                disabled between November 9, 2017, and the date of judgment;
14              and
                (c) any women who worked for UPS from 2015 to present as a
15              sorter or sort supervisor, on road supervisor, or package car
                driver who has been the subject of an Equal Pay act violation
16              due to gender discrimination.

17   SAC ¶ 252.[1]  Specific to Rule 23(b)(2), plaintiffs seek classwide injunctive relief that

18   would require improvements to defendant's policies, practices, and procedures to

19   eliminate discriminatory treatment and pay.  SAC ¶¶ 276–80.  Specific to Rule 23(b)(3),

20   plaintiffs allege that the class mechanism is superior to address defendant's systemic

21   discrimination because it would facilitate determination of class members' eligibility for

22   monetary remedies, including back pay, front pay, and other compensatory damages.

23   SAC ¶¶ 281–84.

24          Plaintiffs advance the following causes of action in the SAC:

25          (1) violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq.,

26

27   ───────────────
     [1] Although the text of the SAC includes other potential class definitions as well as
28   references to potential subclasses, plaintiffs represent in their opposition brief that the
     definition at ¶ 252 is the correct one.  See Dkt. 43 at 7 n.1.

United States District Court
Northern District of California

for disparate treatment "on the basis of [plaintiffs'] gender, including age and disability" (SAC ¶¶ 285–314);

(2) violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq., for gender discrimination (SAC ¶¶ 315–27);

(3) violation of California Fair Employment and Housing Act, ("FEHA"), Cal. Gov. Code § 12940 et seq., for gender discrimination (SAC ¶¶ 328–37);

(4) violation of the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 216(b), denial of equal pay for equal work (SAC ¶¶ 338–67);

(5) violation of the California Equal Pay Act ("CEPA"), Cal. Lab. Code § 1197.5, denial of equal pay for equal and substantially similar work (SAC ¶¶ 368–76); and

(6) violation of California Business & Professions Code § 17200 et seq. ("UCL"), for unfair competition (SAC ¶¶ 377–81).

Plaintiffs attach to the SAC copies of administrative charges submitted to either the California Department of Fair Employment and Housing ("DFEH") and/or Equal Employment Opportunity Commission ("EEOC") on behalf of Goins, Lopez, and Jones-Jackson, along with right-to-sue letters from the respective agencies. Dkt. 38 at 82–134. In the batch of documents, there are also right-to-sue letters from the EEOC to Ryan-Williams and McKay, but no administrative charges are submitted for either of them. Dkt. 38 at 108–09.

Procedural History

This case was initiated by complaint in this court in November 2021. Dkt. 1. Following a stay requested by the parties and before defendants filed a responsive pleading, plaintiffs filed their first amended complaint ("FAC"). Dkt. 26. Defendants moved to dismiss the FAC. Dkt. 27. The court held a thorough hearing before granting the motion, discussing the deficiencies in the FAC and clarifying the necessary elements plaintiffs must include in a subsequent pleading to survive a motion to dismiss. Dkt. 33, Dkt. 35; see also Dkt. 40 (hearing transcript). Plaintiffs timely filed the SAC. Dkt. 38. The instant motion followed. Dkt. 41. Defendant moves to dismiss the employment

discrimination claims for failure to exhaust administrative remedies, and defendant moves to dismiss all claims for failure to state a claim.  Id.  If dismissal is not granted with prejudice, defendant asks the court to strike all class allegations.  Id.

DISCUSSION

**A.    Legal Standards**

    **1.    Motion to Dismiss**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While "detailed factual allegations are not required," a complaint must include sufficient facts to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

A motion to dismiss a complaint under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in a complaint.  See Fed. R. Civ. P. 12(b)(6).  Dismissal under Rule 12(b)(6) may be based either on the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-movant.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."  Epstein v. Wash. Energy Co., 83 F.3d 1136, 1140 (9th Cir. 1996).

A court's review is generally limited to the contents of the complaint, although the court may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading."  Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (internal

United States District Court
Northern District of California

1   quotation marks and alteration omitted).  The court may also consider matters that are

2   properly the subject of judicial notice, <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688–89

3   (9th Cir. 2001), and documents referenced extensively in the complaint and documents

4   that form the basis of plaintiffs' claims, <u>No. 84 Emp'r-Teamster Jt. Council Pension Tr.</u>

5   <u>Fund v. Am. W. Holding Corp.</u>, 320 F.3d 920, 925 n.2 (9th Cir. 2003).

### 2.   Motion to Strike

7        Rule 12(f) provides that the "court may strike from a pleading an insufficient

8   defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ.

9   P. 12.  The function of a motion to strike is to "avoid the expenditure of time and money

10  that must arise from litigating spurious issues by dispensing with those issues prior to

11  trial."  <u>Whittlestone, Inc. v. Handi-Craft Co.</u>, 618 F.3d 970, 973 (9th Cir. 2010) (citation

12  and internal quotation marks omitted).  To determine whether to grant a motion to strike

13  under Rule 12(f), the court considers whether the matter the moving party seeks to have

14  stricken is (1) an insufficient defense; (2) redundant; (3) immaterial; (4) impertinent; or

15  (5) scandalous.  <u>Id.</u> at 973–74.

### B.   Employment Discrimination Claims

17       Plaintiffs' first three causes of action allege employment discrimination under

18  federal and state law.  Defendant moves to dismiss these claims (1) for failure to exhaust

19  administrative remedies and (2) for failure to state a claim, which are discussed in turn.

### 1.   Administrative Exhaustion

21       Defendant first argues that plaintiffs failed to properly exhaust their administrative

22  remedies before bringing these discrimination claims.  To bring a civil action alleging

23  violations of Title VII of the Civil Rights Act of 1964 ("Title VII") or the California Fair

24  Employment and Housing Act ("FEHA"), a plaintiff must first exhaust administrative

25  remedies by filing a timely complaint with the appropriate government agency and

26  receiving a right-to-sue letter.  <u>See</u> 42 U.S.C. § 2000e-5(e), (f)(1) (Title VII); Cal. Gov't

27  Code § 12965(b) (FEHA).  Where federal and state law overlap, there is a work-sharing

28  agreement under which employment discrimination charges may be filed either with the

United States District Court
Northern District of California

1   federal EEOC or the state anti-discrimination agency, which in California is the DFEH.

2   See 42 U.S.C. § 2000e-8(b).  Charges filed with either the EEOC or the DFEH are

3   deemed filed with both agencies. See Laquaglia v. Rio Hotel & Casino, Inc., 186 F.3d

4   1172, 1175–76 (9th Cir. 1999).  A plaintiff "must allege compliance with the [mandatory

5   processing rule] . . . in order to state a claim on which relief may be granted." Cloud v.

6   Brennan, 436 F.Supp.3d 1290, 1302 (N.D. Cal. 2020) (citation omitted).

7        To meet the requirement of substantial compliance with administrative exhaustion,

8   a plaintiff's district court complaint must be "like or reasonably related to the allegations"

9   in an administrative complaint submitted to the EEOC, such that they would fall within

10  "the scope of an EEOC investigation which [could] reasonably be expected to grow out of

11  the [administrative] charge of discrimination." Cloud, 436 F.Supp.3d at 1302 (quoting

12  Sosa v. Hiraoka, 920 F.2d 1451, 1456 (9th Cir. 1990)); see also Vasquez v. Cnty. of Los

13  Angeles, 349 F.3d 634, 644 (9th Cir. 2003), as amended (Jan. 2, 2004) (a court may

14  consider "all claims of discrimination that fall within the scope of the EEOC's actual

15  investigation or an EEOC investigation that could reasonably be expected to grow out of

16  the charge").

17                  **a.      January 2023 Administrative Charge**

18       Based in part on the court's stated concern that the discrimination claims had not

19  been properly exhausted for the named plaintiffs or a national class during the hearing on

20  the first motion to dismiss, counsel for Goins submitted an additional administrative

21  charge to DFEH on January 23, 2023.  Dkt. 38 at 82–87.  Goins generally alleges

22  harassment, discrimination, and retaliation based on nearly every possible

23  characterization, including gender identity, mental disability, hairstyle and hair texture,

24  suspension, demotion, and many others.  The new administrative charge is ineffective to

25  exhaust the claims in this case for three reasons.

26                          **i.      Procedural Deficiency**

27       First, the January 2023 administrative charge is procedurally deficient.  Plaintiffs

28  intend for this new administrative charge to exhaust the discrimination claims presented

United States District Court
Northern District of California

in this case, but typically, exhaustion must occur before initiation of the lawsuit.  See Fort Bend Cnty., Texas v. Davis, 139 S. Ct. 1843, 1846 (2019) ("As a precondition to the commencement of a Title VII action in court, a complainant must first file a charge with the [EEOC]" (emphasis added)).  The January 2023 administrative charge comes well after the November 9, 2021, commencement of this lawsuit and thus cannot serve as an independent basis for administrative exhaustion.

If the January 2023 charge is intended to amend Goins' original 2020 charges to serve as administrative exhaustion, it is still procedurally deficient.  A plaintiff can amend an EEOC charge to add claims that "relate back to the date the charge was first received" where the new claims are "related to or gr[ew] out of the subject matter of the original charge."  29 C.F.R. 1628.8(c).  In the recent charge, however, Goins complains that she was discriminated against because of

> national origin (includes language restrictions), color, sex/gender, gender identity or expression, medical condition (cancer or genetic characteristic), age (40 and over), sexual harassment- hostile environment, disability (physical, intellectual/developmental, mental health/psychiatric), race (includes hairstyle and hair texture) and as a result of the discrimination was denied hire or promotion, reprimanded, denied equal pay, suspended, demoted, asked impermissible nonjob-related questions, denied work opportunities or assignments, denied or forced to transfer, denied accommodation for a disability.

Dkt. 38 at 84.  These general, varied contentions are inconsistent with the substance of her original administrative charge, where Goins complained of discrete instances of alleged misconduct taking place between 2019 and 2020.  See, e.g., Dkt. 38 at 95 (complaining of heavier work assignments and additional performance evaluations based on gender and age).  The allegations in the January 2023 charge do not "relate to" or "grow out of" the subject matter of the original charges and thus do not amend them.  Rather, the recent administrative charge consists of broad allegations of discrimination without factual support to connect them to the earlier charge.  Therefore, the January 2023 charge is procedurally defective and does not exhaust claims in this case.

United States District Court
Northern District of California

### ii.    Timing Deficiency

Second, even if the January 2023 charge was accepted, it would only cover incidents occurring in the preceding 300 days, not the claims before the court.  Pursuant to 42 U.S.C. § 2000e-5(e)(1), a Title VII plaintiff must file a charge with the EEOC within 300 days "after the alleged unlawful employment practice occurred" if it occurred in a state that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice and the employee initially filed a grievance with that agency.  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002).  A claim is time-barred if it is not filed within this time limit.  Id.  Related to this timing, the Ninth Circuit has made clear that the "starting date of the class action [is] 300 days prior to the date [the charging party] filed his EEOC charge."  Arizona ex rel. Horne v. Geo Grp., Inc., 816 F.3d 1189, 1203 (9th Cir. 2016) (citation omitted).

Here, the January 2023 charge cannot reach back to cover the substantive allegations included within the SAC.  Plaintiffs' claims in the SAC center on discrete instances of discriminatory conduct that took place before March 29, 2022, the start of the 300-day period preceding January 23, 2023.  For example, Goins complains of harassment from coworkers taking place in September 2020.  SAC ¶ 57.  Jones-Jackson complains of preferential treatment given to younger women taking place in March 2020.  SAC ¶ 96.  Lopez complains of harassment from her supervisor, Ricardo Moreno, and being given more difficult work assignments than her male colleagues starting in 2019.  SAC ¶¶ 111–14, ¶¶ 120–21.  These represent only some of the allegations in the SAC, but all of the varied events described in the pleading took place well prior to March 29, 2022.  The January 2023 administrative charge thus does not exhaust the allegations in the SAC because it is also untimely.

### iii.    Factual Deficiency

Third and moreover, the post-lawsuit administrative charge does not contain any factual detail that would support a discrimination claim.  In determining whether a plaintiff has exhausted Title VII claims in her administrative charge, a district court considers

"such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred." B.K.B., 276 F.3d at 1100. The January 2023 administrative charge does not plausibly address any of these factors. It alleges company-wide and nation-wide discrimination occurring on or about a single date, January 22, 2023, without naming any perpetrators of the discrimination, and without listing any locations at which the alleged discrimination took place.  Dkt. 38 at 84. This most recent administrative charge thus fails to achieve one of its most important purposes—it fails to give the charged party effective notice of the claim.  Further, it fails to effectively narrow the issues for adjudication, instead seeking to expand them to include any form of discrimination.  The January 2023 administrative charge is therefore ineffective to amend the earlier charges, and it does not exhaust their claims.

> **b.     Original Administrative Charges**

Defendant additionally challenges plaintiffs' pre-litigation administrative charges as unrelated to the class and individual allegations in the SAC.  As previously noted, courts evaluating the similarity between an administrative charge and a Title VII claim "may consider 'such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred.'" Vasquez, 349 F.3d at 644 (quoting B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1100 (9th Cir. 2002)).  "In addition, the court should consider plaintiff's civil claims to be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case." B.K.B., 276 F.3d at 1100.

However, "unnamed class members in a private class action need not exhaust administrative remedies." Geo Grp., Inc., 816 F.3d at 1204.  "In addition, an aggrieved employee who fails to file a timely charge . . . may still be able to pursue a claim under the piggyback or single-filing rule, in which the employee 'piggyback[s]' onto the timely charge filed by another plaintiff for purposes of exhausting administrative remedies."  Id.

1    (citing <u>Harris v. Cnty. of Orange</u>, 682 F.3d 1126, 1136 (9th Cir. 2012)).

2         Plaintiffs attach to the SAC the pre-litigation administrative charge materials for the

3    following three named plaintiffs: Goins, Lopez, and Jones-Jackson.  Dkt. 38 at 88–90,

4    91–93, 94–97 (DFEH charges); Dkt. 38 at 120–121, 126 (EEOC charges).  The DFEH

5    charges are the same administrative charges plaintiffs submitted in support of their

6    opposition to defendants' motion to dismiss the FAC.  Dkt. 30.  Plaintiffs also attach to the

7    SAC right-to-sue letters corresponding with each of the administrative charges.  Dkt. 38

8    at 110–111, 112–13, 115–16 (DFEH right-to-sue letters); Dkt. 38 at 118–119, 122, 123–

9    25 (EEOC right-to-sue letters).  Commingled with these papers are right-to-sue letters for

10   plaintiffs McKay and Ryan-Williams, though the related administrative charge materials

11   for these two are not included.  Dkt. 38 at 108, 109.

12        UPS avers that the three original DFEH charges presented with the SAC,

13   representing only a fraction of the 18 named plaintiffs, are too limited to support the

14   sweeping class allegations of discrimination in pay and promotions advanced in the

15   pleading.  UPS argues that it could not have reasonably assumed that a nationwide Title

16   VII claim could arise from the allegations in those charges.

17        Plaintiffs counter that the piggyback or single-filing rule allows named and

18   unnamed members of the putative class to rely on the administrative charges of Goins,

19   Lopez, and Jones-Jackson to satisfy administrative exhaustion because those charges

20   advance similar facts and types of conduct as those experienced by the fifteen additional

21   plaintiffs.

22        The court addresses in turn the sufficiency of the three administrative charges to

23   exhaust both the class allegations and the individual allegations.

24                    **i.    Class Allegations**

25        Here, plaintiffs' administrative charges are highly individualized and fail to exhaust

26   the classwide allegations.  The section of the SAC devoted to "class and collective"

27   allegations does not connect the facts in the preceding 190 paragraphs.  Nor does it

28   correlate with the claims themselves.  Instead, the class and collective allegations section

United States District Court
Northern District of California

of the SAC:

- Quotes from a portion of the Northern California Sort Rider regarding installation of time clocks without specifying what collective bargaining agreement the rider supplements, to whom it applies or how it can be deemed to state a nationwide policy.  SAC ¶ 198.

- Quotes portions of UPS's Code of Business Conduct, which announce general principles of UPS's support for "use and protection of technology."  SAC ¶ 199.

- References UPS's purported policies called "Support the Use and Protection of Technology" and "Accuracy of Records and Reporting" while claiming that UPS "does not maintain its clocks in working order."  SAC ¶ 202.  Plaintiffs further speculate that UPS does not maintain time clocks in some unknown facilities and that, as a result of this technology lapse, women must jump through more hoops than men to record their hours worked, conceding that both genders can and do accurately record their hours. SAC ¶¶ 200–01, ¶¶204–06.

- References the "UPS and the ADA" policy while arguing that Goins was denied an interactive process after a workplace injury and that Matthews was told by a manager that she must work while pregnant.  SAC ¶¶ 207–10, ¶¶ 212–13. Plaintiffs generally claim that at some unknown facilities "women must lift the heaviest load" and that they must "work faster."  SAC ¶¶ 218–27.

- Purports to inject race discrimination and harassment claims despite stating no such claims in the SAC.  SAC ¶¶ 228–33, 234–37.

- Includes a lengthy and conclusory recitation of Federal Rules of Civil Procedure Rule 23 requirements devoid of any specifics or ties to the plaintiffs, yet rife with such generalizations as "UPS' policies and procedures have an ongoing disparate impact on female employees," "UPS' employment policies, practices and procedures are not unique or limited to any location," "UPS' management does not provide sufficient oversight or safety measures" and "the common issues include whether UPS has engaged in gender, age, and disability discrimination against

1   female employees."  SAC ¶¶ 241–84.

2   • Provides two conflicting class definitions.  Compare SAC ¶ 238 with ¶ 252.

3   • And finally, provides such "common" questions of fact and law as "a determination

4   of the proper standard for proving a pattern or practice of discrimination by UPS

5   against its female employees and under the disparate treatment theory of liability

6   for employees" and whether UPS "otherwise discriminated against female

7   employees."  SAC ¶¶ 263–64.

8   In sum, review of the sections devoted to purported class allegations makes clear that

9   plaintiffs have not exhausted any classwide allegations.  The generalized contentions are

10  factually distinct from the limited administrative charges presented by plaintiffs.  And as

11  discussed further below, the generalized class contentions do not lend themselves to

12  classwide treatment—the allegations do not amount to a coherent, unifying legal theory

13  that will be resolved in a single stroke.  See Wal-Mart Stores, Inc. v. Dukes, 564 U.S.

14  338, 350 (2011).

15      Plaintiffs' counsel represented during the previous hearing that there exist

16  administrative charges for additional plaintiffs beyond the original three.  Dkt. 40 at 20–

17  21.  The court instructed counsel to include those with the amended pleading.  Id.  The

18  only administrative charge documents attached to the SAC, however, are those for

19  Goins, Lopez, and Jones-Jackson.  This slim record is insufficient to demonstrate

20  administrative exhaustion of discrimination claims for a nationwide putative class.

21      Overall, the allegations of class-wide discrimination emphasized by plaintiffs in the

22  SAC are simply not like or reasonably related to the allegations in the three, limited

23  administrative charges.  Plaintiffs allege in their first cause of action for violation of Title

24  VII that UPS discriminated against Lopez by providing differential access to time clocks in

25  the Oakland hub.  SAC ¶¶ 285–314.  This form of discriminatory conduct is plainly

26  unrelated to any of the allegations presented in the administrative charge documents,

27  including Lopez' own administrative charge.  Neither UPS nor DFEH could have

28  reasonably discovered such treatment in the course of investigations into, for example,

United States District Court
Northern District of California

16

1    inappropriate leering, assignment of more physically demanding work to women, or

2    denial of reasonable accommodations.  Plaintiffs have simply not exhausted their

3    classwide disparate treatment claims.  Similarly, plaintiffs fail to identify in their original

4    administrative charges any facially neutral policy that leads to differential outcomes

5    based on their gender.  Plaintiffs have thus not exhausted their classwide disparate

6    impact claims either.

7         Based on the disconnect between the allegations in the SAC and the original

8    administrative charges of Goins, Lopez, and Jones-Jackson, plaintiffs have not

9    administratively exhausted their class claims of discrimination.  Plaintiffs' failure to

10   administratively exhaust their classwide discrimination claims requires their dismissal.

### ii.    Individual Allegations

12        In Goins' initial DFEH charge, dated November 19, 2020, she alleges

13   discrimination on the basis of age, sex/gender, and disability and provides the following

14   particulars: (1) denial of reasonable accommodation for her disability; (2) assigned extra

15   duties and heavier work than younger male employees; (3) evaluated for work

16   performance three times in one month while others are not evaluated so often; and

17   (4) work shifts reduced by 1-2 hours while male co-workers did not have their hours

18   reduced.  Dkt. 38 at 94–96.

19        Goins deviates from those allegations and generally complains in the SAC that

20   she was subjected to a hostile work environment and micromanagement, and she alleges

21   that UPS failed to address her grievances.  SAC ¶¶ 55–64.  The single contention in the

22   SAC that could plausibly relate to the allegations in the DFEH charge is that she was

23   forced to stand for long hours and assigned to heavy duty areas despite management's

24   knowledge of her history of knee injury.  SAC ¶ 58.  This allegation plausibly carries over

25   from her contention in the administrative charge that she was denied a reasonable

26   accommodation for her disability.  Dkt. 38 at 94.  Therefore, the only allegation that has

27   been administratively exhausted by Goins is denial of reasonable accommodation.

28        In Lopez' initial DFEH charge, dated September 8, 2020, she alleges sexual

United States District Court
Northern District of California

United States District Court
Northern District of California

1   harassment, discrimination based on sex/gender, age, disability, and retaliation and

2   provides the following particulars: (1) sexual harassment by supervisor Connor O'Reilly in

3   the form of leering and inappropriate sexual comments; (2) assigned heavier work and

4   made to clean areas outside of her responsibility while younger female co-workers and all

5   male workers were not similarly assigned work; (3) denial of reasonable accommodation

6   for her disability; and (4) denied the bonus longevity vacation time she had earned as

7   retaliation for her several reports of discrimination and harassment since 2018.  Dkt. 38 at

8   88–90.

9        In contrast, Lopez alleges in the SAC that she was harassed by a different

10  supervisor, Ricardo Moreno, and she was given more difficult work assignments than her

11  male colleagues despite her history of shoulder injury.  SAC ¶¶ 111–14.  Lopez also

12  alleges that she and other women were harassed to clock in and out while men were not

13  harassed by supervisors in the same way.  SAC ¶ 116.  The contention in the SAC that

14  she was assigned to heavy duty areas despite management's knowledge of her history of

15  shoulder injury could plausibly relate to the allegations in the DFEH charge.  SAC ¶ 114.

16  As with Goins, this allegation plausibly carries over from her contention in the

17  administrative charge that she was denied a reasonable accommodation for her

18  disability.  Dkt. 38 at 89.  Similarly, the allegation that Lopez was given more difficult work

19  assignments than her male colleagues could reasonably grow out of her contention in the

20  administrative charge that she was assigned heavier work.  SAC ¶¶ 120–21.  Therefore,

21  the only two allegations that have been administratively exhausted by Lopez are

22  (1) denial of reasonable accommodation and (2) that she was given heavier work than

23  similarly situated men.

24       In Jones-Jackson's initial DFEH charge, dated November 14, 2020, she alleges

25  discrimination based on sex/gender, sexual harassment, and denial of equal pay, and

26  she provides the following particulars: (1) she was paid $1.00 less per hour than another

27  male sorter; (2) she was assigned for four weeks to manual sorting while male workers

28  remained in automotive sorting; (3) she was denied the opportunity to work overtime

while a male sorter with the same seniority was allowed to work overtime; (4) she was subjected to sexual harassment in the form of leering and inappropriate touching; and (5) she was denied work assignments and moved to small sort to be replaced by women who wear see-through clothes and tight pants.  Dkt. 38 at 91–93.

In the SAC, Jones-Jackson complains that she received lower pay than a similarly situated male employee, and while the discrepancy was eventually corrected, Jones-Jackson did not receive back pay to cover the time the discrepancy existed.  SAC ¶ 92. Jones-Jackson was denied the opportunity to work full time in 2005, and she has consistently been denied the opportunity to work overtime while male colleagues are so permitted.  SAC ¶¶ 95–97.  Jones-Jackson also complains of the preferential treatment given to younger women as well as the unsatisfactory results of multiple grievances. SAC ¶¶ 90–99.  The following three contentions could reasonably grow out of the DFEH charge are (1) that Jones-Jackson was denied backpay to cover the period of a gender-based pay discrepancy, (2) that Jones-Jackson was denied the opportunity to work overtime while men with the same or less seniority were given such opportunity, and (3) that Jones-Jackson was denied the preferential treatment given to younger women. These three contentions are the only ones that have been administratively exhausted.

As to the fifteen named plaintiffs for whom no administrative charges were provided, at the previous hearing, in addition to directing plaintiffs to provide the additional administrative charges, the court instructed plaintiffs to "connect the dots" between the specifics in plaintiffs' administrative charges and the generalized contentions in the complaint.  Dkt. 40 at 33.  Plaintiffs still have not done so.  The SAC itself does not provide the necessary clarity to tie the allegations in the administrative charges to the allegations in the SAC, and plaintiffs' opposition brief provides no assistance for the task. Plaintiffs instead aver that the allegations in the SAC are "'like or reasonably related' to allegations included in their EEOC charges: they concerned the same types of women, sorters, location, and numerosity of wrongdoing."  Dkt. 43 at 14.  These factors are not only too general to show factual relation between the administrative charges and the

United States District Court
Northern District of California

SAC, but they are also inconsistent with the factors that courts must rely upon in making the assessment of relation for administrative exhaustion.  See Vasquez, 349 F.3d at 644. Further, the similarities plaintiffs draw between the three original claimants and the additional 15 named plaintiffs are not accurate.  For example, though plaintiffs argue that the allegations involve sorters, only four named plaintiffs hold that position.  Further, though plaintiffs argue that the allegations involve the same location, the complaint makes clear that the named plaintiffs work in different facilities across four different states.  Plaintiffs again do not show that the allegations of the other 15 named plaintiffs could "reasonably be expected to grow out of" the charges filed by Goins, Lopez, and Jones-Jackson.  Vasquez, 349 F.3d at 644.  The inconsistencies preclude a finding that the remaining 15 named plaintiffs may piggyback on the administrative complaints of Goins, Lopez, and Jones-Jackson.

Accordingly, the court finds that only three named plaintiffs have administratively exhausted portions of their employment discrimination allegations in the SAC.  For the same reason that the disparate impact claims have not been exhausted on a classwide basis, they have not been exhausted for these three named plaintiffs either.  The remaining issue related to the employment discrimination causes of action is whether the disparate treatment allegations plaintiffs have administratively exhausted sufficiently state a claim to survive defendant's motion to dismiss, discussed next.

**2.     Pleading of Disparate Treatment Claims**

"Disparate treatment occurs 'where an employer has treated a particular person less favorably than others because of a protected trait.'"  Wood v. City of San Diego, 678 F.3d 1075, 1081 (9th Cir. 2012) (quoting Ricci v. DeStefano, 557 U.S. 557, 577 (2009)). To state a prima facie claim of disparate treatment, a plaintiff must show that "(1) she belongs to a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably."  Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008).  For Title VII discrimination claims, an adverse action is one that

United States District Court
Northern District of California

1   "materially affect[s] the compensation, terms, conditions, or privileges of the [plaintiffs']

2   employment." Chuang v. Univ. of Cal. Davis, Bd. of Trustees, 225 F.3d 1115, 1126 (9th

3   Cir. 2000). The Ninth Circuit has "held that assigning more, or more burdensome, work

4   responsibilities, is an adverse employment action." Davis, 520 F.3d at 1089. Similarly,

5   the appellate court found "being excluded from meetings, seminars, and positions that

6   would have made the employee eligible for salary increases, and being given a more

7   burdensome work schedule, if proven, were sufficient to establish adverse employment

8   actions." Strother v. S. California Permanente Med. Grp., 79 F.3d 859, 869 (9th Cir.

9   1996). The elements of a prima facie case for discrimination under FEHA are closely

10  related to the Title VII prima facie requirements. Guz v. Bechtel Nat'l, Inc., 24 Cal.4th

11  317, 354 (2000) ("Because of the similarity between state and federal employment

12  discrimination laws, California courts look to pertinent federal precedent when applying

13  our own statutes.").

14          Here, defendant does not contest the first two elements, whether plaintiffs fit within

15  a protected class, and whether they were qualified for their respective positions. Instead,

16  defendant argues that plaintiffs fail to provide any factual allegations of differential

17  treatment. The court finds, however, that for the claims that have been administratively

18  exhausted, plaintiffs sufficiently allege that they individually suffered an adverse

19  employment action and that similarly situated persons were treated more favorably.

20          Goins alleges that that she was forced to stand for long hours and assigned to

21  heavy duty areas despite management's knowledge of her history of knee injury. SAC

22  ¶ 58. Goins does not specifically allege that similarly situated men are denied

23  reasonable accommodations; however, based on the totality of the SAC and the

24  particulars of her administrative charges, she contends her denial of reasonable

25  accommodation is based on her gender. Thus, Goins plausibly alleges a claim for

26  disparate treatment.

27          Similarly, Lopez plausibly alleges that she was treated differently based on gender

28  where she alleges that she was denied reasonable accommodations for shoulder injuries

1   while men were granted easier workloads.  SAC ¶ 114.  Lopez also plausibly alleges that

2   she faced adverse treatment in the form of more difficult work assignments than her male

3   colleagues.  SAC ¶¶ 120–21.  Jones-Jackson plausibly alleges that she was treated

4   differently based on gender where she alleges that she was (1) denied backpay to cover

5   the period of a gender-based pay discrepancy, (2) denied the opportunity to work

6   overtime while men with the same or less seniority were given such opportunity, and

7   (3) denied the preferential treatment given to younger women.  SAC ¶¶ 90–99.  These

8   contentions all show both adverse treatment and that persons similarly situated do not

9   receive the same treatment, and they are thus sufficient to state a plausible claim for

10  disparate treatment based on gender and possibly age.  Therefore, only plaintiffs Goins,

11  Lopez, and Jones-Jackson may proceed with their disparate treatment claims.

12  **C.**      **Equal Pay Act and California Equal Pay Act Claims**

13         Plaintiffs allege violations of the state and federal Equal Pay Acts, which prohibit

14  sex-based wage discrimination.  29 U.S.C. § 206; Cal. Labor Code § 1197.5(h).  The

15  federal Equal Pay Act provides that no employer shall discriminate by paying different

16  wages to employees of opposite sexes within an establishment for jobs that require

17  substantially equal skill, effort, and responsibility, and which are performed under similar

18  working conditions.  29 U.S.C. § 206(d)(1); E.E.O.C. v. Maricopa Cty. Cmty. Coll. Dist.,

19  736 F.2d 510, 513 (9th Cir. 1984).  "To make out a case under the Equal Pay Act, a

20  plaintiff must prove that an employer is paying different wages to employees of the

21  opposite sex for equal work.  The jobs held by employees of opposite sexes need not be

22  identical, but they must be 'substantially equal.'"  Hein v. Oregon Coll. of Educ., 718 F.2d

23  910, 913 (9th Cir. 1983) (citation omitted).  The plaintiff must present a comparison of

24  "the jobs in question," not "the individuals who hold the jobs."  Stanley v. Univ. of S. Cal.,

25  178 F.3d 1069, 1074 (9th Cir. 1999).  The California Equal Pay Act is nearly identical to

26  the federal statute and subject to the same analysis.  Green v. Par Pools Inc., 111

27  Cal.App.4th 620, 623 (2003) (citing Cal. Lab. Code § 1197.5).

28         The Equal Pay Act provides, in relevant part, that "No employer . . . shall

United States District Court
Northern District of California

22

discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate which he pays wages to employees of the opposite sex in such establishment for equal work." 29 U.S.C. § 206(d)(1) (emphasis added). The federal regulations define "establishment" as follows: "a distinct physical place of business rather than . . . an entire business or 'enterprise' which may include several separate places of business. . . [E]ach physically separate place of business is ordinarily considered a separate establishment." 29 C.F.R. § 1620.9(a). In another subsection, the regulation continues, "unusual circumstances may call for two or more distinct physical portions of a business enterprise being treated as a single establishment. For example, a central administrative unit may hire all employees, set wages, and assign the location of employment; employees may frequently interchange work locations; and daily duties may be virtually identical and performed under similar working conditions." 29 C.F.R. § 1620.9(b).

Defendant highlights that plaintiffs' own pleading acknowledges that they did not all work in a single state, let alone a single location. Plaintiffs counter that the EPA does not require employees to work in a single establishment; rather, an alleged violation of the EPA applies to require equal pay for employees across an entire enterprise.

Here, plaintiffs fail to allege sufficient facts showing that the "unusual circumstances" necessary to consider multiple sites part of the same "enterprise" are present. Plaintiffs do not allege facts showing that the thousands of UPS facilities nationwide, where employees are governed by several collective bargaining agreements and supervised by hundreds of thousands of managers, embody the "unusual circumstance" that is the exception to the rule of EPA claims being limited to a single establishment. Because plaintiffs do not allege violations within a single establishment, their fourth and fifth causes of action for violation of the EPA and CEPA must be dismissed as to the class.

Only two of the 18 named plaintiffs allege differential pay on an individual basis.

United States District Court
Northern District of California

1  The first, Nanthavong, falls short of stating a claim because she held different job duties

2  than the man she identifies for comparison.  The SAC acknowledges that the man paid

3  more than her, Alfonso Ramirez, held additional responsibility.  SAC ¶ 164 ("Ramirez was

4  given control over a driver group after another On Road Supervisor had left.  Nanthavong

5  still had no driver group to oversee despite being in the position first with more

6  experience in that position and was being paid less than Ramirez at $7300.").  Such

7  differential responsibility and differential pay do not violate equal pay principles.

8       The allegations of differential pay of the second plaintiff, Jones-Jackson, center

9  firmly on whether she was paid less than a man for their same work as sorters.  SAC

10  ¶¶ 349–51.  Plaintiffs acknowledge that UPS remedied an earlier instance of differential

11  pay by raising Jones-Jackson's hourly wage by $1.00 to match a male comparator, but

12  UPS did not reimburse Jones-Jackson for the six-month period over which the disparity

13  existed.  Id.  Jones-Jackson thus plausibly states a claim that she is entitled to back pay

14  for this six-month period in which she was paid different wages than a man for equal

15  work.  Accordingly, the EPA and CEPA causes of action are dismissed as to all plaintiffs

16  except for Jones-Jackson.

17  **D.**    **California Unfair Competition Law ("UCL")**

18       Under Section 17200, unfair competition is defined as "any unlawful, unfair or

19  fraudulent business act or practice" and "unfair, deceptive, untrue or misleading

20  advertising."  See Cal. Bus. & Prof. Code § 17200.  A business practice is "unlawful"

21  under section 17200 if it violates an underlying state or federal statute or common law.

22  See Cal-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal.4th 163, 180

23  (1999).

24       Plaintiffs' UCL claim challenging unlawful business practices is based on "UPS'

25  willful failure to pay women equally, to promote women equally, and otherwise to offer

26  women equal employment opportunities as alleged above."  SAC ¶ 379.  As discussed

27  above, plaintiffs state plausible violations of employment discrimination and equal pay

28  laws.  Therefore, plaintiffs also state a plausible UCL claim based on those surviving

1    claims.

2    **E.    Class Allegations**

3            As stated above, the function of a motion to strike is to "avoid the expenditure of

4    time and money that must arise from litigating spurious issues by dispensing with those

5    issues prior to trial." Whittlestone, 618 F.3d at 973.  A court may "strike class allegations

6    prior to discovery if the complaint demonstrates that a class action cannot be

7    maintained." Tietsworth v. Sears, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010); Sanders

8    v. Apple Inc., 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009); see Fed. R. Civ. P. 23(d)(1)(D)

9    (a court may "require that the pleadings be amended to eliminate allegations about

10   representation of absent persons and that the action proceed accordingly.").  However,

11   motions to strike class allegations are disfavored because a motion for class certification

12   is a more appropriate vehicle for arguments pertaining to the class allegations.  See

13   Thorpe v. Abbott Laboratories, Inc., 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008); Azad

14   v. Tokio Marine HCC-Med. Ins. Servs. LLC, No. 17-CV-00618-PJH, 2017 WL 3007040,

15   at *8 (N.D. Cal. July 14, 2017); see also In re Wal-Mart Stores, Inc. Wage & Hour Litig.,

16   505 F. Supp. 2d 609, 614–15 (N.D. Cal. 2007) ("Generally, courts review class

17   allegations through a motion for class certification.").  The decision whether to strike

18   allegations is a matter within the court's discretion.  Biggins v. Wells Fargo & Co., 266

19   F.R.D. 399, 406 (N.D. Cal. 2009).

20           Here, it is clear from plaintiffs' pleading and proposed class definition that a class

21   action cannot be sustained in this case.  First, as stated above, the class allegations have

22   not been administratively exhausted.  Plaintiffs acknowledge in the SAC that UPS is a

23   multi-national corporation that operates in all 50 states and employs some 440,000 staff.

24   SAC ¶ 9.  The named plaintiffs alone include a wide range of female UPS employees,

25   including union members and supervisors, across four states.  SAC ¶ 8.  The different

26   experiences of even the three remaining named plaintiffs strongly suggest that such a

27   broad class action cannot be maintained.  For instance, in the administrative charge

28   documents, there is little cross-over regarding allegations of discriminatory conduct or

United States District Court
Northern District of California

United States District Court
Northern District of California

differential pay.  Goins's charge alleges her supervisor gave her "extra duties and heavier work," that she was written up three times in one month, and had her hours reduced. Dkt. 38 at 94–97.  Lopez's charge alleges that she was subject to sexual harassment including leering by supervisor Connor O'Reilly, assigned heavier jobs, required to do heavy lifting, and retaliated against by being deprived of vacation time.  Dkt. 38 at 88–90. Jones-Jackson's charge alleges that she made $1.00 less hourly than a male sorter, was moved to manual sorting, deprived of overtime, observed sex harassment, and removed from small sort because of her race.  Dkt. 38 at 91–93.  Plaintiffs present no facts showing that plaintiffs have similar work experiences in either their administrative charges or their claims within the SAC.

Further, these allegations do not overlap with the SAC's designated class allegations, such as the allegation that "UPS discriminates against female employees, especially those who are over forty and/or disabled, in compensation and promotion and subjects them to a work culture predominated by men."  SAC ¶ 268.  Plaintiffs only offer legal conclusions related to the class, including that their claims are typical of members of the proposed class (SAC ¶¶ 266–72) and that the named plaintiffs and their counsel will adequately represent the interests of the class (SAC ¶¶ 273–75).  Plaintiffs provide no coherent showing that UPS maintained nationwide policies or practices giving rise to their causes of action such that classwide resolution would be appropriate.  Plaintiffs do not show a coherent theory of maltreatment that is applicable across each of the 18 named plaintiffs, and they do not present a legal issue that is capable of resolution in a single stroke.  See Dukes, 564 U.S. at 350.  It is thus difficult to reconcile how plaintiffs can possibly, or even plausibly, sustain a class of women across 50 states.

Further still, plaintiffs fail to acknowledge the variety of problems with their class definition that render maintenance of such class implausible.  For example, plaintiffs' clarification of their class definition eliminates five of their proposed class representatives from the class.  As defendant notes, "by limiting the putative class definition to only the employees who worked as a 'sorter or part-time sort supervisor, on road supervisors, or

1   package car drivers,' Plaintiffs eliminate Beddingfield, Gomez, Matthews, Nacole and

2   Rankins, who Plaintiffs allege do not hold these titles."  Dkt. 44 at 16.  Plaintiffs

3   additionally fail to address how they can bring class-wide claims under California's FEHA

4   and CEPA for out-of-state employees.  Plus, plaintiffs again fail to address the issue of

5   structural conflicts within the class between union and non-union workers and between

6   front-line and supervisory workers.  These structural issues weigh against permitting

7   class claims to proceed.

8       In sum, multiple rounds of pleading demonstrate that a class action cannot be

9   plausibly maintained.  The class allegations are hereby stricken.

10  **F.    Summary**

11      The preceding paragraphs resolve many of the issues in the SAC.  Classwide

12  allegations are eliminated.  Fifteen of the named plaintiffs are eliminated for failure to

13  exhaust their administrative remedies for employment discrimination.  The claims of

14  disparate impact discrimination are eliminated.  The EPA and CEPA causes of action

15  have been eliminated for all plaintiffs except for Jones-Jackson.  However, the case will

16  proceed on the basis of the allegations that have been exhausted and for which plaintiffs

17  adequately state a claim.  Therefore, defendant must respond to the surviving claims of

18  Goins, Lopez, and Jones-Jackson, as specified below:

19  •   Defendant must respond to Goins' allegation of disparate treatment that she was

20      denied reasonable accommodation based on her gender in violation of both Title

21      VII and FEHA.  Goins alleges that that she was forced to stand for long hours and

22      assigned to heavy duty areas despite management's knowledge of her history of

23      knee injury.  SAC ¶ 58.

24  •   Defendant must respond to Lopez' allegations of disparate treatment that she was

25      also denied reasonable accommodation based on her gender in violation of both

26      Title VII and FEHA.  Lopez alleges she was denied reasonable accommodations

27      for shoulder injuries while men were granted easier workloads.  SAC ¶ 114.

28      Defendant must also respond to Lopez' allegations of disparate treatment based

United States District Court
Northern District of California

on work assignments.  Lopez alleges that she faced adverse treatment in the form of more difficult work assignments than her male colleagues.  SAC ¶¶ 120–21.

- Defendant must respond to Jones-Jackson's allegations of disparate treatment in violation of both Title VII and FEHA.  Jones-Jackson alleges that she was treated differently based on gender where she alleges that she was denied backpay to cover the period of a gender-based pay discrepancy.  Defendant must also respond to Jones-Jackson's allegations of disparate treatment based on denial of opportunities for greater earnings.  Jones-Jackson alleges denial of the opportunity to work overtime while men with the same or less seniority were given such opportunity.  Further, defendant must respond to Jones-Jackson's allegations of disparate treatment based on denial of the preferential treatment given to younger women.  SAC ¶¶ 90–99.

- Defendant must respond to Jones-Jackson's allegations that she was paid less than a man for the same work over a six-month period in violation of both the EPA and CEPA.  SAC ¶¶ 349–51.

- Finally, defendant must respond to plaintiffs' UCL cause of action challenging unlawful business practices based on the alleged violations of law described above.  See SAC ¶ 379.

## CONCLUSION

For the reasons stated above, the court GRANTS in part and DENIES in part defendant's motion to dismiss.  The court GRANTS defendant's motion to strike class allegations.  Defendant must file an answer within 28 days from the date of this order responding to the claims as specified above.

**IT IS SO ORDERED.**

Dated: April 20, 2023

*/s/ Phyllis J. Hamilton*
PHYLLIS J. HAMILTON
United States District Judge