1
2
3
4
5
6
7
8
9
10
11
12
13

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GALENA GOINS, et al.,

         Plaintiffs,

  v.

UNITED PARCEL SERVICE INC,

         Defendant.

Case No.  21-cv-08722-PJH

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 66

14      Defendant United Parcel Service, Inc.'s ("UPS") motion for summary judgment and

15 plaintiffs' Rule 56(d) motion came on for hearing before this court on May 23, 2024.

16 Plaintiffs appeared through their counsel, Tiega Varlack.  Defendant appeared through its

17 counsel, Elizabeth Brown.  Having read the papers filed by the parties and carefully

18 considered their arguments and the relevant legal authority, and good cause appearing,

19 the court hereby GRANTS UPS's motion for summary judgment and DENIES plaintiffs'

20 Rule 56(d) motion, for the following reasons.

21                            **BACKGROUND**

22 **A.**    **Factual Background**

23      Plaintiffs are three female employees of defendant United Parcel Service, Inc., a

24 global transportation and logistics company.  Plaintiffs work in UPS's Oakland Hub,

25 where employees unload, sort, and load packages of various sizes.  Employees are

26 assigned to work in designated areas of the facilities.  One such area is the "Small Sort,"

27 where smaller packages and envelopes are sorted and aggregated into bags according

28 to their destination.  See Declaration of Ricardo Moreno-Alvarez, Dkt. 66-3 ("Moreno

1   Decl.") ¶¶ 3, 15 & 20.  Plaintiffs and two other employees with more seniority (Steven

2   Smith and Jeff Mandigal) are the only part-time employees on the night shift in the Small

3   Sort in the Oakland Hub.  Id. ¶ 11; Jones-Jackson Dep. at 299:8–22 ("there's no men in

4   Small Sort that are part-time with lower seniority").[1]

5       The terms and conditions of plaintiffs' employment are governed by a collective

6   bargaining agreement (the "CBA") between UPS and the Union.  Moreno Decl. ¶ 9;

7   Declaration of Anthony White, Dkt. 66-4 ("White Decl.") ¶ 3; Goins Dep. at 80:9–13[2];

8   Jones-Jackson Dep. at 23:5–16; Lopez Dep. at 44:20–23[3].  Union employees with the

9   requisite seniority are eligible to work in the Small Sort.  Any extra work is offered to part-

10  time employees in order of seniority under the CBA.  Moreno Decl. ¶ 18.

11      Positions in the Small Sort are physically demanding, and all employees in the

12  Small Sort must meet certain physical requirements.  Lopez Dep. at 52:11–19; Goins

13  Dep. at 64:6–15 & 65:23–67:3; Jones-Jackson Dep. at 80:8–14; Moreno Decl. ¶ 3.

14  Specifically, Small Sort employees must be able to lift up to 70 pounds, constantly lift up

15  to 10 pounds, and occasionally lift and carry 10 to 50 pounds.  Moreno Decl. ¶ 3; Second

16  Amended Complaint, Dkt. 38 ("SAC") ¶ 340 (describing physical requirements).  These

17  requirements are set forth in a UPS document applicable to roles in the Small Sort.

18  Declaration of Jennifer Svanfeldt, Dkt. 66-1 ("Svanfeldt Decl."), Ex. 12.

19      The primary function of supervisors in the Small Sort is to ensure the safety of

20  employees and the packages they handle, primarily by conducting observations and

21  training employees on safety methods and meeting production standards.  Moreno Decl.

22

23

24  [1] Excerpts from the Jones-Jackson deposition are found at Svanfeldt Decl., Dkt. 66-1,
    Ex. 3 and Varlack Decl., Dkt. 72, Ex. 8.  However, the version attached to the Varlack

25  Declaration is watermarked "READ AND SIGN ONLY".

26  [2] Excerpts from the Goins deposition are found at Svanfeldt Decl., Dkt. 66-1, Ex. 1 and
    Varlack Decl., Dkt. 72, Ex. 9.

27  [3] Excerpts from the Lopez deposition are found at Svanfeldt Decl., Dkt. 66-1, Ex. 2 and
    Varlack Decl., Dkt. 72, Ex. 10.  However, the version attached to the Varlack Declaration

28  is watermarked "READ AND SIGN ONLY".

United States District Court
Northern District of California

¶ 5.  There are a few mechanisms for supervisor observations:

- On the Job Observations ("OJS"): UPS has the expectation that supervisors will conduct an OJS of each employee once every month.

- Two Minute Drill:  UPS requires supervisors to conduct one two-minute drill on every employee each hour, e.g., three two-minute drills on each part-time employee per 3.5-hour shift.

- Safe Work Method ("SWM"):  UPS requires supervisors to conduct at least one SWM annually on each employee.

- Observation:  UPS requires supervisors to perform two observations per night on any two employees.  Each employee must receive one observation each week.

Id. ¶ 23.

In 2018, UPS converted the Oakland Hub to an automated package facility as part of a company-wide effort to convert package sorting from a manual to an automated process.  Id. ¶ 15.  After the conversion, the number of manual sorting Small Sort positions shrunk from about ten to one—the NGSS manual sort position—on each night shift.  Id.; Goins Dep. at 62:1–15.  This one manual sorter position is faster-paced and requires constant movement and alertness because the sorter is responsible for removing non-UPS packages from a moving belt and putting them into the bin designated for the carrier (e.g., FedEx, Amazon, USPS, etc.).  Moreno Decl. ¶ 19; see Goins Dep. at 66:16–67:8, 221:12–223:3 & 224:3–11.  Since September 2020, Oakland Small Sort management has rotated the NGSS job among multiple employees, including Walter Gaytan (male), Tony Edwards (male), Vernell Jordan (male), Ricky Dominguez (male), Margaret Freeney (female), Gerri Earle (female), Antoinette Madison (female), Terry Jones-Jackson (female), and Galena Goins (female).  Moreno Decl. ¶ 29.

The Small Sort is now primarily responsible for bagging functions.  Most employees (formerly manual sorters) monitor the automated sorting by ensuring that packages safely and efficiently slide down a chute into a bag that hangs at the bottom of

the chute.  Id. ¶ 15.  These employees then zip the bag, print a tag that reflects the destination for which the packages in the bag are bound, fasten the tag to the bag (making sure the destination on the tag and bag match) and then drag the bag onto an outbound belt located on the floor behind them.  Id.; Goins Dep. at 53:1–10 & 197:13–201:18.  UPS and the Union refer to the employees who are responsible for the outbound bags as "baggers."  Moreno Decl. ¶ 15.  UPS and the Union refer to employees who are responsible for unloading inbound bags as "debaggers."  Id.; Goins Dep. at 186:10–12.

Supervisors rotate employees among the following positions each shift: (1) tender (approximately four employees); (2) debagger (approximately four employees); (3) bagger (approximately eight to twelve employees); and (4) NGSS manual sort (typically one employee).  Moreno Decl. ¶ 19; Jones-Jackson Dep. at 70:20–22, 71:2–8, 72:13–25 & 234:2–16; Lopez Dep. at 51:6–17; Goins Dep. at 43:20–44:25.

### 1. Goins

In August 1999, UPS hired Goins as a part-time loader in the Oakland Hub.  Goins Dep. at 31:23–32:6.  In 2018, Goins was awarded a bid assignment to the Small Sort based on her seniority.  She initially worked as a debagger and bagger.  Id. at 36:20–37:5, 143:12–144:4 & 186:6–9.  In March 2019, Goins was rotating into the NGSS manual sort position.  Moreno Decl. ¶ 25.  However, supervisor Ricardo Moreno observed she was not following proper safety methods.  Id.  Following attempts to train her, UPS determined that Goins could not perform the NGSS manual sort job regularly until she demonstrated compliance with safety methods.  Id. ¶¶ 25–28.  Thereafter, Goins has bagged and debagged.  Goins Dep. at 184:6–10, 195:24–25 & 197:7–9.

Sometime in the summer of 2020, Goins resumed rotating in to the NGSS manual sort position.  Moreno Decl. ¶ 27.  In September 2020, UPS management and the Union did an observation to ascertain whether Goins could safely perform the NGSS manual sort role in accordance with performance standards.  Id.  On September 15 or 16, 2020, supervisor Marcus Penn conducted an OJS of Goins in that position.  Id.; Goins Dep. at 139:1–21 & 151:24–154:17.  Goins demonstrated proficiency for only 18 of the 47

1   required methods and received an overall rating of 38 percent; she refused to sign the

2   OJS.  Moreno Decl. ¶ 28; Goins Dep. at 154:13–19.  Goins was no longer rotated into the

3   NGSS manual sort job regularly and testified at deposition that Moreno told her the

4   reason: "[Moreno] said that I didn't know what I was doing, that I didn't know how to

5   sort. . . .  That's the reason why he said he moved me".  Goins Dep. at 147:5–25.

6        In October 2020, Goins complained about being rotated out of the NGSS manual

7   sort job and informed management that she had a knee injury and that she could not do

8   the bagger position.  Moreno Decl. ¶¶ 29–30; Declaration of Angel Dunn, Dkt. 66-2

9   ("Dunn Decl.") ¶ 10.  This was the first time that Moreno learned of Goins's knee injury.

10  Moreno Decl. ¶ 30.  In response, Moreno assigned her to temporary alternate work under

11  the Temporary Alternate Work Program ("TAW") in Rewrap, an area where broken

12  packages are routed for repackaging.  Id.; Goins Dep at 121:17–20.  Because Goins did

13  not have the required full-time status, seniority, or certification for Rewrap, her

14  responsibilities were limited to sitting on a stool and applying tape to damaged packages.

15  Moreno Decl. ¶ 30; Goins Dep. at 137:25–138:12 & 284:4–285:4.

16       Concurrently, UPS opened a job accommodation on Goins's behalf and started

17  the formal ADA process with Goins.  Dunn Decl. ¶ 11.  UPS asked that Goins return an

18  ADA form within two weeks and that UPS would consider her request for accommodation

19  withdrawn if she did not return the forms within four weeks (e.g., by November 25, 2020).

20  Id.  Goins did not return the form by that deadline.  Id.

21       On June 29, 2021, Goins returned to work with no restrictions.  Id. ¶ 24; Goins

22  Dep. at 281:4–282:7.  Goins testified at deposition that she does not recall the jobs she

23  has performed since returning to work.  Goins Dep. at 282:9–17.  In August 2021, UPS

24  received documentation of new work restrictions from Goins's physician; in response,

25  UPS assigned Goins to alternate work under the TAW.  Moreno Decl. ¶ 31.

26       In August 2023, Goins presented new temporary work restrictions which UPS

27  accommodated with TAW.  Id. ¶ 32; see Goins Dep. at 288:8–14.  Goins was released to

28  full duty with no restrictions by her doctor around September 9, 2023.  Moreno Decl. ¶ 32.

United States District Court
Northern District of California

In February 2024, UPS received another set of work restrictions from Goins regarding a left and right shoulder strain that limited her to lifting, pushing and pulling no more than five pounds on an occasional basis.  Id. ¶ 33; see Goins Dep. at 288:25–289:8.  Because Goins had exhausted her eligibility for TAW, UPS has been accommodating Goins with workers' compensation paid time off ever since.  Moreno Decl. ¶ 33; Goins Dep. at 196:1–24 (on paid leave since January 24, 2024).  Goins testified at deposition that she cannot estimate when she will be able to return to work.  Goins Dep. at 290:3–291:13.

### 2. Lopez

On or around January 3, 2000, UPS hired Lopez as a part-time loader.  Lopez Dep. at 34:14–19 & 35:19–21.  In 2017, while she was working at the Oakland hub, UPS accommodated Lopez with a leave of absence to accommodate her shoulder injury and surgery for approximately eight months.  Id. at 38:21–39:6 & 115:10–15.

In April 2018, Lopez returned to work with no restrictions as a part-time employee in the Oakland Hub.  Id. at 115:16–18 & 124:2–125:9.  She was assigned to Small Sort on the night shift based on her seniority.  Lopez rotated into the bagger position and testified at deposition that she fills 12 to 15 bags per shift.  Id. at 45:21–24.

On or about August 15, 2023, Lopez submitted work restrictions to UPS.  Id. at 8:5–8 & 61:2–6.  Between August 16 and October 13, 2023, UPS accommodated Lopez by putting her on light duty, where she performed office work on a computer.  Id. at 56:24–57:21 & 62:5–14.  On October 13, 2023, Lopez started an indefinite workers compensation paid leave of absence.  She does not have an anticipated return to work date.  Id. at 39:19–40:5.

### 3. Jones-Jackson

On January 5, 1999, UPS hired Terry Jones-Jackson as a loader/unloader at the Oakland Airport.  Jones-Jackson Dep. at 58:25–59:10.  Currently, Jones-Jackson typically rotates into the bagger position with multiple other employees, including Sam, Mario, Sean, Sonia, Galena, Margaret, Gerri, and Vernell.  Id. at 77:15–78:17, 236:8–19.

Jones-Jackson testified at deposition that she has been double shifting about

1    every day through January 2024, when she returned from a two-week vacation.  Id. at

2    227:16–229:12.  At times, Jones-Jackson would work all three shifts in a given night.  Id.

3    at 227: 21–24.  As of the date of her deposition in March 2024, Jones-Jackson was being

4    accommodated with TAW and was unable to estimate when her doctor would modify her

5    work restrictions.  Id. at 297:8–298:16.

6          When the Union and UPS agreed in July 2019 to create additional full-time jobs in

7    the Oakland hub, those jobs were awarded to UPS employees who bid on them in order

8    of seniority.  Moreno Decl. ¶ 36; Jones-Jackson Dep. at 303:3–9.  Of the eight employees

9    who successfully bid on the new jobs, two were women.  Moreno Decl. ¶ 36; Jones-

10    Jackson Dep. at 41:1–42:7, 45:18–46:11 & 155:18–22.  The available positions were

11    awarded to part-time employees with more seniority.  Jones-Jackson Dep. at 155:5-17.

12    **B.    Procedural History**

13          This case was initiated by complaint in this court in November 2021.  Dkt. 1.

14    Following a stay requested by the parties and before defendants filed a responsive

15    pleading, plaintiffs filed their first amended complaint ("FAC").  Dkt. 26.  Defendant moved

16    to dismiss the FAC.  Dkt. 27.  The court held a hearing before granting the motion,

17    discussing the deficiencies in the FAC and clarifying the necessary elements plaintiffs

18    must include in a subsequent pleading to survive a motion to dismiss.  Dkt. 33; Dkt. 35;

19    see also Dkt. 40 (hearing transcript).  Plaintiffs timely filed the SAC.  Dkt. 38.  Defendant

20    filed a motion to dismiss that the second amended complaint.  Dkt. 41.

21          Plaintiffs advanced the following causes of action in the SAC:

22        (1)    violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et

23              seq., for disparate treatment "on the basis of [plaintiffs'] gender, including

24              age and disability" (SAC ¶¶ 285–314);

25        (2)    violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et

26              seq., for gender discrimination (SAC ¶¶ 315–27) (since dismissed)

27        (3)    violation of California Fair Employment and Housing Act, ("FEHA"), Cal.

28              Gov. Code § 12940 et seq., for gender discrimination (SAC ¶¶ 328–37);

United States District Court<br>Northern District of California

7

(4)     violation of the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 216(b), denial of equal pay for equal work (SAC ¶¶ 338–67);

(5)     violation of the California Equal Pay Act ("CEPA"), Cal. Lab. Code § 1197.5, denial of equal pay for equal and substantially similar work (SAC ¶¶ 368–76); and

(6)     violation of California Business & Professions Code § 17200 et seq. ("UCL"), for unfair competition (SAC ¶¶ 377–81).

On April 20, 2023, the court issued an order on defendant's motion to dismiss plaintiffs' second amended complaint.  Order Re Defendant's Motion to Dismiss and/or Strike Second Amended Complaint, Dkt. 47 ("MTD Order").  That order narrowed the case.  First, it struck all class allegations and certain named plaintiffs, leaving only three named plaintiffs in the action:  Goins, Jones-Jackson, and Lopez.  Second, it found that a number of allegations were not administratively exhausted and therefore could not be the basis for any claim in this action.

Following the court's order on defendant's motion to dismiss the second amended complaint, the following claims and allegations survive:

| Claim | Plaintiff & Exhausted Allegation |
|---|---|
| **1)** Title VII, disparate treatment on the basis of gender and age | • **Goins** alleges she was forced to stand for long hours and assigned to heavy duty areas despite management's knowledge of her history of knee injury **based on gender**. |
| **3)** FEHA, for gender discrimination | • **Lopez** alleges she was (1) denied reasonable accommodations for shoulder injuries and (2) received more difficult work assignments **based on gender**.<br>• **Jones-Jackson** alleges she was denied (1) backpay to cover the period of a gender-based pay discrepancy and (2) the opportunity to work overtime **based on gender**.  She also alleges (3) she was treated worse than younger women **based on age**. |
| **2)** Title VII, disparate impact | None. |
| **4)** EPA, denial of equal pay for equal work | • **Jones-Jackson** alleges she was denied backpay to cover the period of a gender-based pay discrepancy. |
| **5)** CEPA, denial of equal pay | |
| **6)** UCL | • **Goins**<br>• **Lopez**<br>• **Jones-Jackson**<br>Derivative of the above claims. |

UPS has now filed a motion for summary judgment for the remaining claims, or in the alternative for partial summary judgment.  Dkt. 66 ("Mot.").  Plaintiffs have opposed the motion, and in their opposition moved the court to stay the motion and order additional discovery pursuant to Federal Rule of Civil Procedure 56(d) ("Rule 56(d)").  Dkt. 68 ("Opp.").  The opposition also includes evidentiary objections.  UPS filed a reply

1   opposing the Rule 56(d) motion, replying to the opposition, and stating its own evidentiary

2   objections.  Dkt. 73 ("Reply").  Plaintiffs subsequently filed additional evidentiary

3   objections to evidence UPS submitted on reply.  Dkt. 75.

**DISCUSSION**

**A.    Legal Standard**

6          Summary judgment is proper where the pleadings, discovery, or affidavits show

7   that there is "no genuine dispute as to any material fact and the movant is entitled to

8   judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those "that might

9   affect the outcome of the suit under the governing law".  Anderson v. Liberty Lobby, Inc.,

10  477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine "if the evidence is

11  such that a reasonable jury could return a verdict for the nonmoving party."  Id.  "A

12  '*scintilla* of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,'

13  is not sufficient to present a genuine issue as to a material fact."  United Steelworkers of

14  Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989) (quoting Anderson, 477

15  U.S. at 249–50).

16         Where the moving party will have the burden of proof at trial, it must affirmatively

17  demonstrate that no reasonable trier of fact could find other than for the moving party.

18  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  On an issue

19  where the nonmoving party will bear the burden of proof at trial, the moving party may

20  carry its initial burden of production by submitting admissible "evidence negating an

21  essential element of the nonmoving party's case," or by showing, "after suitable

22  discovery," that the "nonmoving party does not have enough evidence of an essential

23  element of its claim or defense to carry its ultimate burden of persuasion at trial."  Nissan

24  Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 & 1106 (9th Cir.

25  2000); see also Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) ("the burden on the

26  moving party may be discharged by 'showing'—that is, pointing out to the district court—

27  that there is an absence of evidence to support the nonmoving party's case").

28         "Once the moving party meets its initial burden, the nonmoving party must go

United States District Court
Northern District of California

beyond the pleadings and, by its own affidavits or by the depositions, answers to interrogatories, and admissions on file, come forth with specific facts to show that a genuine issue of material fact exists."  Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993) (per curiam).  But allegedly disputed facts must be material—"the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson, 477 U.S. at 247–48.  "When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact."  Hansen, 7 F.3d at 138.

　　　When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor.  Anderson, 477 U.S. at 255; Hunt v. City of Los Angeles, 638 F.3d 703, 709 (9th Cir. 2011).  If evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact.  See Tolan v. Cotton, 134 S. Ct. 1861, 1865 (2014); Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999).  However, when a non-moving party fails to produce evidence rebutting defendants' showing, then an order for summary adjudication is proper.  Nissan Fire, 210 F.3d at 1103 ("If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment.").

## B.　Analysis

　　　Defendant moves for summary judgment with respect to each of plaintiffs' claims, and with respect to whether they can seek punitive damages.  Plaintiffs move this court to deny or continue defendant's motion pursuant to Federal Rule of Civil Procedure 56(d). The court addresses each argument in turn:  (1) plaintiffs' Rule 56(d) motion; (2) defendant's motion concerning claims 1 and 3 alleging violations of Title VII and FEHA; (3) defendant's motion concerning claims 4 & 5 alleging violations of EPA &

CEPA; (4) defendant's motion concerning claim 6 alleging a violation of the UCL; and (5) the parties' evidentiary objections.

### 1.      Plaintiffs' Rule 56(d) Request for Delay & Additional Discovery

Plaintiffs ask the court to stay the summary judgment motion pursuant to Rule 56(d) and order additional discovery.  Opp. at 9.  They argue that they have been diligent in seeking discovery, but they need more time to receive information from the California Division of Labor Standards Enforcement ("DLSE"), a state agency responsible for enforcing California's labor laws.  Jones-Jackson filed a DLSE complaint against UPS on January 16, 2021, alleging wage theft and identifying a male hired one day before her, Steve Smith.  The DSLE closed its investigation around March 25, 2024 because the instant litigation was pending.  See Declaration of Tiega-Noel Varlack, Dkt. 72 ("Varlack Decl."), Ex. 1.  Counsel for plaintiffs sought access to the records via a public records request, but as of the hearing date no records had been received.  At the hearing, plaintiffs' counsel indicated that the DLSE would soon produce some records.

The motion is brought primarily by Jones-Jackson, as she seeks leave to reopen discovery for the limited purpose of issuing a subpoena to DLSE to assist with her EPA and CEPA claims.  Counsel argues that she did not have an opportunity to subpoena the records, because the notice of case closure was received shortly before fact discovery closed.  Specifically, plaintiffs seek information concerning the alleged steps UPS took to willfully pay Jones-Jackson less than her male comparator, UPS's communications with the DLSE and other witnesses, payroll records, Employer Policies and Procedures documents, and the calculations of Jones Jackson's back pay.  Varlack Decl. ¶¶ 15–28.

UPS argues that plaintiffs had ample opportunity to conduct discovery and failed to do so timely or diligently.  UPS argues that plaintiffs present no basis for believing the DLSE investigation file will contain any relevant information, let alone information that is essential for opposing the motion.

### a.      Legal Standard

Rule 56(d) "allows a summary judgment motion to be denied, or the hearing on the

motion to be continued, if the nonmoving party has not had an opportunity to make full discovery." Celotex, 477 U.S. at 326; see also Qualls v. Blue Cross of Calif., Inc., 22 F.3d 839, 844 (9th Cir.1994). Rule 56(d) ensures that adequate discovery can occur before summary judgment is considered, which "thus protects parties from a premature grant of summary judgment." Weinberg v. Whatcom Cnty., 241 F.3d 746, 751 (9th Cir. 2001); see also Metabolife Intern., Inc. v. Wornick, 264 F.3d 832, 846 (9th Cir. 2001).

A party requesting a Rule 56(d) continuance bears the burden of (1) setting forth in affidavit form the specific facts he hopes to elicit from further discovery, (2) demonstrating that the facts sought exist, and (3) demonstrating that the sought-after facts are essential to oppose summary judgment. Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp., 525 F.3d 822, 827 (9th Cir. 2008); Fed. R. Civ. P. 56(d); see also Tatum v. City & Cnty. of San Francisco, 441 F.3d 1090, 1100 (9th Cir.2006); Chance v. Pac–Tel Teletrac Inc., 242 F.3d 1151, 1161 n.6 (9th Cir.2001). In submitting the Rule 56(d) request, the proponent must provide facts, not conclusions. See Keebler Co. v. Murray Bakery Prod., 866 F.2d 1386, 1387-89 (Fed. Cir. 1989) ("If all one had to do to obtain a grant of a Rule 56[(d)] motion were to allege possession by movant of 'certain information' and 'other evidence', every summary judgment decision would have to be delayed while the non-movant goes fishing in the movant's files."); see also Moss v. U.S. Secret Serv., 572 F.3d 962, 966 n.3 (9th Cir. 2009). The proponent must identify "the specific facts that further discovery would have revealed" and explain "why those facts would have precluded summary judgment." Singh v. Am. Honda Fin. Corp., 925 F.3d 1053, 1076 (9th Cir. 2019) (quoting Tatum v. City & Cty. of S.F., 441 F.3d 1090, 1100 (9th Cir. 2006)).

As a fourth requirement, a party seeking a continuance under Rule 56(d) must also show that it diligently pursued the requested discovery. Pfingston v. Ronan Eng'g Co., 284 F.3d 999, 1005 (9th Cir. 2002) ("the failure to conduct discovery diligently is grounds for the denial of a Rule [56(d)] motion."). Where the party seeking a continuance had ample opportunity to conduct discovery and failed to do so, a Rule 56(d) request for discovery should be denied. See Cornwell v. Electra Cen. Credit Union, 439 F.3d 1018,

1027 (9th Cir. 2006) ("Attempting to secure discovery after a discovery cutoff date does not cure a party's failure to conduct diligent discovery beforehand."); Landmark Dev. Corp. v. Chambers Corp., 752 F.2d 369, 372 (9th Cir.1985) (motion denied where "[f]ailure to take further depositions apparently resulted largely from plaintiffs' own delay"); Bank of Am. v. Pengwin, 175 F.3d 1109,  1118 (9th Cir.1999) (denial of motion proper unless "the movant diligently pursued its previous discovery opportunities"); Mackey v. Pioneer Nat'l Bank, 867 F.2d 520, 524 (9th Cir. 1989) ("A movant cannot complain if it fails diligently to pursue discovery before summary judgment"); Big Lagoon Rancheria v. California, 789 F.3d 947, 955 (9th Cir. 2015), as amended on denial of reh'g (July 8, 2015) (discovery practices not diligent where party waited to serve a subpoena until "very near the end of the discovery period").

> ### b.   Analysis

The court initially notes that this summary judgment motion is not early, and it does not come before plaintiffs had a chance to conduct full discovery.  The complaint was filed on November 9, 2021, and UPS filed its motion after the close of discovery on the last permissible date to move for summary judgment.  See Case Management and Pretrial Order, Dkt. 53; Mot. (filed 5 weeks before hearing deadline).  In short, this is not the sort of premature motion Rule 56(d) is designed to safeguard against.

Considering the factors outlined by the Ninth Circuit, the court first assesses whether plaintiffs have set forth in affidavit form the specific facts they hope to elicit from further discovery.  See Fed. R. Civ. P. 56(d) (party must show "by affidavit or declaration").  Plaintiffs' motion points to the Varlack Declaration, and the specific facts plaintiffs seek are not identified therein.  The motion cites in various places to Varlack Decl. ¶¶ 3, 5, 8, 10–17 & 28, and the only information discernable therein is that the DSLE opened an investigation file that plaintiffs want access to, and perhaps that the file contains wage statements that would help plaintiffs calculate damages.  Looking at the motion, plaintiffs argue (without citing to the Varlack declaration):

> The  evidence  sought  includes  the  original  Complaint  Form,

United States District Court
Northern District of California

which contains the foundational allegations of wage and hour law violations, including pertinent dates and the involved parties, providing a framework for the dispute. The Plaintiff also seeks to obtain any responses submitted to the DLSE, which counter the Plaintiffs' allegations and may include key documentation and UPS' interpretation of the events in question. payroll [sic] records are crucial as they offer a detailed account of hours worked, wages, and deductions, enabling a meticulous evaluation of the wage discrepancies alleged. Moreover, employee statements providing firsthand experiences and Employer Policies and Procedures documenting the operational standards of the employer can offer insightful context into the employer's practices. Witness Statements from other employees (including management) are critical to either corroborate or refute the claims at issue. Investigative Reports generated by DLSE officials are anticipated to provide a narrative and analysis of the evidence collected and any investigative conclusions drawn.

Opp. at 15–16.

Although plaintiffs present a wish list of investigatory materials they would like to have, the motion (and the accompanying, required declaration) are lacking in specifics. Plaintiffs want the complaint form that contains allegations of "pertinent dates" and the "involved parties." What dates and parties are essential to oppose summary judgment are left unspecified. Plaintiffs also want the DLSE investigation materials, which plaintiffs argue "may include key documentation and UPS' interpretation of the events in question." These are vague hopes that the DSLE might have compiled some facts that plaintiffs failed to adequately investigate during the lengthy discovery period—not a specification of particular facts that plaintiffs seek. Plaintiffs do identify specific, relevant facts and documents in the form of payroll records showing hours worked and associated wages (specified in the motion but not the required declaration), although it is unclear why plaintiffs would require discovery from the DLSE to obtain these facts rather than obtaining them from their own records or from UPS. Finally, plaintiffs seek employee statements, general employer procedure documents, and general DLSE investigative materials. Plaintiff does not even speculate what facts these might contain.

As an initial matter, plaintiffs present the above requests almost exclusively in the motion—not the accompanying declaration as required. Moreover, the only specific materials and facts plaintiffs identify are payroll records. The rest of the requests

constitute a wish list of documents that plaintiffs speculate might be generally helpful. With respect to the payroll records, it is not even clear that the DLSE has those documents, but certainly UPS would have them (and plaintiff Jones-Jackson would have many relevant ones herself). If plaintiff has not obtained payroll records in her CEPA and EPA action from the employer during the entire course of the discovery period, this certainly shows a lack of diligence (a factor discussed below).

Second, the court assesses whether the facts sought exist. Plaintiffs speculate that the DLSE may have payroll records, although even that is unclear. The other documents plaintiffs seek are a very loosely-specified general category of investigative materials which are defined in such a general fashion that such *documents* are certain to exist, although plaintiff does not identify exactly what *facts* she hopes are contained therein. Identifying a general category of "Investigative Reports generated by DLSE officials" does not demonstrate that the facts sought exist.

Third, the court considers whether the sought-after materials are essential to opposing summary judgment. The elements of plaintiff's CEPA and EPA claims are evaluated in substance below, but in short plaintiff must show that she and the identified comparator Mr. Smith were paid different wages for equal work. Following plaintiff's prima facie case, defendant can raise as an affirmative defense a legitimate reason they were paid differently based on a factor other than sex. Evidence accompanying defendant's summary judgment motion suggests that the two had different jobs with different skill levels, and accordingly were paid differently. It is hypothetically possible that in the investigatory materials, documents would show that the two jobs were "substantially equal," thus defeating summary judgment. However, plaintiff does not identify that as a reason she seeks those materials. Instead, she claims to seek those materials only to assist her damages calculation—that is, whether UPS actually issued her appropriate back-pay or whether the "retro wages" payment was payment for something else. But plaintiff has not presented or identified discoverable evidence to overcome UPS's summary judgment motion on the question of CEPA and EPA *liability*,

1   so plaintiff's Rule 56(d) request on the issue of *damages* does not seek materials that are

2   essential to opposing summary judgment.

3          Fourth, the court considers whether plaintiffs have been diligent in their discovery.

4   The answer must be no.  Plaintiffs knew about the DLSE investigation and had years to

5   request information about it.  Jones-Jackson believed herself to have been underpaid vis-

6   à-vis a specific man (Steve Smith) since at least 2017 or perhaps 2019.  See Opp. 16:19-

7   21.  She filed charges and a lawsuit in 2020 and 2021.  Yet, when plaintiffs received a

8   letter indicating that the DLSE had closed its case four days before the close of

9   discovery, they did not issue a subpoena for those materials.  Although that timeline was

10  short, it was entirely feasible to issue that subpoena, especially given plaintiffs' advanced

11  knowledge of the investigation and interest in its findings.[4]  Moreover, plaintiff was well

12  aware that both this litigation and that DLSE investigation had been running concurrently

13  for years.  Plaintiff offers no explanation for why she had not issued that subpoena at any

14  point before the close of discovery—regardless of whether the DLSE investigation was

15  closed.  Finally, the only specific materials plaintiff seeks (wage statements) were more

16  readily available from party discovery.  Relying on a non-party, independent investigatory

17  agency for those records—which may or may not even have them—shows an extreme

18  lack of diligence for materials that are core to plaintiff's claim.

19         Accordingly, plaintiffs' Rule 56(d) motion is DENIED.

20         **2.     Claims 1 & 3:  Title VII and FEHA**

21                 **a.     Legal Standard**

22         "When responding to a summary judgment motion in a discrimination suit under

23  . . . Title VII, the plaintiff may proceed by either using the McDonnell Douglas framework,

24  as established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 (1973), or

25

26  _____

27  [4] On March 29, 2024—after receiving the closure letter from the DLSE but before

28  discovery ended—plaintiffs even sought this court's intervention regarding discovery
    disputes but did not address the DLSE records.  Dkt. 64.

1  alternatively, may simply produce direct or circumstantial evidence demonstrating that a

2  discriminatory reason more likely than not motivated the defendant's contested conduct."

3  Opara v. Yellen, 57 F.4th 709, 721 (9th Cir. 2023) (internal quotation marks omitted)

4      "A plaintiff must **first** make out a prima facie case of her discrimination claim.  The

5  plaintiff may do so either by using the McDonnell Douglas framework, or alternatively,

6  may simply produce direct or circumstantial evidence demonstrating that a discriminatory

7  reason more likely than not motivated the employer."  Id. at 721–22 (internal quotation

8  marks omitted) (emphasis added).

9      "Establishing a prima facie case of . . . discrimination via the McDonnell Douglas

10  factors generally requires a plaintiff to show: '(1) she belongs to a protected class; (2) she

11  was qualified for the position; (3) she was subject to an adverse employment action; and

12  (4) similarly situated individuals outside her protected class were treated more

13  favorably.'"  Id. at 722 (quoting Chuang v. Univ. of Cal. Davis, Bd. of Trs., 225 F.3d 1115,

14  1123 (9th Cir. 2000)).  "Under the McDonnell Douglas framework, 'the requisite degree of

15  proof necessary to establish a prima facie case on summary judgment is minimal and

16  does not even need to rise to the level of a preponderance of the evidence.'"  Id. (quoting

17  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1062 (9th Cir. 2002)).

18      An adverse employment action is one that "materially affect[s] the compensation,

19  terms, conditions, or privileges of the [plaintiff's] employment."  Chuang, 225 F.3d at

20  1126.  "[A]ssigning more, or more burdensome, work responsibilities, is an adverse

21  employment action."  Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008).

22  Although "mere ostracism in the workplace is not enough to show an adverse

23  employment decision", being "excluded from educational seminars, meetings, and

24  positions . . . . [that] may have put her in a position for merit pay increases" can constitute

25  adverse employment actions, as can being "given a more burdensome work schedule".

26  Strother v. S. California Permanente Med. Grp., 79 F.3d 859, 869 (9th Cir. 1996).

27      "[A] plaintiff may alternatively offer direct or circumstantial evidence of

28  discriminatory motive to establish her prima facie case. . . .  '[D]irect evidence' has been

United States District Court
Northern District of California

1   defined as evidence of conduct or statements by persons involved in the decision-making

2   process that may be viewed as directly reflecting the alleged discriminatory attitude.

3   When a plaintiff seeks to establish a prima facie case through the submission of actual

4   evidence, very little such evidence is necessary."  Opara, 57 F.4th at 722–23 (citations

5   and internal quotation marks omitted).

6        **Second**, "[w]hether a plaintiff establishes her prima facie claim of disparate

7   treatment using direct or circumstantial evidence or the McDonnell Douglas factors, once

8   a prima facie case of discrimination has been made, the burden shifts to the employer to

9   articulate some legitimate, nondiscriminatory reason for the challenged action.  This

10  burden is one of production, not persuasion and involves no credibility assessment."  Id.

11  at 723 (citations and internal quotation marks omitted).

12       **Third**, "the employee must show that the articulated reason is pretextual. . . .

13  Here too, a plaintiff can prove pretext in multiple ways, either: (1) directly, by showing that

14  unlawful discrimination more likely than not motivated the employer; (2) indirectly, by

15  showing that the employer's proffered explanation is unworthy of credence because it is

16  internally inconsistent or otherwise not believable; or via a combination of these two kinds

17  of evidence."  Id. (internal quotation marks omitted).

18       "Under any approach, generally, very little evidence is necessary to raise a

19  genuine issue of fact regarding an employer's motive.  For instance, the Supreme Court

20  has instructed that a plaintiff's prima facie case, combined with evidence that the

21  employer's asserted justification is *false*, may be enough.  However, the plaintiff at all

22  times retains the ultimate burden of persuading the trier of fact that an employer's

23  contested action was due in part or in whole to discriminatory intent.  Accordingly, where

24  abundant and uncontroverted independent evidence suggests that no discrimination

25  occurred, plaintiff's creation of only a weak issue of fact as to whether the employer's

26  reason was untrue will not suffice."  Id. at 723–24 (citations and internal quotation marks

27  omitted).

28       "Because of the similarity between state and federal employment discrimination

United States District Court
Northern District of California

19

1    laws, California courts look to pertinent federal precedent when applying [California]

2    statutes.  In particular, California has adopted the three-stage burden-shifting test

3    established by the United States Supreme Court for trying claims of discrimination,

4    including age discrimination, based on a theory of disparate treatment."  Guz v. Bechtel

5    Nat. Inc., 24 Cal. 4th 317, 354 (2000) (citation omitted) ("This so-called McDonnell

6    Douglas test reflects the principle that direct evidence of intentional discrimination is rare,

7    and that such claims must usually be proved circumstantially.").

8                    **b.    Goins**

9            The parties dispute Goins's claims based on (i) gender and (ii) disability

10   discrimination.

11                    **i.    Gender**

12           UPS argues that Goins's gender discrimination claim is based on seven

13   allegations.[5]  UPS argues that (1) Goins did not exhaust allegations 6 & 7; (2) allegations

14   1–7 are not adverse employment actions; (3) Goins's performance was not satisfactory;

15   (4) Goins cannot show men were treated more favorably; (5) UPS has legitimate non-

16   discriminatory reasons; and (6) Goins cannot show pretext.

17           However, the court has already determined that the only allegation Goins did

18   exhaust was that "she was forced to stand for long hours and assigned to heavy duty

19   areas despite management's knowledge of her history of knee injury", which "plausibly

20   carries over from her contention in the administrative charge that she was denied a

21   reasonable accommodation for her disability."  MTD Order at 17 (citing SAC ¶ 58 and

22   _____

23

24   [5] They are:  (1) Supervisors denied Goins reasonable accommodations for her knee
     injury and granted accommodations to similarly situated men on the night shift in the
25   Small Sort; (2) Supervisors denied Goins help in the NGSS manual sort position;
     (3) Moreno removed Goins from the NGSS manual sort position and gave it to male
26   employees from San Bruno in October 2020; (4) Supervisors routed a heavier workflow
     to Goins when she rotated in the bagger position; (5) Supervisors gave Goins "write ups"
27   for safety and work methods and gave Goins three write-ups within 30 days; (6) UPS
     failed to address grievances related to hostility and micromanagement from Supervisors;
28   and (7) General claims of hostility and micromanagement.

1    p. 94) ("the only allegation that has been administratively exhausted by Goins is denial of

2    reasonable accommodation").  The court interpreted this allegation as a claim for

3    disparate treatment because "she contends her denial of reasonable accommodation is

4    based on her gender."  Id. at 21.[6]  Goins's opposition argues about various unexhausted

5    allegations, but the court has already addressed this issue thoroughly.  Accordingly, this

6    order addresses only the exhausted claim related to her knee injury, and the fact that she

7    was not accommodated for that injury based on her gender.

8                          **(A)    Prima Facie Case**

9          The court first assesses whether plaintiff has made out a prima facie case of her

10   discrimination claim.  "The plaintiff may do so either by using the McDonnell Douglas

11   framework, or alternatively, may simply produce direct or circumstantial evidence

12   demonstrating that a discriminatory reason more likely than not motivated the employer."

13   Opara, 57 F.4th at 721–22 (internal quotation marks omitted).

14                          **(1)    Direct Evidence**

15         Goins argues that she has direct evidence.  Plaintiff cites evidence in the form of

16   testimony that the female plaintiffs generally were (1) made to clean up before their shift

17   whereas men were not, (2) required to clock out to use the restroom, and (3) not

18   accommodated for their disabilities while men were.  Opp. at 17–18.

19         "'[D]irect evidence' has been defined as evidence of conduct or statements by

20   persons involved in the decision-making process that may be viewed as directly reflecting

21   the alleged discriminatory attitude.  When a plaintiff seeks to establish a prima facie case

22   through the submission of actual evidence, very little such evidence is necessary."

23   Opara, 57 F.4th at 723 (citations and internal quotation marks omitted).  "Direct evidence"

24   concerns the reason or intent the employer had when taking the actions—not whether the

25

26   _____

27   [6] The exhausted claim roughly corresponds to claims 1–4 as described by UPS, although
     even then the claims are only exhausted to the extent they concern accommodations
28   denied to Goins that were granted to similarly situated men.

United States District Court
Northern District of California

1   actions occurred.  Plaintiff simply states that these events occurred, but that is not

2   evidence that a discriminatory reason more likely than not motivated the employer.

3   Moreover, even if plaintiff's arguments concerning the events that occurred

4   (absent evidence demonstrating intent) could plausibly be considered as evidence of

5   intent, plaintiff does not meaningfully cite to the record when making this argument.  As is

6   the case throughout much of plaintiffs' brief, the lack of citation to the record means that

7   counsel's argument is just that—argument unsupported by evidence.  Plaintiffs cite

8   generally to entire deposition transcripts without identifying pages numbers, line

9   numbers, or quotations.  See, e.g., Opp. at 17:8–12 & nn.2–5.  The one citation actually

10  including a page number for the proposition that women had to clean up more than men

11  is entirely incomprehensible.  Opp. at 18:24 (citing to "Deposition of Salas at pg. 42,

12  attached as Exhibit 5 to the Varlack Decl.").  But the Salas deposition is not paginated,

13  and the ECF-stamped page 42 is not relevant to the argument in the brief.  Finally,

14  plaintiff's direct evidence fails to the extent it relies on unexhausted allegations.

15                          **(2)      McDonnell Douglas framework**

16  Having failed to present direct or circumstantial evidence, the court next assesses

17  whether plaintiff in the alternative made out a prima facie case using the McDonnell

18  Douglas framework.

19  "Establishing a prima facie case of . . . discrimination via the McDonnell Douglas

20  factors generally requires a plaintiff to show: '(1) she belongs to a protected class; (2) she

21  was qualified for the position; (3) she was subject to an adverse employment action; and

22  (4) similarly situated individuals outside her protected class were treated more

23  favorably.'"  Opara, 57 F.4th at 722 (quoting Chuang, 225 F.3d at 1123).

24  First, the parties do not dispute that Goins is a member of a protective class as a

25  female.  Plaintiff satisfies this factor.

26  Second, Goins argues that she was qualified to do her job.  See Opp. at 24:14–20.

27  As an initial matter, she argues that "UPS has not shown that Goins could not do her job",

28  which gets the burden exactly wrong.  Id.  Moreover, as another example of a recurring

United States District Court
Northern District of California

problem with plaintiffs' brief, the citations to the record are entirely incomprehensible.[7]

Nor does she quote the record directly, so her brief effectively asks the court to take on

faith that counsel's arguments reflect record evidence.  But the court must review the

record evidence—not simply argument from counsel—when evaluating a motion for

summary judgment.

However, with effort beyond that which is required or reasonable for a court to

exercise, the court may have located the portion of the deposition to which plaintiffs refer

for this point.  Salas, a supervisor, said that "he assume[d]" that Goins "could still do the

job of a sorter" "with or without a flipper", which is a sort of assistant position to the sorter

position.  Varlack Decl., Ex. 5 at ECF p. 31:6–15.  This is scant evidence, but enough to

satisfy this factor.  Opara, 57 F.4th at 722 ("the requisite degree of proof necessary to

_____

[7] This failure presents consistently throughout plaintiffs' brief.  This order notes particularly consequential and grievous instances, but plaintiffs' brief often fails to offer citations to the factual record in opposition to defendant's summary judgment motion.  Of course, the summary judgment standard concerns disputes in the factual record.  Where plaintiffs fail to cite to the record in response to defendant's cognizable record evidence, they necessarily fail to establish that the fact is in dispute.

Moreover, when plaintiffs do attempt to cite to the record, the citations are usually difficult to parse and often times entirely incomprehensible.  Presenting evidence in such a difficult-to-decipher manner "alone warrants exclusion of the evidence."  Orr v. Bank of Am., 285 F.3d 764, 775 & n.14 (9th Cir. 2002) ("We hold that when a party relies on deposition testimony in a summary judgment motion without citing to page and line numbers, the trial court may in its discretion exclude the evidence. . . .  The same holds true for references to an affidavit without citing to paragraph numbers."); see also United States v. Real Prop. Located at 475 Martin Lane, Beverly Hills California, 298 F. App'x 545, 550 (9th Cir. 2008) ("When a party relies on evidence to support a summary judgment motion without citing to its location, 'the trial court may in its discretion exclude the evidence.'") (quoting Orr, 285 F.3d at 774–75); Huey v. UPS, 165 F.3d 1084, 1085 (7th Cir.1999) ("judges need not paw over the files without assistance from the parties").

Here, plaintiffs cite to "Exh. 4 Salas" at various pages, which the court takes to mean Exhibit 5 to the Varlack Declaration (Dkt. 72, Ex. 5, starting at ECF p. 25), which is an unpaginated deposition transcript of Machael Salas.  But there is a much larger problem than plaintiffs' citation to the wrong exhibit, which is an innocent enough oversight.  Because the version of the Salas deposition transcript that plaintiffs submit as evidence is unpaginated, identifying the source of plaintiffs' citations in the transcript (in the circumstances where plaintiffs even attempt to provide page numbers) is exceedingly difficult.  This difficulty is compounded by the fact that plaintiffs' brief does not quote directly from the Salas deposition, such that the court could not even locate the source of the support if it attempted to generate its own citations where plaintiffs declined to.

United States District Court
Northern District of California

1    establish a prima facie case on summary judgment is minimal and does not even need to

2    rise to the level of a preponderance of the evidence").

3           Third, UPS argues that Goins has not established that she was subject to an

4    adverse employment action.  An adverse employment action is one that "materially

5    affect[s] the compensation, terms, conditions, or privileges of the [plaintiff's] employment."

6    Chuang, 225 F.3d at 1126.  Goins argues that she was not given easier work

7    assignments (Opp. at 19:13–16), that Salas as a supervisor worked in non-supervisory

8    positions which took away work opportunities from female baggers (Opp. at 19:17–19),

9    that UPS subjected Goins to tests designed to aggravate her disability and give her

10   harder work (Opp. at 19:23–20:8), that females were required to clean up and men

11   weren't (Opp. at 20:9–15), that she was transferred (Opp. at 20:28–21:1), and that men

12   were given helpers but she was not (Opp. at 10–14).

13          Goins's arguments are scattered.  She includes entirely new allegations along with

14   allegations that this court already found were not exhausted.  Goins has only exhausted

15   her claim that "she was forced to stand for long hours and assigned to heavy duty areas

16   despite management's knowledge of her history of knee injury."  MTD Order at 17, 21 &

17   27 (citing SAC ¶ 58) ("the only allegation that has been administratively exhausted by

18   Goins is denial of reasonable accommodation").  Accordingly, Goins's adverse

19   employment action arguments are limited to not being given easier work assignments or

20   a helper, being given harder work, and otherwise not being accommodated for her knee

21   injury.  These arguments ultimately allege that UPS did not provide reasonable

22   accommodations for her knee injury.

23          In the context of a claim for retaliation or disability discrimination, courts directly

24   considering the question have uniformly concluded that a failure to accommodate cannot

25   constitute an adverse employment action as a matter of law.  See Doe v. Dep't of Corr. &

26   Rehab., 43 Cal. App. 5th 721, 735–36 (2019) ("No court has ever held that a failure to

27   reasonably accommodate an employee's disability—which is a separate cause of action

28   under FEHA (§ 12940, subd. (m))—can qualify as the adverse action underlying a

24

discrimination or retaliation claim."); accord Barnett v. Costco Wholesale Corp., No. 22-55550, 2023 WL 6276294, at *1 (9th Cir. Sept. 26, 2023) ("Under California law, failure to accommodate or engage cannot constitute an adverse employment action. . . .  Because Barnett failed to demonstrate an underlying adverse employment action, the district court properly dismissed her claims for discrimination"); see also Barnett v. Costco Wholesale Corp., No. 220CV04896ODWJEMX, 2022 WL 1443332, at *6 (C.D. Cal. May 6, 2022), aff'd, No. 22-55550, 2023 WL 6276294 (9th Cir. Sept. 26, 2023) ("A failure to accommodate an employee's disability or engage in an interactive process does not qualify as the adverse action for a disability discrimination claim."); Lopez v. Charter Commc'ns Inc., No. CV 19-00006-CJC(KKX), 2020 WL 2095797, at *8 (C.D. Cal. Jan. 8, 2020) ("decision not to accommodate Lopez's disability does not qualify as an adverse employment action for the purposes of her discrimination claim"); Kroeger v. Vertex Aerospace LLC, No. CV 20-3030-JFW(AGRX), 2020 WL 3546086, at *11 (C.D. Cal. June 30, 2020) ("failure to accommodate Plaintiff cannot form the basis of a disability discrimination claim"); compare Martirosyan v. United Parcel Serv., Inc., No. 2:23-CV-01094-SB-DFM, 2023 WL 6634167, at *8 (C.D. Cal. Sept. 26, 2023) ("An employer's failure to accommodate is not an adverse employment action for purpose of a retaliation claim.") with Jones v. Lodge at Torrey Pines P'ship, 42 Cal. 4th 1158, 1168 (2008) ("the employment actions that can give rise to a claim for retaliation are *identical* to the actions that can give rise to a claim for discrimination").

The reasoning applies equally well to gender discrimination claims, and in fact many of the cases discussing this issue speak generally of "discrimination" claims rather than specifying that their holdings apply only to disability discrimination claims.  See., e.g., See Doe, 43 Cal. App. 5th at 735–36 (reasoning concerns "a discrimination or retaliation claim" generally); Barnett v. Costco Wholesale Corp., No. 22-55550, 2023 WL 6276294, at *1 (9th Cir. Sept. 26, 2023) (applying to reasoning when affirming dismissal of claims for claims alleging "discrimination, retaliation, failure to prevent discrimination and retaliation, and wrongful termination").

However, some courts that have not addressed the question have permitted discrimination claims to survive motions to dismiss or summary judgment where the alleged adverse employment action was a failure to accommodate. These cases are less persuasive because they do not consider the issue.

Goins argues that the court should decline to follow the nearly one-sided body of case law holding that a failure to accommodate cannot be an adverse employment action. First, Goins argues those cases are not binding on this court and should accordingly be ignored. Opp. at 20:23. Second, she argues that <u>Doe</u> did not concern a gender discrimination claim. Third, she seems to argue that the court should find that the adverse action was not based on her knee injury. Instead, she argues that "making Goins spend her time cleaning up where the men did not have to was because of sex," and that if cleanup duty "exacerbated her knee injury, which was also a willful failure to accommodate", that is beside the point and does not detract from the main adverse action that she was forced to do cleanup duty.

Goins's first argument that the cases are not binding on this court is unavailing. This court looks to California courts (and the Ninth Circuit) when interpreting FEHA, a California law. While not binding, the cases UPS cites are certainly persuasive, as they are the only cases to directly address this issue. Critically, plaintiffs provide no contrary authority. While the court has identified some orders that do not consider this issue and allow allegations of a failure to accommodate to constitute an adverse employment action, neither Goins nor the court has uncovered an order addressing this issue and deciding in a reasoned opinion that a failure to accommodate can constitute an adverse employment action supporting a discrimination claim.

Plaintiff's second argument that the reasoning doesn't apply to gender discrimination claims is also unavailing—the <u>Doe</u> case clearly holds that a failure to accommodate cannot constitute an adverse employment action under the <u>McDonnell Douglas</u> framework, and while the case did not present a gender-discrimination claim, its reasoning applies equally to such a claim. Furthermore, as outlined above, many cases

considering this question speak of its applicability to "discrimination" cases generally.

Plaintiff's third argument that the court consider a new, unexhausted allegation that women were made to clean up instead of her exhausted claim concerning a failure to accommodate her knee injury is also unavailing, as the court has clearly delineated the contours of Goins's exhausted allegations.  Goins did not exhaust an argument about gender discrimination for cleanup duty; she exhausted only the failure to accommodate claim that she casts aside in an attempt to distinguish Doe.  The rest of plaintiff's arguments concerning this prong are disjointed and, critically, rely on non-exhausted allegations.  See Opp. at 21–24.

Because she failed to show that she was subject to an adverse employment action, Goins has failed to make a prima facie case for her gender discrimination claim.

Fourth, UPS argues that Goins has not presented evidence showing that similarly situated individuals outside her protected class were treated more favorably.  To be "similarly situated" under Title VII, employees must be similar in "all material respects." Hawn v. Exec. Jet Mgmt., Inc., 615 F.3d 1151, 1157 (9th Cir. 2010).  That is, comparator employees must both have similar jobs as a plaintiff and "display similar conduct." Id. Goins counters that "men did not have to clean the area pre-shift, men were accommodated without and [sic] ADA process, and men were not unfairly subjected to OJS/Safety testing, supra, at Varlack Decl. Exh. 11.)" [sic].  Opp. at 24:21–23.

Goins's argument that men did not have to clean was not exhausted, was not presented in the SAC, and is raised for the first time on summary judgment.  See Opp. at 20:19–20.  Plaintiff's argument concerning the OJS/Safety testing argument was also not exhausted, and even if it were she argues but does not cite to the record that OJS/Safety testing resulted in her having more work than men.  Opp. at 20:4–6.  (An "OJS" is short for On the Job Observations, which is essentially a performance review.)

The only exhausted allegation plaintiff raises is that "men were accommodated without and [sic] ADA process".  Goins doesn't cite any evidence in the record showing that similarly situated men were treated differently, which is fatal to her claim.  She cites

27

United States District Court
Northern District of California

1   to the record when she argues that supervisors have the discretion to give injured

2   baggers lighter chutes, but that does not support an argument that Goins was treated any

3   differently than men.[8]  Opp. at 19:13–15.

4        Goins also argues that a helper was given to men but not her.  Opp. at 21 (citing

5   Declaration of Galema Goins, Dkt. 71 ("Goins Decl.") at 14[9]; Salas Dep. at 42[10]).  In

6   support, she cites the Goins declaration stating that "I was denied reasonable

7   accommodation based on my gender when Ricardo replaced me with Walter, a man, who

8   was not a better worker than me and was not injured like I was."  Goins Decl. ¶ 14.  But

9   that paragraph is a bare legal conclusion that says nothing about any helper being

10  provided to any gender.  In fact, the entire declaration is devoid of the word "helper" or

11  "flipper", which is an assisting role.

12       Goins argues that supervisor Smith knew Goins was disabled but removed her

13  accommodation because of bidding needs, and no man was treated this way.  Opp. at 21

14  (citing "Smith Testimony at *Id.* [sic] at Exh. 5").[11]  In support of this point, Goins cites an

15  entire collection of unpaginated deposition transcript excerpts that run over 10 pages.

16  Elsewhere in the brief plaintiff cites to "pg. 24" of the Smith deposition for a similar point

17  (see Opp. at 20:18–20), but that citation does not point to any document actually existing

18  _____

19

20  [8] Even if she had cited the record in support of this argument, as addressed above, that
    allegation cannot be the basis for a gender discrimination claim because it is not an
21  adverse employment action.

22  [9] The court reads this ambiguous citation to be to paragraph 14 of the Goins declaration.

23  [10] Again, the citation to the Salas deposition is entirely unhelpful because that exhibit is
    unpaginated.  The court's best guess is that the citation is to Dkt. 72 at ECF pp. 30–31.
24  Those pages refer to a "flipper" position, although it is difficult to know if this is the role
    referred to because the brief says "helper" and the deposition does not use that term, as
25  far as the court's entirely unassisted search can determine.  The court's independent
    reading of the Salas Deposition—unassisted by any cognizable citation from plaintiff—did
26  not reveal any discussion of men getting helpers and women not getting them.

27  [11] This citation is entirely incomprehensible.  As an initial matter, plaintiffs' previous
    citation refers to multiple sources, making the usage of "id." indeterminate.  However, the
28  court reads this citation to "Ex. 5" as a citation to Exhibit 6, as it appears that the actual
    transcript she is referring to is likely found at Exhibit 6.

1    in the record, and as far as the court's independent investigations have revealed the word

2    "bid" was never used in the Smith deposition.  Ultimately, plaintiff's argument is entirely

3    lacking in factual support that could be even remotely identified from the plaintiffs' brief.

4         Goins argues that Steve Sum was moved from a position that hurt his shoulder

5    without needing to submit ADA paperwork.  Opp. at 21 (citing "Exh., 5, at pgs. 42 Salas"

6    [sic]).  Again, this citation is entirely meaningless, and the court's independent search of

7    the record for references to Steve Sum brings up an irrelevant point at Dkt. 72 ECF

8    p. 354.  The relevant discussion could perhaps be found at Dkt. 72 ECF pp. 36–38,

9    where Salas says he was aware that Steve Sum had an injury and was assigned to a

10   different job from Goins due to a "bidding process."  But plaintiff does not cite to this, and

11   moreover even if she did this fact alone doesn't meet Goins's burden.  She doesn't argue

12   that she was denied an easier position through a bidding process, or that Sum was

13   actually treated differently in any way.

14        Goins argues that there is a "similarly situated compactor, [sic] Matt", who worked

15   close to Goins.  Opp. at 22–23.  Goins seems to argue that it was a problem for her to

16   work next to Matt, because Matt was disabled and couldn't work fast, so she would have

17   to work faster to pick up his slack.  She appears to argue that UPS positioned Matt next

18   to Goins on purpose to help Matt who was disabled at the expense of Goins who was

19   also disabled, and the only difference was that he is a man.  But even to the extent Goins

20   argues that Matt was treated differently, she cites no evidence in the record supporting a

21   finding that Matt is "similar in all *material* respects."  <u>Hawn</u>, 615 F.3d at 1157.  She does

22   not even explain what position Matt has, how it is similar to her position, or how they

23   perform similarly.  That is fatal, as it is her burden to at least provide some evidence of a

24   similarly-situated male.  Moreover, to the extent that plaintiff does cite to the record in

25   support of this argument, the citations are entirely incomprehensible.  She cites to "Exh.

26   12 p. 127:23-25-128:1-25" and "Exh. 12 pg. 129".  These are entirely untethered to any

27

28

United States District Court
Northern District of California

1  recognizable portion of the record.[12]

2       Given the confused state of the briefing on this point and the utter lack of any

3  identification in the record of supporting facts, Goins cannot be said to have satisfied the

4  prong that similarly situated men were treated more favorably.

5       Because she fails to provide support that an adverse employment event occurred

6  or that similarly situated men were treated more favorably, she has failed to establish a

7  prima facie case and her gender discrimination claim must fail.

8                    **(B)    UPS's Legitimate Nondiscriminatory Reason**

9       "[O]nce a prima facie case of discrimination has been made, the burden shifts to

10  the employer to articulate some legitimate, nondiscriminatory reason for the challenged

11  action.  This burden is one of production, not persuasion and involves no credibility

12  assessment."  <u>Opara</u>, 57 F.4th at 723 (citations and internal quotation marks omitted).

13       Here, Goins has failed to make a prima facie showing, so UPS need not show a

14  legitimate nondiscriminatory reason.  However, assuming Goins had made such a

15  showing, UPS has articulated some legitimate, nondiscriminatory reason for the

16  challenged action.  UPS provides evidence that supervisors assign employees to tasks

17  based on operational efficiency and safety compliance.  Moreno Decl. ¶¶ 18–20 & 25–7.

18  These same concerns require that supervisors regularly monitor and document safety

19  and methods demonstrated by all employees in Small Sort and provide training where

20  necessary.  <u>Id.</u> ¶¶ 5, 19 & 23–4.  UPS also argues that it did attempt to accommodate

21  Goins multiple times, and in multiple ways.  She testified at deposition that she has

22  received light duty and alternate positions.  Goins Dep. at 288:8–289:8 & 296:8–10.  And

23  Goins and her attorney have failed to respond to UPS's attempts to provide reasonable

24  _____

25

26  [12] It is possible that the citation is to Exhibit 12 to the Varlack declaration, which are UPS
    Grievance Forms but they are from Jones-Jackson—not Goins.  And they are not
27  paginated, so the references to page number would be useless.  Moreover, the exhibit
    isn't even 129 pages long.  The court is left entirely adrift as to what plaintiff might be
28  pointing to with these references.

United States District Court
Northern District of California

1 | accommodations.  <u>See</u> Dunn Decl. ¶¶ 11–20; <u>see also</u> Goins Dep. at 257:13–15

2 | (acknowledging attorney communication with UPS).

3 | <center>**(C)    Pretext**</center>

4 |     If an employer can articulate a legitimate, nondiscriminatory reason for the

5 | challenged action, "the employee must show that the articulated reason is pretextual."

6 | <u>Opara</u>, 57 F.4th at 723.  Goins must prove "*both* that the reason was false, *and* that

7 | discrimination was the real reason."  <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 515

8 | (1993).  Put another way, "there must be evidence supporting a rational inference that

9 | *intentional discrimination, on grounds prohibited by the statute, was the true cause* of the

10 | employer's actions."  <u>Guz</u>, 24 Cal. 4th at 361.

11 |     Goins addresses pretext in a few lines of her brief, in a section that is entirely

12 | devoid of citation to the factual record.  Opp. at 24:24–25:5.  The brief includes argument

13 | from counsel—absent any factual support—that Goins was removed from the NGSS

14 | position after complaining about gender discrimination; that men were given

15 | accommodations without an ADA process, which shows that the ADA process was

16 | pretextual; and that there is a record of her having an OJS on a day she did not work.

17 | Even if plaintiff had attempted to support these arguments with the record in any way,

18 | evidence of these facts would not have carried plaintiff's burden.  But without any citation

19 | to the record at all,[13] it is impossible to find that plaintiff met her burden here.

20 |     Goins has failed to establish a prima facie case, UPS has established some

21 | legitimate, nondiscriminatory reason for the challenged action, and Goins has failed to

22 | show that UPS's articulated reasons were pretext.  UPS's motion for summary judgment

23 | with respect to Goins's first and third claims for Title VII and FEHA violations based on

24 | gender discrimination is therefore GRANTED.

25 | <center>**ii.    Disability**</center>

26 |

27 |

28 | [13] It appears that an attorney drafting the brief inserted placeholders for citations that were meant to be inserted before filing the brief.

United States District Court
Northern District of California

<center>31</center>

1   UPS argues that following the court's order on the motion to dismiss the SAC,

2   Goins does not have a viable claim for disability discrimination.  See MTD Order.  Rather,

3   any viable claim that is related to Goins's allegation that she was denied reasonable

4   accommodation is limited to the claim for gender discrimination.  As such, the prior order

5   precludes a claim that she was denied reasonable accommodation based on disability.

6   Plaintiff's brief argues that "[t]o the extent the Court allows a disability argument,

7   plaintiffs submit that **Sonia Lopez** experienced shoulder issues, which limited her work

8   capabilities."  Opp. at 29 (emphasis added).  UPS's reply argues that Goins abandoned

9   her claim for disability discrimination, to the extent she was allowed to make one.

10   UPS's arguments must prevail.  First, the court found that only Goins's gender-

11   based discrimination claim was exhausted.  Second, Goins abandoned any disability-

12   based claim by failing to address it in her opposition.  Accordingly, UPS's motion for

13   summary judgment with respect to Goins's first and third claims for Title VII and FEHA

14   violations based on disability discrimination is therefore GRANTED.

15   **c.   Lopez**

16   The parties dispute Lopez's claims based on (i) gender and (ii) disability

17   discrimination.

18   **i.   Gender**

19   With respect to gender discrimination, the court has already determined Lopez

20   exhausted only two allegations:  (1) that she was denied reasonable accommodation

21   based on her gender for shoulder injuries while men were granted easier workloads

22   (MTD Order at 27 (citing SAC ¶ 114)); and (2) that she faced adverse treatment in the

23   form of more difficult work assignments than her male colleagues (SAC ¶¶ 120–21).

24   UPS's motion correctly argues that only those two allegations are exhausted,

25   which UPS calls allegations 5 and 6.  Mot. at 22–23.  Lopez agrees.  Opp. at 26.

26   **(A)   Prima Facie Case**

27   The court first assesses whether plaintiff made out a prima facie case of her

28   discrimination claim.  "The plaintiff may do so either by using the McDonnell Douglas

United States District Court
Northern District of California

United States District Court
Northern District of California

framework, or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the employer." Opara, 57 F.4th at 721–22 (internal quotation marks omitted).

**(1)      Direct Evidence**

Lopez's argument that she has direct evidence is identical to—and combined in the same section of the brief as—Goins's and Jones-Jackson's argument.  For the reasons discussed with respect to Goins above, Lopez does not identify any direct evidence.  The question has to do with the *reason* or *intent* the employer had when taking the actions, not whether the actions occurred.  Simply stating that events occurred provides insufficient direct or circumstantial evidence that a discriminatory reason more likely than not motivated the employer.

Moreover, even if the argument could plausibly show intent, plaintiffs do not meaningfully cite to the record when making this argument and therefore do not support it with any evidence.  They cite generally to entire deposition transcripts without pages numbers, line numbers, or quotations.  Opp. at 17:8–12 & nn.2–5.  The one page they actually cite to for the proposition that women had to clean up more than men is entirely incomprehensible, and appears to cite generally to an entire unpaginated exhibit of deposition transcripts.  Opp. at 18:24 (citing to "Deposition of Salas at pg. 42, attached as Exhibit 5 to the Varlack Decl.").

**(2)      McDonnell Douglas framework**

Having failed to present direct or circumstantial evidence, the court next assesses whether plaintiff in the alternative made out a prima facie case using the McDonnell Douglas framework.

"Establishing a prima facie case of . . . discrimination via the McDonnell Douglas factors generally requires a plaintiff to show: '(1) she belongs to a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably.'" Opara, 57 F.4th at 722 (quoting Chuang, 225 F.3d at 1123).

United States District Court<br>Northern District of California

First, the parties do not dispute that Lopez is a member of a protective class as a female.

Second, Lopez fails to even attempt to argue that she was qualified. Plaintiffs argue that Goins and Jones-Jackson were qualified, but there is no argument (much less citation to the record) that Lopez was qualified for her position. Accordingly, Lopez fails to establish a prima facie case of gender discrimination.

Third, Lopez argues that she suffered adverse employment actions because (1) she was denied reasonable accommodations for her shoulder injuries while similar or lesser ailments in male colleagues were accommodated with lighter workloads; and (2) she was assigned more laborious tasks than her male counterparts. Opp. at 26.[14]

With respect to her reasonable accommodation argument, she argues that Michael Salas admitted to making informal determinations about her capabilities without following official paperwork for accommodations. Opp. at 27 (citing Varlack Decl, Ex. 4 at pp. 82–88).[15] Although the citation is entirely incomprehensible, plaintiff may be referring to Dkt. 72 at ECF pp. 39–41. But this does not describe any sort of fact that "materially affect[s] the compensation, terms, conditions, or privileges of the [plaintiff's] employment." Chuang, 225 F.3d at 1126. That evidence simply shows that Salas did not process medical paperwork for Lopez, and that he would help her find an accommodation if she requested one. Dkt. 72 at ECF pp. 39–41. Plaintiff also argues that another employee named Steven was transferred through a bidding process and that she was allowed to work at her own pace. Opp. at 27:10–14. Again, these arguments do not describe any

---

[14] She also makes a number of unexhausted arguments, for example that females were required to clean up and men were not and that she felt harassed. The court does not assess plaintiffs' unexhausted allegations. Opp. at 27.

[15] The court reads plaintiffs' citation to "Ex. 4" as Exhibit 5 (the Salas Deposition transcript) rather than Exhibit 4, which is a single-page printout of what appears to be a blank table with the words "WITHDRAWN, EXHIBIT" printed across it. Also, because the provided Salas Deposition is unpaginated and plaintiff does not quote any portion of the transcript, it is unclear what evidence she refers to in support of her argument.

1   adverse material impact on the conditions of her employment.  She also argues that she

2   had to clean up work areas that males didn't, which is a brand-new unexhausted

3   allegation.  Finally, plaintiff argues entirely without record citation that as a general matter

4   she was not provided a reasonable accommodation.  The argument is difficult to follow,

5   but even if she had argued and supported this point, as discussed above with respect to

6   Goins, a failure to accommodate a disability does not constitute an adverse employment

7   action with respect to a discrimination claim.

8           With respect to her argument that she was given more difficult work, plaintiff does

9   not provide anything but the most cursory argument—nor does she provide any record

10  citation—supporting her allegation that she was given more difficult work than men.  That

11  allegation certainly would have constituted a cognizable adverse employment action had

12  plaintiff offered any citation to the record supporting that fact.

13          As she fails to identify an adverse employment action, Lopez fails to establish a

14  prima facie case of gender discrimination for this reason as well.  Fundamentally, Lopez

15  failed to cite any record evidence that could support this prong, even though she makes

16  passing arguments in her brief that could have potentially satisfied her burden on this

17  element if supported by the record.

18          Fourth, Lopez must present evidence showing that similarly situated individuals

19  outside her protected class were treated more favorably.  To be "similarly situated" under

20  Title VII, employees must be "similar in all *material* respects."  Hawn, 615 F.3d at 1157.

21  That is, comparator employees must both have similar jobs as a plaintiff and "display

22  similar conduct."  Id.

23          Lopez only cursorily addresses this element.  She argues generally that women

24  had to clean up and men did not, but she does identify any particular similarly-situated

25  men who did not have to clean up.  Opp. at 27:1–9.  The only individual she identifies at

26  all is "Steven, who had a similar injury but was allowed to transfer to a different position

27  through a bidding process."  Opp. at 27:10–12.  Plaintiff does not attempt at all to explain

28  how Steven is a similarly-situated individual, or even that has was treated differently, as

35

1  Lopez does not cite evidence that she was not allowed to transfer through a bidding

2  process.  Additionally, this allegation is unexhausted.

3         As she fails to identify any similarly-situated individual who was treated more

4  favorably, Lopez fails to establish a prima facie case of gender discrimination for this

5  reason as well.  Lopez utterly fails present evidence that any similarly-situated individual

6  exists, much less that he was treated more favorably.

7                          **(B)     UPS's Legitimate Nondiscriminatory Reason**

8         "[O]nce a prima facie case of discrimination has been made, the burden shifts to

9  the employer to articulate some legitimate, nondiscriminatory reason for the challenged

10 action.  This burden is one of production, not persuasion and involves no credibility

11 assessment."  Opara, 57 F.4th at 723 (citations and internal quotation marks omitted).

12        Here, Lopez has failed to make a prima facie showing, so UPS need not show a

13 legitimate nondiscriminatory reason.  However, assuming Lopez had made such a

14 showing, UPS has articulated a legitimate, nondiscriminatory reason for the challenged

15 action.  UPS argues that, to the extent Lopez's case relies on her work assignments, her

16 positions changed based on her failure to keep up with performance and production

17 standards, which are decisions made based on operational efficiency, safety concerns,

18 and employee performance.  Lopez acknowledged that she was told her inability to "keep

19 up with [her] work" was the reason she would be moved.  Lopez Dep. at 174:5–6.  To the

20 extent Lopez argues she was given more work than men, UPS provided evidence that an

21 automated flow distributes packages evenly to employees.  Moreno Decl. ¶ 20.  If Lopez

22 and the other Small Sort employees received a heavier flow on any one day, the decision

23 was based on volume and not disability.  Id.  Accordingly, UPS has met its burden of

24 production.

25                                  **(C)     Pretext**

26        If an employer can articulate a legitimate, nondiscriminatory reason for the

27 challenged action, "the employee must show that the articulated reason is pretextual."

28 Opara, 57 F.4th at 723.

United States District Court
Northern District of California

1    Lopez acknowledges that she has declined to address the pretext element

2    because she does not believe UPS met its burden to show a legitimate non-

3    discriminatory reason.  Opp. at 28:20–22 ("Because UPS cannot show a uniform non-

4    discriminatory purpose for its actions towards Lopez and the others, the burden for pre-

5    text did not shift.  UPS' motion therefore should be denied.").  Accordingly, Lopez has

6    abandoned the argument and forfeits this element.

7    Lopez has failed to establish a prima facie case, UPS has established a legitimate,

8    nondiscriminatory reason for the challenged action, and Lopez has forfeited the pretext

9    element.  UPS's motion for summary judgment with respect to Lopez's first and third

10   claims for Title VII and FEHA violations based on gender discrimination is therefore

11   GRANTED.

12                    ii.    Disability

13   UPS first argues that following the court's order on the motion to dismiss the SAC,

14   Lopez does not have a viable claim for disability discrimination.  Rather, any viable claim

15   that is related to Lopez's allegation that she was denied a reasonable accommodation is

16   limited to the claim for gender discrimination.  As such, the order precludes a claim that

17   she was denied reasonable accommodation based on her alleged disabilities.  UPS next

18   argues that if the court allows the claim, it fails on substance.

19   Plaintiff argues that "**[t]o the extent the Court allows a disability argument**,

20   plaintiffs submit that Sonia Lopez experienced shoulder issues, which limited her work

21   capabilities.  She would inform Salas when her shoulder prevented her from performing

22   certain tasks.  There is mention of other employees like Steven, who also had shoulder

23   injuries but were not required to bag, suggesting inconsistencies in job assignments

24   relative to physical limitations."  Opp. at 29–30 (emphasis added).

25   The court found in its order on the motion to dismiss the SAC that Lopez

26   exhausted only gender-discrimination claims—not a disability claim:  "Lopez plausibly

27   alleges that she was treated differently based on gender where she alleges that she was

28   denied reasonable accommodations for shoulder injuries while men were granted easier

37

United States District Court
Northern District of California

1   workloads.  SAC ¶ 114.  Lopez also plausibly alleges that she faced adverse treatment in

2   the form of more difficult work assignments than her male colleagues.  SAC ¶¶ 120–21."

3   MTD Order at 21–22; see also id. at 27–28 ("Defendant must respond to Lopez'

4   allegations of disparate treatment that she was also denied reasonable accommodation

5   based on her gender in violation of both Title VII and FEHA.  Lopez alleges she was

6   denied reasonable accommodations for shoulder injuries while men were granted easier

7   workloads.  Defendant must also respond to Lopez' allegations of disparate treatment

8   based on work assignments.  Lopez alleges that she faced adverse treatment in the form

9   of more difficult work assignments than her male colleagues.") (citations omitted).

10        Because that order clearly limited Lopez's claims to gender discrimination, an

11  independent disability-discrimination claim was not exhausted, and plaintiff cannot assert

12  that claim now.  The court need not address the merits of the non-exhausted claim.

13        Accordingly, UPS's motion for summary judgment with respect to Lopez's first and

14  third claims for Title VII and FEHA violations based on disability discrimination is

15  therefore GRANTED.

16                    **d.    Jones-Jackson**

17        The parties dispute Jones-Jackson's claims based on (i) gender and (ii) age

18  discrimination.

19        The court has already determined that Jones-Jackson exhausted only three

20  allegations:  she was denied (1) "backpay to cover the period of a gender-based pay

21  discrepancy"; (2) "the opportunity to work overtime while men with the same or less

22  seniority were given such opportunity"; and (3) "the preferential treatment given to

23  younger women."  MTD Order at 19.  Plaintiff limits her arguments to these allegations.

24  Opp. at 25–26 & 28–29.

25                    **i.    Gender**

26                    **(A)    Prima Facie Case**

27        The court first assesses whether plaintiff made out a prima facie case of her

28  discrimination claim.  "The plaintiff may do so either by using the McDonnell Douglas

1    framework, or alternatively, may simply produce direct or circumstantial evidence

2    demonstrating that a discriminatory reason more likely than not motivated the employer."

3    Opara, 57 F.4th at 721–22 (internal quotation marks omitted).

**(1)     Direct Evidence**

5          Jones-Jackson's argument that she has direct evidence is identical to—and

6    combined in the same section of the brief—as Goins's and Lopez's argument.  For the

7    reasons discussed with respect to Goins above, Jones-Jackson does not identify any

8    direct evidence.  The question has to do with the *reason* or *intent* the employer had when

9    taking the actions, not whether the actions occurred.  Simply stating that that events

10   occurred provides insufficient direct or circumstantial evidence that a discriminatory

11   reason more likely than not motivated the employer.

12         Moreover, even if the argument could plausibly show intent, plaintiffs do not

13   meaningfully cite to the record when making this argument and therefore do not support it

14   with any evidence.  They cite generally to entire deposition transcripts without pages

15   numbers, line numbers, or quotations.  Opp. at 17:8–12 & nn.2–5.  The one page they

16   actually cite to for the proposition that women had to clean up more than man is entirely

17   incomprehensible, and appears to cite generally to an entire unpaginated exhibit of

18   deposition transcripts.  Opp. at 18:24 (citing to "Deposition of Salas at pg. 42, attached as

19   Exhibit 5 to the Varlack Decl.").

**(2)     McDonnell Douglas framework**

21         Having failed to present direct or circumstantial evidence, the court next assesses

22   whether plaintiff in the alternative made out a prima facie case using the McDonnell

23   Douglas framework.

24         "Establishing a prima facie case of . . . discrimination via the McDonnell Douglas

25   factors generally requires a plaintiff to show: '(1) she belongs to a protected class; (2) she

26   was qualified for the position; (3) she was subject to an adverse employment action; and

27   (4) similarly situated individuals outside her protected class were treated more

28   favorably.'"  Opara, 57 F.4th at 722 (quoting Chuang, 225 F.3d at 1123).

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1     First, the parties do not dispute that Lopez is a member of a protected class as a

2  female.

3     Second, Jones-Jackson argues that "[s]he was qualified to do her job, and can still

4  do her job after twenty-five years."  Opp. at 25 (citing Jones-Jackson Decl. ¶¶ 30–31).

5  Plaintiff here provides a coherent citation to record evidence.  However, the paragraphs

6  of Jones-Jackson's declaration that she cites to are completely irrelevant to the argument

7  presented in the brief and do not support the claim that she is qualified.  Although plaintiff

8  at least in this instance attempts to provide a citation to the record to support an argued

9  fact, the court is puzzled at the cited material's irrelevance.

10     Accordingly, Jones-Jackson fails to meet her burden of providing any evidentiary

11  support that she was qualified for the position, so she fails to establish a prima facie case

12  of gender discrimination.

13     Third, Jones-Jackson argues she was subject to adverse employment actions

14  because (1) she was paid less than men, and never received backpay; (2) she did not

15  receive overtime opportunities; and (3) people falsified her timeclock entries.  Opp. at 25.

16     Her third contention concerning timeclock manipulation was not exhausted and is

17  not properly raised.  Concerning the exhausted allegations, the argument section of the

18  brief is entirely devoid of record citations supporting them.  When presenting her first

19  argument that she was paid less than men and never received backpay, Jones-Jackson

20  generally refers to the section of the brief discussing Rule 56(d), noting that "UPS by

21  omission admitted to EPA/CEPA violations by acknowledging her retro pay in 2019."

22  Opp. at 29.  The only evidence cited in that section of the brief is Jones-Jackson's

23  paystub, which includes an entry called "Retro Wages."  Varlack Decl., Ex. 2 at ECF p.

24  11; see also White Decl, at ¶ 13 (describing the backpay reflected on the pay statement).

25  But Jones-Jackson's argument that those "retro wages" did not constitute backpay is

26  pure speculation.  Rather than even attempting to present any sort of evidence as to what

27  backpay was owed her (or even how many hours she was owed backpay for), she simply

28  argues that "the evidence is inconclusive as to whether the payment of $514.76 in back

40

1  pay was for the reasons UPS stated . . . . because the other Plaintiffs Lopez and Goins

2  also received 'retro pay' at the same time."  Opp. at 11.  Plaintiff's efforts here amount to

3  pure speculation, and they are so lacking that they do not even satisfy the low degree of

4  proof necessary to establish a prima facie case on summary judgment.

5      Jones-Jackson appears to have abandoned her second allegation that she did not

6  receive overtime opportunities.  She addresses it in a single sentence stating that

7  "Statistical data will demonstrate that men with less seniority were unjustly preferred for

8  overtime hours", but she does not provide or cite to any such evidence.  Accordingly, her

9  allegation concerning overtime opportunities fails.

10     As she fails to identify an adverse employment action, Jones-Jackson fails to

11  establish a prima facie case of gender discrimination for this reason as well.

12     Fourth, Jones-Jackson must present evidence showing that similarly situated

13  individuals outside her protected class were treated more favorably.  To be "similarly

14  situated" under Title VII, employees must be "similar in all *material* respects."  Hawn, 615

15  F.3d at 1157.  That is, comparator employees must both have similar jobs as a plaintiff

16  and "display similar conduct."  Id.

17     Jones-Jackson argues that she was paid less than comparator Steve Smith, who

18  is one day apart in seniority from her.  Opp. at 29.  She cites record evidence supporting

19  that similarity in seniority (albeit in another section of the brief).  Opp. at 12 (citing White

20  Decl. ¶ 13).  However, that is where her allegations concerning Smith end.  She provides

21  no indication what his job is, how they are similarly situated except for tenure, or that they

22  display similar conduct.  She admits as much:  "although Jones Jackson thinks that she

23  has enough evidence to demonstrate that she was paid less than Smith, she is missing

24  the 'what and why' of UPS' decision making."  Opp. at 12:8–10.

25     As she fails to identify any similarly-situated individual who was treated more

26  favorably, Lopez fails to establish a prima facie case of gender discrimination for this

27  reason as well.

28                    **(B)    UPS's Legitimate Nondiscriminatory Reason**

United States District Court
Northern District of California

1       "[O]nce a prima facie case of discrimination has been made, the burden shifts to

2   the employer to articulate some legitimate, nondiscriminatory reason for the challenged

3   action.  This burden is one of production, not persuasion and involves no credibility

4   assessment."  Opara, 57 F.4th at 723 (citations and internal quotation marks omitted).

5       Here, Jones-Jackson has failed to make a prima facie showing, so UPS need not

6   show a legitimate nondiscriminatory reason.  However, assuming Jones-Jackson had

7   made such a showing, UPS has articulated a legitimate, nondiscriminatory reason for the

8   challenged action.  UPS has submitted evidence showing that during the relevant time

9   period, the job classification code for Jones-Jackson was H345 ("unloader/loader") and

10  Smith's code was H340 ("pickoff").  White Decl. ¶13.  Pickoffs are considered a "skilled"

11  position and were paid a higher rate of pay under the CBA.  Id.  For example, Smith is

12  certified to do pickoff work in the tender position.  Id.  Jones-Jackson does not hold the

13  certification required to work as a tender.  Id.  UPS's position was that Jones-Jackson's

14  rate of pay was correct based on her job code and because she was not a skilled worker.

15  Id.  However, following meetings with the Union in early 2019, it agreed to increase

16  Jones-Jackson's rate of pay.  Id.  It also agreed to retroactively pay Jones-Jackson

17  $514.56 in the form of backpay for the disputed discrepancy between the pay rates.  Id.

18  UPS paid Jones-Jackson this retroactive payment, and the payment is reflected in a

19  wage statement for Jones-Jackson dated July 3, 2019.  Id.; & Svanfeldt Decl., Ex. 25.

20  Accordingly, UPS has met its burden of production here.

21                          **(C)    Pretext**

22      If an employer can articulate a legitimate, nondiscriminatory reason for the

23  challenged action, "the employee must show that the articulated reason is pretextual."

24  Opara, 57 F.4th at 723.

25      Jones-Jackson addressed the pretext element in a single sentence:  "The stated

26  reasons for the conduct were pretextual because there was no documentation to support

27  that the wage theft didn't happen."  Opp. at 25:12–14.  This statement appears to be in

28  the context of non-exhausted allegations that her timeclock was manipulated, but in any

event this single vague, conclusory statement fails to satisfy her burden at this stage.

In conclusion, Jones-Jackson has failed to establish a prima facie case, UPS has established a legitimate, nondiscriminatory reason for the challenged action, and Jones-Jackson has failed to meaningfully address the pretext question. UPS's motion for summary judgment with respect to Jones-Jackson's first and third claims for Title VII and FEHA violations based on gender discrimination is therefore GRANTED.

### ii.    Age

UPS's motion argues that Jones-Jackson cannot establish a prima facie case of age discrimination. Mot. at 35–36. Jones-Jackson's opposition brief does not address her age-based discrimination claim at all, and in reply UPS argues that Jones-Jackson abandoned the claim.

Here, UPS moved for summary judgment, explaining how Jones-Jackson would fail to make a prima facie showing of age discrimination and addressing many of the factors. Mot. at 35–36. Plaintiff entirely failed to address the claim and has therefore failed to make a prima facie showing of her claim.

Accordingly, UPS's motion for summary judgment with respect to Jones-Jackson's first and third claims for Title VII and FEHA violations based on age discrimination is therefore GRANTED.

### 3.    Claims 4 & 5:  EPA & CEPA

Jones-Jackson is the only plaintiff to allege claims 4 and 5 for violations of EPA and CEPA. UPS argues that the claims (1) are time-barred and (2) fail on the merits.

### a.    Statute of Limitations

The parties agree that the statute of limitations is typically 2 years, but it extends to three years for "willful" violations. The court assumes without deciding that plaintiff has established a factual dispute with respect to whether UPS's conduct was willful, such that the three-year statute of limitations applies. The court further assumes without deciding that UPS has not met its burden to demonstrate that there is no dispute of material fact with respect to its affirmative defense that the three-year statute of limitations period had

1    run before plaintiffs filed their complaint.

    **b. Merits on Summary Judgment**

3       The elements of an equal pay claim under the EPA and CEPA are identical, and

4    courts use the same analysis for both statutes.  First, "the plaintiff has the burden of

5    establishing a prima facie case of discrimination by showing that employees of the

6    opposite sex were paid different wages for equal work."  <u>Stanley v. Univ. of S. California</u>,

7    178 F.3d 1069, 1073–74 (9th Cir. 1999).  To do this, the plaintiff must demonstrate that

8    the compared jobs are "substantially equal."  <u>Id.</u> at 1074.  Under the "substantially equal"

9    analysis, the court looks to:  (1) whether the jobs share a "common core of tasks"; and

10   (2) whether any additional tasks make the jobs "substantially different".  <u>Id.</u>  Second, "[a]

11   defendant may rebut a prima facie case by showing that the disparity in pay is a

12   'differential based on any . . . factor other than sex.'"  <u>Id.</u> at 1075 (quoting 29 U.S.C.

13   § 206(d)(1)); <u>see</u> 29 U.S.C. § 206(d)(1) (e.g., payments "made pursuant to (i) a seniority

14   system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality

15   of production; or (iv) a differential based on any other factor other than sex").

16      First, the court considers whether plaintiff has established a prima facie case by

17   demonstrating that the compared jobs are "substantially equal."  Plaintiff argues that the

18   court should stay the summary judgment motion and allow plaintiff to conduct additional

19   discovery because she believes information from the DLSE may contain information

20   relevant to this question.  In her request for more discovery, she admits that she "thinks

21   that she has enough evidence to demonstrate that she was paid less than Smith, she is

22   missing the 'what and why' of UPS' decision making."  Opp. at 12.  She also argues that

23   by acknowledging her retro pay in 2019, UPS admitted to EPA and CEPA violations.

24   Opp. at 29.  She argues that Smith, the male comparator, and Jones-Jackson have

25   worked alongside each other since 2000 and are one day apart in seniority, so there is no

26   valid reason why she was paid less than him.  <u>Id.</u>

27      Jones-Jackson fails to establish a prima facie case of discrimination, as she has

28   not identified a comparable individual who shares a "substantially equal" job.  Although

United States District Court
Northern District of California

1  she indicates that she and Smith began working at the same time, she does not establish

2  whether their jobs share a common core of tasks or whether any additional tasks made

3  the jobs substantially different.  In fact, the only evidence comes from UPS and is not

4  disputed:  Jones-Jackson was paid less than Smith because they had different job codes

5  based on their positions' skill.  See White Decl. ¶ 13 (Jones-Jackson's job classification

6  was H345; Smith's was H340, which is a "skilled" position that is paid more under the

7  CBA); Varlack Decl., Ex. 3 (same).

8      Jones-Jackson relies heavily on UPS agreeing to a retroactive pay raise to

9  establish her prima facie case.  But UPS could have agreed to that for any number of

10  reasons, and it does not provide evidence that her and Smith's jobs were "substantially

11  equal".  For example, even Jones-Jackson elsewhere argues that the payment was not

12  actually backpay, but must have been for something else because others received similar

13  payments at the same time.  See Opp. at 11.

14      Second, UPS can overcome plaintiff's prima facie case by showing a legitimate

15  reason for the pay difference.  The same evidence satisfies UPS's burden on this

16  element.  Namely, the jobs required different skill levels and were categorized by the

17  CBA accordingly.

18      Jones-Jackson has failed to establish a prima facie case, and UPS has shown that

19  the payments were made pursuant to a differential based on a factor other than sex.

20  Accordingly, UPS's motion for summary judgment with respect to Jones-Jackson's fourth

21  and fifth claims pursuant to EPA and CEPA is GRANTED.

22      **4.      Claim 6:  UCL**

23      UPS argues that as the UCL claim is derivative of the above claims, it fails for the

24  same reasons as the underlying claims.  Mot. at 38.  Plaintiffs argue that (1) their UCL

25  claim is also based on conduct independent of their other claims; and (2) it also derives

26  from the above claims.  Opp. at 30–34.  UPS argues that (1) plaintiffs abandoned the

27  derivate UCL claim (Reply at 16) and (2) plaintiffs cannot amend their UCL claim and

28  establish entirely new underlying conduct for the first time in their opposition to summary

United States District Court
Northern District of California

1    judgment (Reply at 28–29).

2                    **a.**    **Whether Plaintiffs Can Amend Their Claim in an Opposition to**

3                            **Summary Judgment**

4            The court first considers whether plaintiffs have alleged a UCL claim based on

5    conduct independent of their other claims.  The SAC pleads a UCL claim with the

6    following paragraphs:  "On Behalf of Class Representatives and all Putative Class

7    Members, Plaintiffs reallege and incorporate each and every allegation in this Complaint"

8    (SAC ¶ 377); "UPS' willful failure to pay women equally, to promote women equally, and

9    otherwise to offer women equal employment opportunities **as alleged above**, constitutes

10   unlawful, unfair and/or fraudulent activity prohibited by California Business and

11   Professions Code § 17200" (Id. ¶ 379 (emphasis added)).  In their opposition to UPS's

12   motion to dismiss the SAC, plaintiffs explained that "Plaintiffs' claim for violation of the

13   Unfair Competition Law ("UCL"), Cal. Business and Professions Code § 17200, et seq.

14   succeeds because Plaintiffs' derivative claims succeed."  Dkt. 43 at 20.  They argued that

15   "the SAC demonstrates the adverse employment actions that Plaintiffs experienced in

16   violation of law, and they submit that this shows a § 17200 violation."  Id. at 21.  The

17   court's order on UPS's motion to dismiss the SAC agreed with plaintiffs' opposition on

18   this point, ruling that because "plaintiffs state plausible violations of employment

19   discrimination and equal pay laws[,] . . . . [t]herefore, plaintiffs also state a plausible UCL

20   claim **based on those surviving claims**."  MTD Order at 24–25 (emphasis added).

21           Plaintiffs argue (with very sparse citations to the record) that their UCL claim is

22   now based on entirely different facts that have not been exhausted and are largely

23   absent from the complaint.  Jones-Jackson argues that UPS employees were "messing

24   up her time card" in 2022, 2023, and 2024—well after this action originated.  Opp. at 31–

25   32.  This is followed by general complaints that Jones-Jackson might not have gotten

26   paid on certain days, or that punch-in/punch-out times were incorrect.  Opp. at 32–34.

27           In short, plaintiffs try to amend their complaint in their brief opposing summary

28   judgment to state vague grievances about the accuracy of their paychecks without

United States District Court
Northern District of California

46

1    comprehensible record citations.  But plaintiffs cannot now amend their UCL claim in their

2    opposition to UPS's motion for summary judgment to allege new conduct, revise the

3    basis for the UCL claim, and sidestep the court's previous order.  See, e.g., Wasco Prod.,

4    Inc. v. Southwall Techs., Inc., 435 F.3d 989, 992 (9th Cir. 2006) ("summary judgment is

5    not a procedural second chance to flesh out inadequate pleadings").

6        As separate matter, even if this new claim were somehow permissible, plaintiffs

7    would fail to adequately present it.  The section of the brief arguing for a new basis for

8    their UCL claim is devoid of any understandable citations to the record, making this

9    simply attorney argument without any comprehensible factual basis.  For example, entire

10   paragraphs of argument pass without a single record citation, and then plaintiffs include

11   an entirely incomprehensible cite to "pgs. 1, 3, 4, 6".  See, e.g., Opp. at 32:12.  There is

12   no indication at all as to what document is being cited to, or what contentions those

13   citations are meant to support.

14                   **b.       UCL Claim Derivative of Other Claims**

15       UPS argues that plaintiffs abandoned their UCL claim to the extent it is derivative

16   of their other claims.  Reply at 16.  But that isn't the case.  Plaintiffs argued that "[t]he

17   UCL claim does not **solely** derive from the aforementioned discrimination claims and has

18   a separate legal basis."  Opp. at 30 (emphasis added).

19       However, because defendant's motion for summary judgment is granted as to

20   each of plaintiffs' claims underlying their UCL claim, the derivate UCL claim cannot

21   survive.  UPS's motion for summary judgment with respect to plaintiffs' sixth claim for

22   violations of the UCL is therefore GRANTED.[16]

23               **5.       Evidentiary Objections**

24                   **a.       Plaintiffs' Objections**

25

26   _____

27   [16] Because defendant's motion for summary judgment is granted as to each of plaintiffs'
     claims, the court need not address the parties' arguments with respect to the availability
28   of punitive damages as a remedy.

Plaintiffs object to the declarations of Angel Dunn, Jenn Svanfeldt, Ricardo Moreno and Anthony White.  On May 16, 2024, plaintiffs filed additional objections to a declaration UPS filed accompanying its reply brief.  Dkt. 75.

### i.      Dunn

Plaintiffs object "as to competence", arguing that Dunn is confused about the facts.  That is not grounds for objection, and it is DENIED.

Plaintiffs object to a statement about a program at UPS based on foundation or personal knowledge.  Plaintiffs acknowledge that Dunn lays a foundation based on personal knowledge and a review of documents, but they argue that her claims of personal knowledge "lack direct evidence or external verification".  But foundation doesn't require external verification.  The objection is DENIED.

Plaintiffs object to various pages of the declaration on hearsay grounds.  They do not identify the objected-to paragraphs, however.  Rather, they refer to entire pages— including page 8, even though there are only 7 pages in the document.  Accordingly, the court cannot identify the objected-to content, so the objection is DENIED.

Plaintiffs present a "general objection" because there are arguments and opinions in the declaration.  "General objection" is not a valid evidentiary objection, so the objection is DENIED.  Furthermore, the objection appears to be to content like the declarant's work history and knowledge of harassment policies—all things relevant to establishing foundation and personal knowledge for other testimony.

### ii.      Svanfeldt

Plaintiffs object to the following exhibits to the Svanfeldt declaration for various reasons:  9, 10, 11, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22 & 27.  These objections simply provide a list of exhibits and blanket objections that are not specific to each exhibit.  Accordingly, the court cannot identify the objected-to content or the specific reason for the objection, so the objection is DENIED.

If the court were to attempt to parse the objections, plaintiffs' hearsay objection fails because the exhibits are mostly comprised of business records.  There are a few

United States District Court
Northern District of California

1   exceptions.  For example, Exhibit 27 is not a business record as it is Goins's Facebook

2   post, but it is a party admission.  However, plaintiffs object to some letters authored by

3   UPS that are properly excluded as hearsay, and those objections are GRANTED.

4       Plaintiffs' authenticity objection fails because most of the exhibits were

5   authenticated at depositions, and plaintiffs fail to identify with particularity which were not.

6                   **iii.    Moreno**

7       Plaintiffs object "as to competence", arguing that Moreno is confused about the

8   facts.  That is not grounds for objection, and the objection is DENIED.

9       Plaintiffs object to a statement about a program at UPS based on foundation or

10  personal knowledge.  Plaintiffs acknowledge that Moreno lays a foundation based on

11  personal knowledge and review of documents, but argues that his claims of personal

12  knowledge "lack direct evidence or external verification".  But foundation can be

13  established by the witness; it doesn't require external verification.  Accordingly, the

14  objection is DENIED.

15      Plaintiffs object on hearsay grounds but fail to identify the objected-to paragraphs.

16  Accordingly, the court cannot identify the objected-to content, so the objection is

17  DENIED.  Even if the court were to attempt to parse the objected-to content, most of the

18  hearsay objections are to statements plaintiffs made, which are party admissions.

19  However, ¶ 27 contains statements concerning UPS employee Penn describing technical

20  difficulties with an OJS that are properly excluded as hearsay, and plaintiffs' objections

21  are GRANTED as to those statements.

22      Plaintiffs object to Exhibit 9 on authenticity grounds, but it is authenticated, so that

23  objection is DENIED.

24      Plaintiffs offer a "general objection" because there are arguments and opinions in

25  the declaration.  "General objection" is not a valid evidentiary objection, so the objection

26  is DENIED.  Furthermore, the objection is to content like the declarant's work history and

27  knowledge of harassment policies—all things relevant to establishing foundation and

28  personal knowledge for other testimony.

United States District Court
Northern District of California

1

United States District Court
Northern District of California

####             iv.    White

Once again, it looks like plaintiffs have left in the brief placeholder citations for the paragraphs they wished to object to.  But they failed to fill in the list before filing, so the objections are to entire pages.  They object to pages 2–5, but there are only 4 pages.

Concerning the hearsay objection, the court cannot discern what content is being objected to, so the objection is DENIED.  Plaintiffs fail to explain the basis of their foundation objection, and the court cannot discern what might be objectionable—the declarant is describing policies at UPS based on personal knowledge and a review of business records.  Plaintiffs also object to Exhibits 21 and 22 on authenticity grounds, but White authenticated those exhibits.  Accordingly, those objections are DENIED.

####             v.    Objections to the Reply

Plaintiffs also object to exhibits UPS filed with its reply brief at Dkt. 73.

They object to Exhibit 29, which contains excerpts from the deposition of Michael Salas, on the ground that this is a new "argument" raised for the first time on reply.  But the exhibit contains excerpts from a deposition that plaintiffs also submitted in a declaration.  This is not a new "argument"; this is a document.  And it is permitted under Fed. R. Evid. 106, the Rule of Completeness, given that plaintiffs submitted excerpts of the document.  The objection is DENIED.

Plaintiffs object to Exhibits 30 (excerpts from the deposition of Anthony White) and 31 (excerpts from the deposition of Galena Goins).  The objections are DENIED for the same reasons as Exhibit 29.

The parties dispute the authenticity and accuracy of Exhibit 4 to the Varlack declaration.  The document is irrelevant to this court's order and the objection is therefore DENIED AS MOOT.

Finally, plaintiffs offer evidentiary objections to sentences in UPS's reply brief.  But argument in a brief is not evidence, and is not subject to evidentiary objections.  That objection is DENIED.

####         b.    Defendant's Objections

50

1   To the extent defendant offers meritorious objections, the court nevertheless has

2   considered the objected-to materials when assessing its motion for summary judgment.

3   For example, UPS argues that the plaintiffs' and Varlack's declarations were all

4   filed one day late and should be stricken.  Also, UPS argues the plaintiffs' declarations

5   should be stricken because they were not signed, nor do they include the attestation

6   required under Civil Local Rule 5-1(i)(3).  These are both independently-adequate

7   reasons to strike each of the declarations.  However, the court nevertheless considered

8   those declarations for the purposes of this order.

9   **CONCLUSION**

10   For the foregoing reasons, defendant's motion for summary judgment is

11   GRANTED.  Plaintiffs' Rule 56(d) motion is DENIED.  The pretrial conference and trial

12   dates are VACATED.

13   **IT IS SO ORDERED.**

14   Dated:  July 8, 2024

15   /s/ Phyllis J. Hamilton
16   PHYLLIS J. HAMILTON
     United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California