ELIZABETH A. BROWN (SB# 235429)
JENNIFER SVANFELDT (SB# 233248)
TERESA W. GHALI (SB# 252961)
lisabrown@gbgllp.com
jensvanfeldt@gbgllp.com
teresaghali@gbgllp.com
GBG LLP
601 Montgomery Street, Suite 840
San Francisco, CA  94111
Telephone:  (415) 603-5000
Facsimile:  (415) 840-7210

Attorneys for Defendant
UNITED PARCEL SERVICE, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GALENA GOINS, et al., | Case No. 4:21-CV-08722-PJH |
| Plaintiffs, | **DEFENDANT UNITED PARCEL SERVICE, INC.'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES; MEMORANDUM IN SUPPORT THEREOF** |
| vs. | |
| UNITED PARCEL SERVICE, INC., | |
| Defendant. | |

Date:          September 5, 2024
Time:          1:30 p.m.
Judge:         Hon. Phyllis J. Hamilton
Courtroom:     3

Complaint Filed:    November 9, 2021
FAC Filed:          October 7, 2022
SAC Filed:          January 23, 2023

# Table of Contents

**Page**

**NOTICE OF MOTION AND MOTION** ........................................................................... 1

**MEMORANDUM OF POINTS AND AUTHORITIES** ............................................... 2

I.      INTRODUCTION ................................................................................................ 2

II.     THE PARTIES HAVE MET AND CONFERRED .......................................... 2

III.    RELEVANT PROCEDURAL HISTORY ......................................................... 3

        A.      This Case Started with Three Plaintiffs and Nationwide Class and
                Collective Claims. ................................................................................... 3

        B.      The Court Granted UPS's Motion to Dismiss Plaintiffs' FAC .............. 4

        C.      The Court Granted UPS's Motion to Dismiss Plaintiffs' SAC ............... 4

        D.      The Court Granted UPS's Motion for Summary Judgment .................... 5

                1.      Plaintiff Galena Goins ................................................................. 6

                2.      Plaintiff Sonia Lopez .................................................................. 8

                3.      Plaintiff Terry Jones-Jackson ..................................................... 9

                4.      Plaintiffs' UCL Claim .............................................................. 11

IV.     LEGAL ANALYSIS .......................................................................................... 11

        A.      Plaintiffs' Discrimination Claims Under Title VII and FEHA Were
                Frivolous, Unreasonable, and Groundless. .......................................... 13

        B.      Jones-Jackson Brought Her EPA and CEPA Claims in Bad Faith. ...... 14

        C.      UPS Is a Prevailing Party As To the Class And Collective Actions ...... 15

        D.      UPS's Fees' Request is Reasonable and Supported by Evidence ......... 16

V.      CONCLUSION .................................................................................................. 19

1

**Table of Authorities**

2

**Page(s)**

3 **Cases**

4 *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,*
 421 U.S. 240 (1975)...................................................................................................... 11

5

6 *Andrews v. Equinox Holdings, Inc.,*
 570 F. Supp. 3d 803 (2021)............................................................................................ 18

7 *Bond v. Pulsar Video Productions,*
 50 Cal. App. 4th 918 (1996) .................................................................................... 12, 13

8

9 *C.W. v. Capistrano Unified Sch. Dist.,*
 784 F.3d 1237 (9th Cir. 2015)....................................................................................... 12

10 *Cadkin v. Loose,*
 569 F.3d 1142 (9th Cir. 2009)....................................................................................... 15

11

12 *Camacho v. Bridgeport Fin., Inc.,*
 523 F.3d 973 (9th Cir. 2008)......................................................................................... 18

13 *Carter v. Jai-Put Enter. Inc.,*
 2022 WL 4371503 (N.D. Cal. Sept. 21, 2022) ............................................................. 18

14

15 *Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n,*
 434 U.S. 412 (1978)....................................................................................................... 12

16 *Dumas v. New United Motor Mfg. Inc.,*
 2007 WL 1880377 (N.D. Cal. June 29, 2007) .............................................................. 13

17

18 *Flannery v. Prentice,*
 26 Cal. 4th 572 (2001) ................................................................................................... 17

19 *Gates v. Gomez,*
 60 F.3d 525 (9th Cir. 1995)........................................................................................... 16

20

21 *Good Job Games Bilism Yazilim ve Pazarlama A.S. v. SayGames LLC,*
 2023 WL 3260528 (N.D. Cal. May 4, 2023) ................................................................ 15

22 *Guthrey v. State of California,*
 63 Cal. App. 4th 1108 (1998) ........................................................................................ 17

23

24 *In re Washington Pub. Power Supply Sys. Sec. Litig.,*
 19 F.3d 1291 (9th Cir. 1994)......................................................................................... 19

25 *Ingram v. Oroudjian,*
 647 F.3d 925 (9th Cir. 2011).......................................................................................... 16

26

27 *Karwasky v. Zachay,*
 146 Cal. App. 3d 679 (1983).......................................................................................... 14

28 //

**Table of Authorities**

(continued)

**Page(s)**

**Cases**

*Ketchum v. Moses*,
24 Cal. 4th 1122 (2001) ...................................................................................... 16, 18

*Kirby v. Immoos Fire Protection, Inc.*,
53 Cal. 4th 1244 (2012) ........................................................................................... 14

*Meister v. Regents of the Univ. of Cal.*,
67 Cal. App. 4th 437 (1998) ..................................................................................... 16

*Minichino v. First California Realty*,
2012 WL 6554401 (N.D. Cal., Dec. 14, 2012) ......................................................... 16

*MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co.*,
197 F.3d 1276 (9th Cir. 1999) ................................................................................... 11

*Nadarajah v. Holder*,
569 F.3d 906 (9th Cir. 2009) ..................................................................................... 16

*Nguyen v. Wells Fargo Bank, N.A.*,
2011 WL 9322 (N.D. Cal. Jan. 3, 2011) .................................................................... 15

*Polee v. Cent. Contra Costa Transit Auth.*,
516 F.Supp.3d 993 (N.D. Cal. 2021) ........................................................................ 18

*Prison Legal News v. Schwarzenegger*,
608 F.3d 446 (9th Cir. 2010) ..................................................................................... 18

*Roadway Exp., Inc. v. Piper*,
447 U.S. 752 (1980) .................................................................................................. 14

*Robert v. Stanford University*,
224 Cal. App. 4th 67 (2014) ...................................................................................... 17

*Saret-Cook v. Gilbert, Kelly, Crowley & Jennett*,
74 Cal. App. 4th 1211 (1999) .................................................................................... 17

*Serrano v. Unruh*,
32 Cal. 3d 621 (1982) ............................................................................................... 16

*Stuart v. Cnty. of Riverside*,
2024 WL 3086634 (C.D. Cal. June 14, 2024) .......................................................... 14

*US Foods, Inc. v. Lalla Holding Corp.*,
2014 WL 4809073 (N.D. Cal. Sept. 25, 2014) ......................................................... 16

*US Foods, Inc. v. Lalla Holding Corp.*,
2014 WL 5281058 (N.D. Cal. Oct. 15, 2014) ........................................................... 16

**Table of Authorities**

(continued)

**Page(s)**

**Cases**

*Villanueva v. City of Colton,*
    160 Cal. App. 4th 1188 (2008) .................................................................................. 12, 13, 17

*Zaman v. Kelly Services, Inc.,*
    2017 WL 2335601 (N.D. Cal. May 30, 2017) ........................................................................ 12

**Statutes**

42 U.S.C. § 2000e-5(k) ................................................................................................................ 11

Cal. Gov. Code § 12965(c)(6) ...................................................................................................... 11

Cal. Lab. Code § 218.5 ................................................................................................................ 14

Cal. Lab. Code § 218.5(a) ............................................................................................................ 14

**Rules**

Fed. R. Civ. P. 54(d)(1) ............................................................................................................... 19

## **NOTICE OF MOTION AND MOTION**

TO PLAINTIFFS AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 5, 2024, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 3 of this Court, located at 1301 Clay Street, Oakland, California, before the Honorable Phyllis J. Hamilton, Defendant United Parcel Service, Inc. ("UPS" or the "Company") will and does hereby move the Court pursuant to Federal Rule of Civil Procedure 54, Northern District Local Rule 54, 42 U.S.C. § 2000e-5(k), Cal. Gov. Code § 12965(c)(6), and California Labor Code Section 218.5 for an order awarding it reasonable attorneys' fees in the amount of $347,052.50 as the prevailing party in this case. This action "was frivolous, unreasonable, or groundless when brought" or, in the alternative, Plaintiffs Galena Goins, Sonia Lopez and Terry Jones-Jackson continued to litigate after it clearly became frivolous, unreasonable or groundless.

This Motion is based on this Notice of Motion and Motion for Attorney's Fees; the supporting Memorandum of Points and Authorities; the Declaration of Elizabeth A. Brown; all other papers and pleadings on file in this matter; and any oral and documentary evidence as may be presented prior to, or at the time of, the hearing on this matter.

DATED: July 22, 2024

GBG LLP

BY:_____/s/ Elizabeth A. Brown_____
ELIZABETH A. Brown
Attorneys for Defendant
UNITED PARCEL SERVICE, INC.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendant United Parcel Service, Inc. ("UPS" or the "Company") moves this Court for an award of reasonable attorneys' fees as the prevailing party in this case.  The Court held thorough hearings before granting two motions to dismiss, striking nationwide class and collective allegations and 15 named plaintiffs.  It then meticulously identified the only claims Plaintiffs Galena Goins, Sonia Lopez and Terry Jones-Jackson ("Plaintiffs") had exhausted and dismissed those they had not.  The Court further outlined the necessary elements Plaintiffs needed to establish to continue litigating their claims.  Indeed, the Court noted in its first dismissal order that it was "not clear" what UPS even "actually did." Dkt. 35 at 1:22-24.  Nearly two years later, Plaintiffs were still unable to identify what UPS actually did in their opposition to UPS's motion for summary judgment.  Plaintiffs' claims were frivolous, unreasonable, or groundless when brought and, by the Court's *second* dismissal order, Plaintiffs were on clear notice that their claims were frivolous, unreasonable or groundless.  Yet they continued to litigate and even attempted to "sidestep the court's previous order" by raising claims that had already been dismissed and new conduct that was not exhausted in their opposition to UPS's motion for summary judgment.  Dkt. 79 at 47:1-5.

Throughout this litigation, Plaintiffs advanced contentions that had no factual support and used this Court to simply air grievances that had no legal foundation, underscoring the unreasonable and groundless nature of their claims, all of which needlessly increased the cost of this litigation.  To effectuate the purpose of the law cited herein, Plaintiffs must now face the consequences of their own reckless actions and bear responsibility by paying UPS's reasonable attorneys' fees.

## II.    THE PARTIES HAVE MET AND CONFERRED

Pursuant to Local Rule 54-5(b), counsel for the respective parties met and conferred and attempted to resolve all disputed issues relating to attorneys' fees before UPS filed the instant motion for attorneys' fees.  Declaration of Elizabeth Brown ("Brown Decl.") ¶9, Ex. 7.  Counsel for Plaintiffs did not agree that UPS is entitled to recover attorneys' fees as the prevailing party

and indicated that UPS should file the motion.  *Id*, ¶10.  This Motion for Attorneys' Fees ("Motion") follows.

## III.    RELEVANT PROCEDURAL HISTORY

### A.    This Case Started with Three Plaintiffs and Nationwide Class and Collective Claims.

On November 9, 2021, Plaintiffs filed a putative nationwide class and collective action against UPS and one frontline supervisor that was nearly, if not entirely, unprecedented in scope and complexity of its allegations.  Dkt. 1.  Chock-full of highly individualized grievances related to the three Plaintiffs – and short on detail for everything else – Plaintiffs alleged claims of gender, age, and disability discrimination on behalf of tens or hundreds of thousands of female individuals who held virtually any position in any UPS facility or office.  *Id.*

On October 7, 2022, before UPS had a chance to oppose the Complaint, Plaintiffs filed a First Amended Complaint ("FAC"), adding 15 additional individuals.  Dkt. 26.  The FAC doubled down on its allegations of nationwide improprieties, but was devoid of actual facts about any of the 18 named Plaintiffs.  Apparently forgetting – or not knowing – that UPS is led by a female CEO, the FAC was rife with such conclusory statements as: "at UPS, female employees are second class citizens" and "[w]omen are routinely denied opportunities for advancement and higher pay."  In its 219 paragraphs, Plaintiffs alleged such theories as: "UPS has discriminated against subclass members by treating them differently from and less preferably than similarly situated male employees *and female employees, who appear masculine*" and "UPS has discriminated against [Plaintiffs and other class members] by subjecting them to different treatment on the basis of their gender, *including* age and disability."  Dkt. 26.  In addition, the FAC veered into personal attacks on the lone individual defendant, Ricardo Moreno ("Moreno"), who, despite being just a manager on one operation in one facility, was purportedly "the chief harasser" and a "proxy for and symbol of the male power structure."  Dkt. 26.

UPS has been forced to defend against multiple iterations of these allegations by, *inter alia*, filing motions to dismiss (which were successful), attending 15 days of deposition (the majority of which were noticed by Plaintiffs), and ultimately, filing a motion for summary

1  judgment.

2  **B.**   **The Court Granted UPS's Motion to Dismiss Plaintiffs' FAC.**

3  On December 13, 2022, the Court granted UPS's motion to dismiss the FAC.  Dkt. 35.

4  The Court made the following findings in granting the motion:

5  - "[T]he FAC lacks clarity and is rife with conclusory statements while failing to

6      provide even a formulaic recitation of the facts comprising the elements of each

7      claim."  Dkt. 35 at 1:20-22.

8  - "It is impossible to determine if the claims have been sufficiently exhausted

9      because it is not clear what each plaintiff and each defendant actually did and what

10      specific policies are being challenged.  Dkt. 35 at 1:22-24.

11  - "[I]t is impossible to determine if viable claims are properly pleaded and whether

12      the class allegations can survive.  Dkt. 35 at 1:24-26.

13  The Court further provided Plaintiffs with "the legal standards for each of the remaining

14  claims to clarify the necessary elements that must be factually pleaded to state a viable claim."

15  Dkt. 35; *see also* Dkt. 40 (hearing transcript).

16  **C.**   **The Court Granted UPS's Motion to Dismiss Plaintiffs' SAC.**

17  On January 23, 2023, Plaintiffs filed the Second Amended Complaint ("SAC"), doubling

18  down on the broad yet factually deficient allegations.  Dkt. 38.

19  On April 20, 2023, the Court issued an Order regarding UPS's motion to dismiss the SAC,

20  significantly narrowing the case.  Dkt. 47.  The court dismissed the nationwide class and

21  collective allegations because it was "clear" that Plaintiffs had not exhausted any classwide

22  allegations and stated that the "slim record [wa]s insufficient to demonstrate administrative

23  exhaustion of discrimination claims for a nationwide putative class."  Notably, the Court stated

24  that the "plaintiffs fail[ed] to acknowledge the variety of problems with their class definition that

25  render[ed] maintenance of such class implausible" and that "multiple rounds of pleading

26  demonstrate that a class action cannot be plausibly maintained."  *Id*.  The Court further dismissed

27  certain named Plaintiffs, leaving only three named Plaintiffs in the action: Goins, Lopez and

28  Jones-Jackson.  *Id*.  Importantly, the Court also found that a number of allegations by Goins, Lopez

and Jones-Jackson were not administratively exhausted and therefore could not be the basis for any claim in this action:

- "The only allegation that has been administratively exhausted by **Goins** is denial of reasonable accommodation" based on gender in violation of Title VII and the Fair Employment and Housing Act ("FEHA").  Dkt. 47 at 17:26–27.

- "The only two allegations that have been administratively exhausted by **Lopez** are (1) denial of reasonable accommodation and (2) that she was given heavier work than similarly situated men" based on gender in violation of Title VII and FEHA.  Dkt. 47 at 18:21-23.

- The only administratively exhausted allegations by **Jones-Jackson** are: (1) gender discrimination in violation of Title VII and FEHA based on the allegation that Jones-Jackson was denied backpay to cover the period of a gender-based pay discrepancy and denied the opportunity to work overtime while men with the same or less seniority were given such opportunity, (2) age discrimination in violation of Title VII and FEHA based on the allegation that **Jones-Jackson** was denied the preferential treatment given to younger women, and (3) equal pay claims pursuant to the Equal Pay Act ("EPA") and the California Equal Pay Act ("CEPA") on the grounds that **Jones-Jackson** was paid less than a man for the same work over a six-month period.  Dkt. at 24:8-16.

- As to the claim for violation of California Business and Professions Code ¶ 17200 *et seq*. ("UCL"), the Court stated it was derivative of the above referenced exhausted claims.  Dkt. 47 at 24:26-25:1.

Despite the Court's clear instruction, after the Court's second dismissal order, Plaintiffs continued to litigate unexhausted allegations.  Accordingly, UPS was forced to expend significant attorneys' fees on unexhausted claims that Plaintiffs were aware had no merit.

**D.    <u>The Court Granted UPS's Motion for Summary Judgment</u>.**

On April 18, 2024, UPS filed a motion for summary judgment, or in the alternative, partial summary judgment.  Dkt. 67.

On May 2, 2024, Plaintiffs filed an opposition to the motion for summary judgment, in which they (1) advanced many of the unexhausted claims and allegations that the Court had already dismissed and (2) presented no evidentiary and little legal support for the claims that had been administratively exhausted.  Dkt. 68.

On July 8, 2024, the Court granted UPS's motion for summary judgment in its entirety. Dkt. 79.  None of the Plaintiffs came close to establishing a *prima facie* case of discrimination. Instead, Plaintiffs advanced unsupported arguments and abandoned numerous allegations, albeit only after UPS spent substantial attorneys' fees on those claims in discovery and its motion.  With respect to each Plaintiff, the Court detailed significant deficiencies in its Order granting the Motion for Summary Judgment.

### 1.    Plaintiff Galena Goins.

The Court found that Goins continued to pursue unexhausted claims despite the Court's prior dismissal of those claims:

- Goins "argues about various unexhausted allegations, but the court has already addressed this issue thoroughly.  Accordingly, this order addresses only the exhausted claim related to her knee injury, and the fact that she was not accommodated for that injury based on gender."  Dkt. 79 at 21:4-7.

- Goins included "**entirely new allegations** along with allegations that this court already found were **not exhausted**."  Dkt. 79 at 24:13-14 (emphasis added).

- "Goins did **not exhaust** an argument about gender discrimination for cleanup duty; she exhausted only the failure to accommodate claim that she casts aside in an attempt to distinguish <u>Doe</u>.  The rest of plaintiff's arguments concerning this prong are disjointed and, critically, **rely on non-exhausted allegations**."  Dkt. 79 at 27:5-9 (emphasis added).

- "Goins's argument that men did not have to clean was **not exhausted**, was not presented in the SAC, and is raised for the first time on summary judgment.  *See* Opp. at 20:19-20.  Plaintiff's argument concerning the OJS/Safety testing argument was also **not exhausted**. . . ."  Dkt. 79 at 27:20-24 (emphasis added).

- "UPS's arguments must prevail.  First, the court found that only Goins's gender-based discrimination claim was exhausted."  Dkt. 79 at 32:10-11.

The Court also found that Goins produced scant evidence in support of her two exhausted allegations in support of her gender discrimination claim, often providing "incomprehensible" citations to the record:

- This Court found that Goins' argument that she suffered from an adverse employment action were "**scattered**."  Dkt. 79 at 24:13-14 (emphasis added).

- "Plaintiff simply states that these events occurred, but that is not evidence that a discriminatory reason more likely than not motivated the employer . . . **[a]s is the case throughout much of plaintiffs' brief, the lack of citation to the record means that counsel's argument is just that—argument unsupported by evidence**."  Dkt. 79 at 22:1-2 and 22:5-7 (emphasis added).

- Goins "fail[ed] to provide support that an adverse employment even occurred or that similarly situated men were treated more favorably" and therefore "**failed to establish a *prima facie* case** and her gender discrimination claim must fail."  Dkt. 79 at 30:5-7 (emphasis added).

- "Another example of a recurring problem with plaintiffs' brief, **the citations to the record are entirely incomprehensible**.  Nor does she quote the record directly, so her brief effectively asks the court to take on faith that counsel's arguments reflect record evidence."  Dkt. 79 at 22:28-23:3 (emphasis added).

- "Goins **doesn't cite any evidence** in the record showing that similarly situated men were treated differently, which is fatal to her claim."  Dkt. 79 at 27:27–28 (emphasis added).

- "[Goins] does not even explain what position Matt has, how it is similar to her position, or how they perform similarly.  That is fatal, **as it is her burden to at least provide some evidence** of a similarly-situated male."  Dkt. 79 at 29:21-24 (emphasis added).

//

- "Plaintiff's argument is **entirely lacking in factual support** that could be even remotely identified from the plaintiffs' brief." Dkt. 79 at 29:2-3 (emphasis added).

- "Goins addresses pretext in a few lines of her brief, in a section that is **entirely devoid of citation to the factual record**." Dkt. 79 at 31:11-12 (emphasis added).

- "The brief includes argument from counsel—**absent any factual support** . . . ." Dkt. 79 at 31:12-13 (emphasis added).

Lastly, The Court effectively found that Goins pursued her one remaining claim for gender discrimination based on a legal theory that was not warranted by existing law: "Courts directly considering [whether a failure to accommodate can be an adverse employment action] have uniformly concluded that a failure to accommodate cannot constitute an adverse employment action **as a matter of law**." Dkt. 79 at 24:23-24 (emphasis added).

### 2.    Plaintiff Sonia Lopez

The Court similarly found that Lopez continued to pursue unexhausted claims despite the Court's prior dismissal of those claims:

- "[Lopez] also makes a number of **unexhausted arguments**, for example that females were required to clean up and men were not and that she felt harassed. The court does not assess plaintiffs' unexhausted allegations. Dkt. 79 at 34 n.14 (emphasis added).

- "Because that [motion to dismiss] order clearly limited Lopez's claims to gender discrimination, an independent disability-discrimination claim was **not exhausted**, and plaintiff cannot assert that claim now. The court need not address the merits of the **non-exhausted** claim. Dkt. 79 38:10-12 (emphasis added).

The Court also found that Lopez produced scant evidence in support of her exhausted allegations:

- "**Lopez does not identify any direct evidence** [of discrimination] . . . [m]oreover, even if the argument could plausibly show intent, plaintiffs do not meaningfully cite to the record when making this argument and therefore do not support it with any evidence." Dkt. 79 at 33:6–14 (emphasis added).

- "Lopez acknowledged that she was told her inability to 'keep up with [her] work' was the reason she would be moved." Dkt. 79 at 36:18-19.

- "[P]laintiff argues **entirely without record citation** that as a general matter she was not provided a reasonable accommodation.  The argument is difficult to follow, but even if she had argued and supported this point, as discussed above with respect to Goins, **a failure to accommodate a disability does not constitute an adverse employment action** with respect to a discrimination claim."  Dkt. 79 at 36:18-19 (emphasis added).

- "**Fundamentally, Lopez failed to cite any record evidence that could support this prong** . . . ."  Dkt. 79 at 35:14-15 (emphasis added).

- "As [Lopez] fails to identify **any** similarly-situated individual who was treated more favorably, Lopez **fails to establish a *prima facie* case** of gender discrimination for this reason as well.  Lopez **utterly fails present evidence** (sic **that any similarly-situated individual exists**, much less that he (sic) was treated more favorably.  Dkt. 79 at 36:3-6 (emphasis added).

The Court also found that Lopez had abandoned certain claims by failing to address them in her opposition:

- "Lopez acknowledges that she has declined to address the pretext element."  Dkt. 79 at 37:1.

- "Lopez fails to even attempt to argue that she was qualified . . . [a]ccordingly, Lopez fails to establish a prima facie case of gender discrimination."  Dkt. 79 at 34:3-6.

### 3.    Plaintiff Terry Jones-Jackson

The Court similarly found that Jones-Jackson continued to pursue unexhausted claims despite the Court's prior dismissal of those claims:

- "The court has already determined that Jones-Jackson exhausted only three allegations: she was denied (1) 'backpay to cover the period of a gender-based pay discrepancy'; (2) 'the opportunity to work overtime while men with the same or less seniority were given such opportunity'; and (3) 'the preferential treatment given to younger women.'  Dkt. 79 at 38:19-23.

//

- "Her third contention concerning timeclock manipulation was **not exhausted** and is not properly raised." Dkt. 79 at 40:16-17 (emphasis added).

- "This statement appears to be in the context of **non-exhausted allegations** that her timeclock was manipulated, but in any event this single vague, conclusory statement fails to satisfy her burden at this stage." Dkt. 79 at 42:27-43:1 (emphasis added).

The Court also found that Jones-Jackson produced scant evidence in support of the allegations she had exhausted:

- "Jones-Jackson **fail[ed] to meet her burden of providing any evidentiary support that she was qualified for the position**, so she fails to establish a prima facie case of gender discrimination." Dkt. 79 at 40:10-12 (emphasis added).

- "[T]he argument section of the brief is entirely **devoid** of record citations supporting them." Dkt. 79 at 40:17-18 (emphasis added).

- "[Jones-Jackson's] efforts here amount to **pure speculation**, and they are **so lacking** that they do not even satisfy the **low degree of proof** necessary to establish a *prima facie* case on summary judgment." Dkt. 79 at 41:2-4 (emphasis added).

- Jones-Jackson could not identify a similarly situated individual and thus "**fail[ed] to establish a *prima facie* case** of gender discrimination." Dkt. 79 at 41:17-27 (emphasis added).

The Court also found that Jones-Jackson abandoned certain claims by failing to address them in her opposition:

- "**Plaintiff entirely failed to address the [age] claim** and has therefore failed to make a *prima facie* showing of her claim." Dkt. 79 at 43:14-15 (emphasis added).

- "Jones-Jackson appears to have **abandoned** her second allegation that she did not receive overtime opportunities." Dkt. 79 at 41:5-6 (emphasis added).

- "Jones-Jackson has failed to meaningfully address the pretext question." Dkt. 79 at 43:3-4.

//

1

### 4.    Plaintiffs' UCL Claim

Finally, the Court rejected Plaintiffs' eleventh-hour attempt to assert a new basis for their

UCL claim and "sidestep the court's previous order."  And further, the Court found that even the

new basis for the claim was "devoid of any understandable citations to the record, making [it]

simply attorney argument without any comprehensible factual basis."  Dkt. 79 at 47:3, 8-9.

("Plaintiffs argue (with very sparse citations to the record) that their UCL claim is now based on

entirely different facts that have not been exhausted and are largely absent from the complaint.").  *Id.*

at 46:21-23.

In sum, Plaintiffs began and ended this case with nothing more than speculation.  The Court's

orders, which go so far as to find that Plaintiffs could not even meet the lowest of threshold of

establishing a *prima facie* case for their discrimination claims, make it clear that years of litigation

were needlessly spent.

## IV.    LEGAL ANALYSIS

"In an action where a district court is exercising its subject matter jurisdiction over a state

law claim, so long as 'state law does not run counter to a valid federal statute or rule of court, and

usually it will not, state law denying the right to attorney's fees or giving a right thereto, which

reflects a substantial policy of the state, should be followed.'"  *MRO Commc'ns, Inc. v. Am. Tel.

& Tel. Co.*, 197 F.3d 1276, 1281 (9th Cir. 1999) (quoting *Alyeska Pipeline Serv. Co. v.

Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975).)

The federal and state standards for a defendant's recovery of attorney's fees in

employment discrimination matters are similar.  Title VII provides that, in "any action or

proceeding under this subchapter the court, in its discretion, may allow the prevailing party . . . a

reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the

United States shall be liable for costs the same as a private person."  42 U.S.C. § 2000e-5(k).

California's FEHA similarly provides that a court has discretion to award attorney's fees to a

prevailing defendant in a FEHA action when the "action was frivolous, unreasonable, or

groundless when brought, or the plaintiff continued to litigate after it clearly became so."  Cal.

Gov. Code § 12965(c)(6).

The United States Supreme Court has set forth a similar standard and held that a defendant should recover its attorneys' fees if "the plaintiff's action was frivolous, unreasonable, or without foundation [i.e., groundless]." *Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n*, 434 U.S. 412, 421-22 (1978).)  And, needless to say, if a plaintiff is found to have brought or continued such a claim in *bad faith*, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense." *Id.* at 422.  A claim is frivolous "when the result is obvious or the . . . arguments of error are wholly without merit." *C.W. v. Capistrano Unified Sch. Dist.*, 784 F.3d 1237, 1245 (9th Cir. 2015) (citation omitted).

District courts and California state courts have awarded defendants their attorneys' fees where, as here, the plaintiffs produced no persuasive evidence of discrimination:

- In *Zaman v. Kelly Services, Inc.*, 2017 WL 2335601 (N.D. Cal. May 30, 2017), the Court awarded fees to the employer after it prevailed on summary judgment.  In awarding fees, the Court stated that "[t]he court's summary judgment order determined that Zaman's theory of Kelly's liability did not 'rise above the level of speculation' and that **there was no persuasive evidence of discrimination**." *Zaman*, 2017 WL 2335601, at *3 (emphasis added).

- In *Villanueva v. City of Colton*, 160 Cal. App. 4th 1188, 1200 (2008), the trial court granted defendant's request for fees finding the action to be unreasonable and without merit: "While [Villanueva] submitted his own and other declarations in opposition to the [summary judgment] motion, those declarations, and the exhibits appended thereto, once stripped of argument, conjecture and other inadmissible content left a dearth of information upon which a reasonable person could possibly advance a colorable claim for employment discrimination."

- In *Bond v. Pulsar Video Productions*, 50 Cal. App. 4th 918, 925 (1996), even though the plaintiff had survived summary judgment and lost at trial, the appellate court affirmed that the plaintiff's discrimination claim was "frivolous, without foundation, and brought in bad faith."  During oral argument, the trial court emphasized that the plaintiff's discrimination cause of action was unsupported by

the evidence: "I think the evidence was clear that there wasn't anything discriminatory by Mr. Bailey [Pulsar's owner].  He was—he was dragged through several days of trial, I think, and attorney's fees needlessly . . . [p]eople shouldn't have to do that . . . .  There was no—just no evidence.  There was just no evidence."  *Id*. at 924.

- In *Dumas v. New United Motor Mfg. Inc.*, 2007 WL 1880377, at *4 (N.D. Cal. June 29, 2007) (Hamilton, J.), the Court awarded fees to a defendant who prevailed on summary judgment in an employment discrimination case where the plaintiff did not point to "one shred of evidence that support[ed] any of his claims."

Having defeated Plaintiffs at every stage – from a pleadings challenges to the substantive challenge on the merits at summary judgment –UPS is, without question, the "prevailing party." As such, fees award against the Plaintiffs and in favor of UPS is appropriate where, as here, Plaintiffs' action was groundless and unreasonable from the beginning or became so during litigation.  There is no question that UPS meets this standard as well.

### A.    **Plaintiffs' Discrimination Claims Under Title VII and FEHA Were Frivolous, Unreasonable, and Groundless.**

Plaintiffs' discrimination claims were frivolous, unreasonable, or groundless when initially filed.  Even after multiple rounds of pleading demonstrated that their unexhausted claims could not plausibly be maintained and were dismissed, Plaintiffs continued to litigate them.  With respect to the few remaining exhausted claims, Plaintiffs abandoned them or failed to submit any factual evidence of them in their opposition to UPS's motion for summary judgment.  "[O]nce stripped of argument, conjecture and other inadmissible content" the Court was left with a "dearth of information upon which a reasonable person could possibly advance a colorable claim for employment discrimination."  *Villanueva*, 160 Cal. App. 4th at 1200.

Nearly three years after filing their initial complaint, the Court determined that none of the Plaintiffs could establish the second element of a *prima facie* case of discrimination (an adverse employment action) and further determined and that none of the Plaintiffs could even identify a

single similarly situated comparator.  For the scant evidence that Plaintiffs did provide, the Court often found it to be "incomprehensible" and struggled to locate any admissible evidence in the hundreds of pages submitted late by the Plaintiffs in opposition to the motion for summary judgment.

As the Court's multiple orders reflect, the Plaintiffs' discrimination claims were "frivolous, unreasonable, or groundless when brought" and Plaintiffs continued to litigate them after they were dismissed at the pleading stage.  Accordingly, UPS is entitled to recover the reasonable attorneys' fees it incurred in defending against Plaintiffs' claims and for having to move to dismiss them multiple times.

### B.   Jones-Jackson Brought Her EPA and CEPA Claims in Bad Faith.

UPS is similarly entitled to recover its attorneys' fees for prevailing on Jones-Jackson's claims under the EPA and CEPA.  As the prevailing party on the CEPA claim, UPS is entitled to fees under California Labor Code Section 218.5.  *See Kirby v. Immoos Fire Protection, Inc.*, 53 Cal. 4th 1244, 1248 (2012) ("In general, a prevailing party may recover attorney's fees only when a statute or an agreement of the parties provides for fee shifting.  [Citation.]").  California Labor Code section 218.5(a) requires the awarding of attorney's fees to the prevailing party "[i]n any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions."  An employer is entitled to an award of attorneys' fees as the prevailing party under Section 218.5 "if the court finds that the employee brought the court action in bad faith." *Id.*  In interpreting the use of "bad faith" in similarly worded statutes, courts have determined that a motion is brought in bad faith if "any reasonable attorney would agree that such motion is totally devoid of merit."  *Karwasky v. Zachay*, 146 Cal. App. 3d 679, 681(1983).

With respect to the Federal EPA claim, the standard is similar.  In *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 766 (1980), the Supreme Court held that a defendant may recover attorneys' fees if the "losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *See also Stuart v. Cnty. of Riverside*, 2024 WL 3086634, at *8 (C.D. Cal. June 14, 2024) ("District courts have the inherent power to sanction a lawyer for a 'full range of litigation abuses.' . . . .  For example, as acknowledged by the Supreme Court, federal courts have

1  'inherent power' to assess attorney's fees 'when the losing party has acted in bad faith,

2  vexatiously, wantonly, or for oppressive reasons.'")

3      Here, since at least 2017, Jones-Jackson believed she had been underpaid vis-à-vis a

4  specific man (Steve Smith).  Dkt. 79 at 17:5-6.  Yet, as the Court noted, after all these years the "the

5  only evidence c[ame] from UPS" and Jones-Jackson did not even attempt to dispute it in her

6  opposition.  Dkt. 79 45:3-4.  Jones-Jackson first brought a time-barred claim and then essentially

7  abandoned it by failing to submit any evidence to support the allegations.  Given that Jones-Jackson

8  waited far longer than the applicable statute of limitations and then offered nothing beyond

9  speculation to support for her equal pay claims, she "brought the action in bad faith" and "has acted

10 in bad faith, vexatiously, wantonly, or for oppressive reasons."  Accordingly, UPS is entitled to

11 recover its reasonable attorneys' fees for defending against Jones-Jackson's equal pay claims.

12      **C.**   **UPS Is a Prevailing Party As To the Class And Collective Actions.**

13      Finally, UPS seeks to recover the fees it incurred in dismissing the nationwide class and

14 collective claims at the outset of the litigation.  As both the Ninth Circuit and the Northern

15 District Court have explained, "[f]ollowing the dismissal of a claim, a defendant is a prevailing

16 party if the dismissal creates a 'material alteration of the legal relationship of the parties.'  . . .

17 Material alteration exists, *inter alia*, where plaintiff's ability to 'refil[e] the claim against the

18 defendant in federal court' is impeded.'"  *Good Job Games Bilism Yazilim ve Pazarlama A.S. v.*

19 *SayGames LLC,* 2023 WL 3260528, at *2 (N.D. Cal. May 4, 2023) (quoting *Cadkin v. Loose*, 569

20 F.3d 1142, 1148 (9th Cir. 2009).); *see also Nguyen v. Wells Fargo Bank, N.A.*, 2011 WL 9322, at

21 *2 (N.D. Cal. Jan. 3, 2011) ("The parties do not dispute that Wells Fargo is the prevailing party

22 here, as Plaintiff's motion to remand and motion for sanctions were denied and Defendant's

23 motion to dismiss was granted in full.")

24      Here, the Court's dismissal of the class and collective claims that encompassed tens or

25 hundreds of thousands female individuals and 15 of the named Plaintiffs significantly narrowed

26 this case and undoubtedly created a "material alteration of the legal relationship of the parties."

27 Accordingly, for this additional reason, UPS is the prevailing party and is entitled to reasonable

28 attorneys' fees on its two motions to dismiss.

1

### D.    UPS's Fees' Request is Reasonable and Supported by Evidence.

2      In calculating the amount of fees to award, courts begin with a lodestar figure.  The

3  lodestar amount is "the product of the number of hours 'reasonably spent'" by the attorneys on

4  the litigation and the attorneys' reasonable hourly rate.  *Meister v. Regents of the Univ. of Cal.*, 67

5  Cal. App. 4th 437, 449 (1998); *Serrano v. Unruh*, 32 Cal. 3d 621, 635, 639 (1982).  The

6  reasonable hourly rate is the "hourly amount to which attorneys of like skill in the area would

7  typically be entitled." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1133 (2001).  Once the lodestar

8  figure is determined, the court may adjust that figure based on the novelty and difficulty of the

9  questions involved in the litigation, the skill of the attorneys in presenting them, the attorneys'

10  opportunity cost in pursuing the litigation, and the contingent nature of the fee award, if relevant.

11  *Id.* at 1132.  Absent reasons making such an award unjust, a litigant may typically recover

12  compensation for hours reasonably spent in establishing and defending the claim for fees, as well.

13  *Id.* at 1141; *Serrano v. Unruh*, 32 Cal. 3d at 639.

14      The fee applicant bears the burden of documenting the hours spent and submitting

15  evidence as to those hours; the party opposing the application bears the rebuttal burden of

16  challenging the reasonableness of the hours submitted.  *Gates v. Gomez*, 60 F.3d 525, 534-35 (9th

17  Cir. 1995).  In addition, "the court can rely on its own knowledge and experience in evaluating a

18  request for fees." *US Foods, Inc. v. Lalla Holding Corp.*, 2014 WL 4809073, at *2 (N.D. Cal.

19  Sept. 25, 2014), report and recommendation adopted sub nom *US Foods, Inc. v. Lalla Holding

20  Corp.*, 2014 WL 5281058 (N.D. Cal. Oct. 15, 2014); *see also Ingram v. Oroudjian*, 647 F.3d 925,

21  928 (9th Cir. 2011) (agreeing that "judges are justified in relying on their own knowledge of

22  customary rates and their experience concerning reasonable and proper fees."); *Minichino v. First

23  California Realty,* 2012 WL 6554401 at *7 (N.D. Cal., Dec. 14, 2012) (relying on the court's own

24  experience in evaluating a fee request).  The Court may also rely on decisions by other courts

25  awarding similar rates for work in the same geographical area by attorneys with comparable

26  levels of experience. *See*, *e.g.*, *Nadarajah v. Holder*, 569 F.3d 906, 917 (9th Cir. 2009).

27      Courts recognize that it is costly for a defendant to obtain a dismissal in a case, even if it

28  lacks merit.  Thus, when a case that should never have been filed and/or maintained is filed,

1   attorney's fees are justified.  Courts have awarded significant fees and costs to prevailing partis in

2   cases far less involved than this one in terms of scope of discovery, witnesses and pleading

3   challenges.  *See, i.e., Flannery v. Prentice*, 26 Cal. 4th 572, 576 (2001) (awarding $1,088,231 in

4   attorney fees to one set of plaintiff's counsel while reiterating FEHA's policy underlying the fee

5   shifting provision to either plaintiff or successful defendant of encouraging meritorious suits

6   **while discouraging frivolous ones**); *Saret-Cook v. Gilbert, Kelly, Crowley & Jennett,* 74 Cal.

7   App. 4th 1211, 1215 (1999) ("The court also awarded $650,000 in attorney's fees to respondent

8   GKCJ (out of about $930,000 requested) pursuant to Government Code section 12965 and Civil

9   Code section 1717.  In addition, the court awarded $275,000 in attorney's fees to the individual

10  respondent (out of about $328,000 requested) pursuant to Government Code section 12965");

11  *Robert v. Stanford University,* 224 Cal. App. 4th 67, 70 (2014) (court awarded Stanford $100,000

12  in fees); *Guthrey v. State of California,* 63 Cal. App. 4th 1108, 1111 (1998) ("We therefore affirm

13  the trial court's order granting defendants attorney fees in the amount of $64,796.50.  We further

14  grant defendants' request for attorney fees on appeal."); *Villanueva,* 160 Cal. App. 4th at 1193-94

15  (". . . the court granted the City's motion for attorney's fees, finding no evidence of 'racial animus

16  or other impermissible employment activity,' and ordered Villanueva to pay to the City the sum

17  of **$39,472.30**.") (emphasis added).

18          Here, UPS attorneys spent in excess of 1,000 hours defending UPS in this lawsuit.  Brown

19  Decl. ¶ 8.  UPS provides a statement of the services rendered by each person for whom service

20  fees are claimed and a statement describing the manner in which time records were maintained.

21  Brown Decl. ¶P7-8, Ex. 6.  UPS was justified in incurring the expenses associated with these

22  services, especially when the litigation began as a nationwide putative class and collective action

23  encompassing tens or hundreds of thousands of current and former female employees.  After

24  Plaintiffs lost their class and collective claims, UPS was then forced to expend hundreds of hours

25  and tens of thousands of dollars defending against frivolous claims and claims which had already

26  been dismissed by the Court.[1]

---

[1] UPS does not seek fees for all hours it spent on this case.  UPS counsel has gone through each
line of its time entries and has removed certain entries for which it seeks no fees (e.g. case

This case was appropriately staffed on the defense side and UPS's counsel made good faith efforts to avoid duplicative work or unnecessary fees.  Brown Decl. ¶5.  The rates that UPS's counsel charged in this case are reasonable and typical rates for this type of case and based on the geographic area and forum.  In analyzing whether requested rates are reasonable, the Court looks to the "hourly amount to which attorneys of like skill in the area would typically be entitled."  *Ketchum*, 24 Cal. 4th at 1133.  "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits."  *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454-55 (9th Cir. 2010) (quoting *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008)).  "A court may consider an attorney's actual billing rate when determining a reasonable rate."  *Polee v. Cent. Contra Costa Transit Auth.*, 516 F.Supp.3d 993, 998-999 (N.D. Cal. 2021).

Courts in the United States District Court for the Northern District of California have awarded significantly higher hourly rates to counsel in employment cases than the rates requested by UPS counsel here.  For example, in *Andrews v. Equinox Holdings, Inc*., 570 F. Supp. 3d 803, 807-808 (2021), a FEHA discrimination action, the United States Magistrate Judge Sallie Kim recommended that the following rates were reasonable and typical of attorneys practicing in the Bay Area: Partners between $875 and $1,250 per hour; Senior Counsel at $600 per hour; Associate at $350 perhour; and Paralegal between $240 and $275 per hour (finding that "other courts, including courts in this District, have approved of the Counsel's [requested] billing rates.").[2]  *See also Carter v. Jai-Put Enter. Inc.*, 2022 WL 4371503, at **11-13 (N.D. Cal. Sept. 21, 2022) (finding that hourly rates of $850 for lead counsel who was a 1988 law graduate, $325 for a 2014 law graduate, $300 for a 2019 law graduate, and $165 for a paralegal were reasonable);

Here, the lead defense counsel, Elizabeth A. Brown graduated from the top-ranked University of Chicago law school and has been practicing law in California for nearly 20 years,

---

investigation and unsuccessful mediation) and scrutinized the time entries for any duplication.  Brown Decl., ¶7.  In other words, UPS incurred higher fees defending this case than it requests the Court to award.

[2] In the Andrews matter, the defendant opposing the request for fees only challenged the top partner rate of $1,250, arguing that it should be capped at $1,100.  *Andrews*, 570 F. Supp. 3d at 808.

having first and second-chaired a number of jury trials and first-chairing administrative

proceedings.  Brown Decl. ¶3-5.  Additional UPS counsel were similarly qualified.  *Id*, Exs. 1-5

(attorney bios).  The hourly rates UPS seeks for its counsel are the actual rates billed to and paid

by UPS, which are lower than its counsel's current – higher – rates.  *Id*., ¶6[3]

Having examined its time entries, UPS seeks the following amounts,[4] to be awarded

against Plaintiffs either on a pro-rata basis (i.e. divided by three) or jointly and severally:

| Category | Hours Incurred | Requested Fees |
|---|---|---|
| Motions to Dismiss FAC and SAC | 73.50 | $33,730.00 |
| Discovery | 250.30 | $111,927.00 |
| Motion for Summary Judgment | 448.90 | $197,395.50 |
| Motion for Fees (anticipated) | 10 | $4,000.00 |
| **Total** | **782.70** | **$347,052.50[5]** |

Brown Decl., ¶8.

V.    **CONCLUSION**

For the reasons set forth above, UPS respectfully requests this Court grant UPS's request

for attorneys' fees and issue an Order awarding UPS attorneys' fees in the amount of

$347,052.50.

DATED:  July 22, 2024                              GBG LLP

                                                  BY:_____s/ Elizabeth A. Brown_____
                                                       ELIZABETH A. BROWN
                                                  Attorneys for Defendant
                                                  UNITED PARCEL SERVICE, INC.

---

[3] The Ninth Circuit has explained that in calculating the lodestar, counsel may use their current hourly rates at the time of the fee motion.  *See, e.g.*, *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) (noting that "[f]ull compensation requires charging current rates for all work done during the litigation, or by using historical rates enhanced by an interest factor").

[4] UPS separately seeks an award of costs it incurred in defending against Plaintiffs' frivolous claims.  *See* Dkt. 81.  Costs are available to UPS pursuant to Federal Rules of Civil Procedure Rule 54(d)(1).  To the extent that an award of costs under FEHA requires a showing of frivolousness, UPS has made that showing.  No such showing is required under Title VII, the California Labor Code or the EPA.

[5] The average hourly rate requested is $443.40.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28